UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LARRY A. KATZ | : | |
| And KENNETH M. RAFTERY, | : | CIVIL ACTION NO. |
| | : | 302 CV 02201 (AWT) |
| Plaintiffs, | : | |
| | : | |
| V. | : | |
| | : | |
| THE SEPARATION PAY PLAN | : | |
| OF TEXACO, INC. | : | |
| And TEXACO, INC., | : | |
| | : | DECEMBER 1, 2003 |
| Defendants. | : | |

## MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND TO QUASH SUBPOENAS

### PRELIMINARY STATEMENT

Plaintiffs hereby oppose defendants' Motion for Protective Order and to Quash Subpoenas. Plaintiffs seek to depose eight individuals, five of whom are committee members of The Separation Pay Plan of Texaco, Inc. (the "Plan") and former employees of Texaco, Inc. ("Texaco"), and three who are current or former officers of plaintiffs' former employer, Fuel and Marine Marketing, Inc. (FAMM).[1] Defendants are seeking a Protective Order in connection with

---

[1] Plaintiffs noticed the deposition of defendants through five individuals, served two deposition subpoenas duces tecum on FAMM, plaintiffs' former employer, directed to two specific individuals, and served a notice of deposition for a former employee of Fuel and Marine Marketing, Inc. Defendants' counsel indicated his willingness to cooperate in the scheduling of the proposed depositions without the need for plaintiffs' to serve subpoenas for each such deposition.

all of the depositions. Moreover, defendants have objected to *each and every* document request attached to each subpoena duces tecum served upon plaintiffs' former employer.

As will be set forth below, the depositions are proper, and Stamford, Connecticut is the appropriate location for each of the depositions to take place. Accordingly, plaintiffs respectfully request that defendants' Motion be denied in its entirety.

### *FACTS*

Plaintiffs Larry A. Katz and Kenneth M. Raftery bring this action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §1001, *et seq.*, seeking payment of enhanced change-in-control benefits pursuant to ERISA §502(a)(1)(B) of said Act, 29 U.S.C. §1132(a)(1)(B). Plaintiffs are pursuing their entitlement to enhanced benefits available under the Plan as adopted by their employer, Fuel and Marine Marketing LLC ("FAMM"). The Plan was amended in 1998 as stated in Texaco's notice to its employees "to remain current and competitive with industry practices and to support [Texaco's] ability to attract and retain top quality talent." The amendment enhanced change-of-control benefits under the Plan for those Texaco employees in the "management group" which, for *Texaco employees*, was defined as position grade 20 and above. No such limitation to the term "management group" was provided for FAMM employees.

Both Mr. Katz and Mr. Raftery were terminated incident to a merger between defendant Texaco, Inc. and Chevron Corporation in July 2002. They had been in the "management group" of FAMM and both were officers of FAMM. Mr. Katz was the Treasurer, and Mr. Raftery the Comptroller. As such, they were always accorded benefits by FAMM equivalent to Texaco "management group" employees. At all times while employed by FAMM, plaintiffs held

2

positions with duties of, and were paid on a scale equivalent to or greater than, a grade "20" Texaco employee. They participated in FAMM stock and FAMM deferred compensation plans analogous to the stock and deferred compensation plans provided by Texaco, Inc. to its senior employees grade "20" or higher. Nevertheless, the initial claim of plaintiffs was summarily rejected by strict and inappropriate adherence to *Texaco's* position-grading and not FAMM's position-grading.[2]

In short, plaintiffs contend that the decision of the Benefits Center Change of Control Claims Committee was arbitrary and capricious and should be reversed.

In an effort to determine exactly what was analyzed in making the determination to deny benefits, plaintiffs have noticed the depositions of:

(1) *Defendants* by and through

     (a) three members of the "Benefits Center Change of Control Claims Committee" (John Goldsby, Carolyn Sellers and Rob Boila),

     (b) Scott Jeffrey[3] who was a Texaco employee and on the Board of Directors for FAMM, and

     (c) Pat Lynch who was on the Change of Control Committee;

---

[2] It bears mentioning that Mr. Raftery's position is demonstrably the equivalent of a "Texaco" grade 20, as his successor in Houston (S. Hannen), who has *less* job responsibility and *less* duties, is believed to have been accorded at least grade 20 status.

[3] Opposing counsel has indicated that Scott Jeffrey has agreed to appear for deposition in Stamford, Connecticut. Accordingly, he is not part of defendants' Motion nor plaintiffs' Opposition.

3

(2) *FAMM* by and through

    (a) three high level employees (Michael Bandy who is President and on the FAMM Board of Directors; Michele Swanson who is Advisor to the President and Assistant Secretary; and Peter Mead who was Vice President and Chief Financial Officer).[4]

Defendants' refusal to produce the proposed deponents in Connecticut is consistent with their general non-cooperative attitude with regard to the discovery propounded by plaintiffs to date. Plaintiffs served interrogatories and document requests dated May 6, 2003. Defendants refused to produce complete responses and plaintiffs were forced to file a Motion to Compel. Once the Motion to Compel was filed, defendants' counsel agreed to provide more complete responses, but plaintiffs are still awaiting the actual production and there are still outstanding issues that will be raised before the Court during the December 4, 2003 conference.[5] This reluctance by defendants to cooperate during the discovery phase suggests a desire to drain plaintiffs of their financial resources in a battle of David and Goliath.[6]

---

[4] It is well settled that if a party to be deposed is a corporation, the party seeking discovery can designate an appropriate individual provided that individual is a director, officer or managing agent of the corporate deponent. See F.R.C.P. 30(b); Sugarhill Records LTD. V. Motown Record Corp., MCA, 105 F.R.D. 166 (S.D.N.Y. 1985).

[5] The cover letter enclosing this Opposition also contains a letter plaintiffs' counsel sent to defendants' counsel which summarizes the status of the discovery issues. Plaintiffs' counsel sought a confirmation from defendants' counsel that the understanding set forth in this summary was correct so that the issues could be most effectively narrowed for the Court. However, a response from defendants has not yet been received.

[6] The facts will also demonstrate that Texaco had a long-standing history of seeking to impede its subsidiary, FAMM, from awarding its employees the same level of benefits as Texaco

4

This David and Goliath story is further illustrated by the fact that although the ERISA Plan at issue requires defendants to reimburse plaintiffs for all legal fees and costs incurred in connection with their claims to benefits, defendants have refused to do so. Instead, defendants rely upon a clause in the plan which provides that defendants do not have to reimburse plaintiffs if their claims are found to be "frivolous" by a court of law. Accordingly, it appears from defendants' conduct that in making the present Motion they are continuing to wage their campaign to draw each process of this litigation out as long as possible and to force plaintiffs to incur as many legal expenses as possible. ChevronTexaco is a multibillion dollar international company, while plaintiffs are struggling to get back on their feet after their termination.[7]

Defendants' position is all the more abusive, when placed in the context of the appropriate standard for determining frivolousness. The standard for finding frivolity is very strict and is analogous to a finding pursuant to Federal Rule 11. See, e.g., County, Municipal Employees' Supervisors and Foreman's Union Local No. 1001 v. Laborers' Pension Fund, 240 F.Supp.2d 827 (N.D.Ill. 2003); see also Smith v. Blue Cross & Blue Shield United of Wisconsin, et al., 724 F.Supp. 618, 623 (E.D. Wis. 1989) (ERISA case employing heightened Rule 11 test: "Something is frivolous only when (a) we've decided the very point, and recently, against the person reasserting it, or (b) 99 of 100 practicing lawyers would be 99 percent sure that the position is untenable, and the other 1 percent would be 60 percent sure its untenable. Either one

---

employees and indeed resisted the initial implementation of the severance plan at issue. Texaco's administration of the plan to benefit its employees to the detriment of FAMM employees where payment of benefits was made from assets under Texaco's control presents a conflict of interest. This conflict of interest diminishes the level of deference accorded to the plan administrator's decision.

[7] Larry Katz has become re-employed, but Kenneth Raftery remains unemployed.

5

is a pretty stiff test."). Pertinent ERISA case law establishes that simply failing to conduct an adequate investigation can render an administrator's denial of benefits arbitrary and capricious. Indeed, in Miller v. United Welfare Fund, 72 F.3d 1066 (2d Cir. 1995), the Second Circuit Court of Appeals used pretrial discovery (including material not contained in the administrative record) to support its finding that the fiduciary had based its decision to deny benefits only on "limited information" and therefore held the fiduciary's decision was arbitrary and capricious. See also Nagele v. Electronic Data Systems Corp., 193 F.R.D. 94 (W.D.N.Y. 2000) ("In reviewing a fiduciary's decision, a district court must consider whether the decision was based on a consideration of the relevant factors." (quoting Miller, supra)).

As defendants have admitted that they undertook no analysis as to whether a FAMM position grade 19 was the equivalent to a Texaco position grade 19, even if plaintiffs were to ultimately fail to recover on their claims, their claim should not be deemed frivolous. (See Defendants' Responses to Request For Admission No. 20.) Accordingly, should defendants get their way and obtain an order that the deposition be taken outside this forum, defendants should clearly be ordered to bear all costs.

### *ARGUMENT*

### *I.     STANDARD OF REVIEW.*

It is well-established that a defendant has the burden of demonstrating good cause before a court will issue a protective order. See Federal Rule of Civil Procedure 26(c). In the present case, defendants assert that they are not objecting to producing the proposed deponents, but they are objecting to producing them in Stamford, Connecticut. Defendants argue that the depositions

should be taken in New Jersey, in the case of Peter Meade and Pat Lynch, and in Houston, Texas in the cases of John Goldsby, Carolyn Sellers, Rob Boila, Michele Swanson and Michael Bandy. The Court has wide discretion in setting the time and location of depositions Thompson v. Sun Oil Co., 523 F.2d 647 (8th Cir. 1975), and plaintiffs assert that because this is an ERISA case and because the factors of cost, convenience and efficiency all weigh in favor of plaintiffs, each of the proposed depositions should properly take place in Stamford, Connecticut.

Defendants cite to a number of federal cases that hold that a deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business. However, while this might be true for some cases, none of the cases cited by defendants involve ERISA claims. ERISA plans are subject to suit wherever the appropriate defendant can be found consistent with due process. See, e.g., 29 U.S.C. 1132(e)(2); Gulf Life Insurance Co. v. Arnold, 809 F.2d 1520 (11th Cir. 1987) (ERISA removes jurisdictional and procedural obstacles which in the past have hampered effective enforcement of fiduciary responsibilities; in federal courts, nationwide service of process is provided to remove possible procedural obstacles for plaintiffs).

Accordingly, the general rule as stated by defendants simply does not apply to ERISA cases. Even if the standard rule is applied in this case, despite the ERISA factor, Stamford, Connecticut is still an appropriate deposition site. Both plaintiffs were employed in White Plains, New York (just minutes from Stamford), White Plains was the headquarters of both Texaco and FAMM at the time of plaintiffs' termination, and the Plan was administered from White Plains. Currently, both Texaco and FAMM have places of business within 100 miles of Stamford, and the Plan purposefully availed itself to suit in all 50 states. (See Plan service of process list attached hereto as Exhibit A.)

7

Moreover, a court may consider the factors of cost, convenience and litigation efficiency in determining whether to hold the deposition somewhere other than a deponent's place of business. See, e.g., Devlin v. Transportation Communications International Union, 2000 WL 28173 (S.D.N.Y. 2000) (attached hereto as Exhibit B). Other than outlining personal issues for two of the specified individuals, defendants have provided no evidence whatsoever in support of their opposition to taking the depositions in Stamford, Connecticut. Accordingly, defendants have failed to support their burden of proof, and they should be compelled to produce the designated individuals in Stamford, Connecticut at a date and time to be determined.

## II.    *ALL OF THE PROPOSED DEPONENTS WERE PROPERLY SERVED AND ARE SUBJECT TO DEPOSITION IN STAMFORD, CONNECTICUT.*

Defendants break the proposed deponents into three groups, however there are only two main groups: (1) those employed by defendants, and (2) those employed by FAMM, a nonparty.

### A.    *TEXACO DEPONENTS*

Defendants assert that the five proposed deponents of Texaco (Pat Lynch, Scott Jeffrey, John Goldsby, Carolyn Sellers and Rob Boila) are no longer employed by Texaco. Even accepting this to be true, each of the proposed deponents was properly noticed and is subject to deposition in Stamford, Connecticut.[8]

#### 1.    *Pat Lynch*

Defendants assert that Mr. Lynch cannot be forced to appear in Stamford, Connecticut for a deposition, as he resides in New Jersey and is outside the 100-mile bulge set forth in Federal

---

[8] As stated above, the lack of individual subpoenas is not at issue, as defendant's counsel agreed to produce these individuals without subpoena, subject to this Court's ruling as to location of those depositions.

Rule of Civil Procedure 45(c)(3)(A).[9] Defendants, however, have misapplied the law as it applies to the "100 mile bulge" applicable to federal subpoenas.

Plaintiff properly noticed the deposition of defendants by and through Patrick Lynch (who resides in New Jersey) to take place at the offices of plaintiffs' counsel in Stamford, Connecticut. Mr. Lynch was a high-level Texaco employee during the pertinent time frame and was a member of the Change of Control Committee (and on information and belief remains a member of that Committee today).

It is undisputed that Texaco has corporate offices in White Plains, New York, which is well within 100 miles of Stamford, Connecticut. However, even using the individual residence of Mr. Lynch to determine the deposition site, Stamford, Connecticut is still appropriate. It is settled law that the 100 mile radius set forth in the Federal Rules is determined by employing a straight-line analysis rather than the "shortest route of public travel" that defendants appeared to have applied. See, e.g., SCM Corporation v. Xerox Corporation, 76 F.R.D. 214, 215-16 (D. Conn. 1977) (the 100 mile radius provision employed in the federal rules uses a straight line on a map rather than along the ordinary, usual, and shortest route of public travel). Accordingly, using the proper straight-line method, Texaco, as well as Mr. Lynch, are well within 100 miles of Stamford, Connecticut and have, therefore, been properly noticed to appear in Stamford, Connecticut.

---

[9] Although defendants' counsel asserts that plaintiffs have not subpoenaed five of the witnesses at issue in this motion, in order to save the time and expense associated with issuing multiple subpoenas, it was agreed that defendants' counsel would accept Notices of Deposition for defendants by and through Goldsby, Boila, Sellers, and Lynch, and would also accept Notice for Peter Meade, a former FAMM employee, all of whom he represents and agreed to produce without the need for subpoenas.

9

However, plaintiffs were unaware (until provided with a draft of defendants' Motion) of Mr. Lynch's personal issues involving his wife's medical needs. Accordingly, plaintiffs will agree to take the depositions of Mr. Lynch, as well as Mr. Meade (who is discussed below), in New Jersey, provided (1) they are scheduled to take place on the same day at the same location, and (2) defendants cover any and all expenses and/or costs related to the change of location of the deposition from Stamford, Connecticut to New Jersey.

### 2.   *Scott Jeffrey[10], John Goldsby, Carolyn Sellers and Rob Boila*

Defendants assert that John Goldsby, Carolyn Sellers and Rob Boila are no longer employees of Texaco and therefore, do not have to appear for deposition in Stamford, Connecticut. Defendants, however, have misapplied the law. As an initial matter, Mr. Goldsby, Ms. Sellers and Mr. Boila were, at the pertinent time, members of the "Benefits Center Change of Control Claims Committee" and were in charge of determining whether to grant or deny plaintiffs' claims. On information and belief, they remain to be members of this committee today. As such, they are subject to deposition in Stamford, Connecticut, as the Plan which they administered is a party to this litigation and is deemed present in the State of Connecticut and was administered in White Plains, New York. See, e.g., Gulf Life Insurance Co. v. Arnold, 809 F.2d 1520 (11th Cir. 1987) (ERISA removes jurisdictional and procedural obstacles which in the past have hampered effective enforcement of fiduciary responsibilities; in federal courts, nationwide service of process is provided to remove possible procedural obstacles for plaintiffs).

---

[10] As set forth above, opposing counsel has indicated that Scott Jeffrey has agreed to appear for deposition in Stamford, Connecticut. Accordingly, he is not part of defendants' Motion nor plaintiffs' Opposition.

ERISA has been interpreted and applied to advantage the individual claimants. <u>Boggs v. Boggs</u>, 117 S.Ct. 1754 (1997) (The principal object of the statute is to protect plan participants and beneficiaries). The Appellate Court in <u>Gulf Life Insurance Co. v. Arnold</u>, 809 F.2d 1520 (11th Cir. 1987), recognized that if ERISA was not interpreted with the claimant in mind, the defendant plan or employer could make it close to impossible for a claimant to vindicate his or her rights. In discussing the venue provisions of ERISA, courts have recognized that ERISA provides claimants with broad access to the federal courts.

> For example, .....if [defendant] were headquartered in Guam it would be able to force [plaintiff] to litigate his benefit plan rights in that forum. Although this states the case in its most extreme, it is not unusual for a national corporation to be headquartered in New York or in California. We believe that ERISA's legislative history unquestionably demonstrates that Congress did not intend to allow a fiduciary to force a plan participant/beneficiary who worked for a company for 30 years in Maine and who files a claim for benefits with that company, to be required to litigate his claim in Los Angeles.

<u>Id.</u> at fn7. While this case was discussing the venue provisions of ERISA, the analysis is analogous to the present situation. Plaintiffs should not be forced to bear the expense and burden of traveling to Texas to depose members of the administrative committee. Plaintiffs worked in White Plains, New York and resided in Connecticut when their claims for benefits were denied. Texaco is a multi-national corporation that was headquartered in White Plains, New York (and Chevron/Texaco presently has offices in White Plains, New York) and the individuals designated to represent defendants during the depositions remain on the committee(s) which administered the Separation Pay Plan of Texaco administered out of White Plains, New York. Accordingly, it simply is not fair for defendants to force individual plaintiffs, who are at a significant financial disadvantage, to chase the administrators of the Plan across the country, simply because the defendant relocated.

Moreover, the District Court has wide discretion in setting the location of a deposition. In making such a determination, the Court may consider factors such as cost, convenience and litigation efficiency in determining whether to hold the deposition somewhere other than a deponent's place of business. See, e.g., Devlin v. Transportation Communications International Union, 2000 WL 28173 (S.D.N.Y. 2000) (attached hereto as Exhibit B). In the present case, it is clear that each of these factors weighs in favor of taking the depositions in Stamford, Connecticut.

As far as the costs of conducting the depositions in Stamford, Connecticut, there are two perspectives to consider: the effect the site has on total costs, and the relative ability of the parties to bear the expenses. See, e.g., Devlin v. Transportation Communications International Union, 2000 WL 28173, *3 (S.D.N.Y. 2000) (attached hereto as Exhibit B). In this case, there is the added issue that the plan requires defendants to pay except in cases of frivolous claims. (See discussion in Facts section, *supra*.)

With regard to total cost, the balance tips in favor of conducting the depositions in Stamford, Connecticut. Both plaintiffs' and defendants' attorneys are located in the same building in Stamford, Connecticut. Accordingly, the costs in terms of legal fees would be dramatically reduced by conducting the depositions in Connecticut. On the other hand, in order to conduct the depositions in Texas, both counsel would have to fly to Texas, as well as pay for room and board for a minimum of two nights in order to complete the required depositions. In addition, at least one of the plaintiffs would most likely accompany plaintiffs' counsel to the depositions, requiring another airline ticket, as well as room and board. Accordingly, the total cost would likely be more if the depositions were ordered to take place in Texas.