# EXHIBIT B

2000 WL 28173
24 Employee Benefits Cas. 2721
(Cite as: 2000 WL 28173 (S.D.N.Y.))

Page 2

H

United States District Court, S.D. New York.

Robert J. DEVLIN, Andrew Hagan, Thomas Hewson, Steven Milone (Mary Milone, his successor in interest), Frederick Rinckwitz, Individually, and on behalf of the Retired Employees and their Beneficiaries of the Transportation Communications International Union, Plaintiffs,
v.
TRANSPORTATION COMMUNICATIONS INTERNATIONAL UNION, Robert A. Scardelletti, International President, Plan Administrator and Fiduciary Under the Railway Labor Organizations Group Life, Hospital, Surgical and Medical Insurance Plan for Their Officers and Employees, Defendants.
Robert J. DEVLIN, Andrew Hagan, Thomas Hewson, Steven Milone (Mary Milone, his successor in interest), Frederick Rinckwitz, Individually, and on behalf of the Retired Officers, Employees their Beneficiaries of the Transportation Communications International Union, Plaintiffs,
v.
TRANSPORTATION COMMUNICATIONS INTERNATIONAL UNION and Robert A. Scardelletti, International President, Defendants.

Nos. 95 Civ. 0752 JFK JCF, 95 Civ. 10838 JFK JC.

Jan. 14, 2000.

*MEMORANDUM AND ORDER*

FRANCIS, Magistrate J.

*1 These consolidated cases are putative class actions brought on behalf of retired members and former officers of the Transportation Communications International Union (the "Union" or "TCU"). The actions currently include claims by the plaintiffs against the TCU and its president, Robert A. Scardelletti, challenging the Union's termination of the TCU Death Benefit Fund and the imposition of a $100 per month fee to participate in the TCU Medical Benefit Plan. The defendants have moved pursuant to Rule 26(c) of the Federal Rules of Civil Procedure for a protective order: (1) requiring the depositions of defendant Scardelletti and other TCU representatives to be taken in Maryland; (2) disallowing certain discovery as irrelevant; and (3) barring the plaintiffs from revealing certain confidential information to third parties or using it for purposes beyond the boundaries of this litigation. The plaintiffs have cross-moved for sanctions pursuant to Rule 37(c)(1) on the ground that in their motion the defendants mischaracterized as confidential certain information that is publicly available. After setting the factual context, I will address each of these discovery issues.

*Background*

A. *Medical Benefits*

The Union traditionally provided both its employees and its retirees with free medical benefits under the Railway Labor Organizations Group Life, Hospital, Surgical and Medical Insurance Plan (the "Medical Plan"). However, the Medical Plan was modified as of January 1, 1994 to require retirees to pay a $100 per month fee

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2000 WL 28173
24 Employee Benefits Cas. 2721
(Cite as: 2000 WL 28173 (S.D.N.Y.))

Page 3

in order to maintain their benefits. No such fee was imposed on active employees.

The plaintiffs challenged this change in the Medical Plan in the first of the two pending consolidated actions, 95 Civ. 0742 (S.D.N.Y.1995) ("*Devlin I*"). They argued that the modification violated the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq ("ERISA"), that it constituted age discrimination in violation of the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq., and that it was a common law breach of contract. In the second action, 95 Civ. 10838 (S.D.N.Y.1995) ("*Devlin II*"), the plaintiffs attacked the medical benefits fee on the additional ground that it violated the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. (the "ADEA").

B. *Death Benefits*

For many years, the Union paid benefits of $300 to the family of any employee or retiree who died. However, at the 1995 TCU convention the Death Benefit Fund was eliminated, purportedly for financial reasons. In *Devlin II*, the plaintiffs challenged this decision as a violation of ERISA and of the ADEA. Further, they asserted a common law claim for conversion of the monies in the Death Benefit Fund.

C. *Retirement Plan COLA*

In 1990, the trustees of the TCU Staff Retirement Plan (the "Retirement Plan"), the Union's pension program, instituted an automatic cost of living adjustment, or COLA. However, in 1995 the current Retirement Plan trustees brought an action in the United States District Court for the District of Maryland alleging that enactment of the COLA violated the fiduciary duty of the prior trustees because it placed too great a financial burden on Union funds. See *Scardelletti v. Bobo*, 897 F.Supp. 913 (D.Md.1995). The court agreed, and held that the current trustees could repeal the 1991 COLA amendment with respect to former employees who retired before 1991. See *Devlin v. Transportation Communications International Union*, 175 F.3d 121, 125 (2d Cir.1999) (explaining *Scardelletti v. Bobo*, Civil No. JFM-95-52, 1997 U.S. Dist. LEXIS 14498, at *29-33 (D.Md. Sept. 8, 1997)). The trustees did so, and also filed a related case in Maryland seeking a determination that the 1991 COLA amendment was null and void as of the date of its adoption. See *Scardelletti v. Santoro*, 97 Civ. 3464 (D.Md.1997). The defendants in that action are a class of all participants and beneficiaries of the Retirement Plan.

*2 In *Devlin II*, the plaintiffs challenged the elimination of the COLA on the ground that it constituted age discrimination.

D. *Prior Proceedings*

The Honorable John F. Keenan, United States District Judge, dismissed the plaintiffs' challenges to the Medical Plan participation fee in *Devlin I*. He found that the state law age discrimination claims were preempted by ERISA, and he granted summary judgment to the defendants on the ERISA claims, finding that the Medical Plan had been properly amended. See *Devlin I*, No. 95 Civ. 0742, 1995 WL 380374 (S.D.N.Y. June 26, 1995), and 1997 WL 570512 (S.D.N.Y. Sept. 15, 1997).

Judge Keenan also ruled in the defendants' favor in *Devlin II*. He dismissed the medical benefits fee claim on grounds of *res judicata*, relying on his prior

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

decision in *Devlin I*. He further granted summary judgment to the defendants on the death benefits claim, finding that the Death Benefit Fund, if it was governed by ERISA at all, had been properly amended, and that the plaintiffs had failed to demonstrate age discrimination since the elimination of benefits affected employees and retirees of all ages. Finally, Judge Keenan dismissed the COLA claims on the basis that they were being adjudicated in the district of Maryland. See *Devlin II*, No. 95 Civ. 10838, 1997 WL 634179 (S.D.N.Y. Oct. 15, 1997), and 1998 WL 37545 (S.D.N.Y. Jan. 29, 1998).

The plaintiffs then appealed Judge Keenan's decisions in both cases. With respect to *Devlin I*, the Second Circuit vacated dismissal of the plaintiffs' state law age discrimination claim relating to the Medical Plan fee, finding that it is not preempted by ERISA. In all other respects, the court affirmed Judge Keenan's decision. *Devlin v. Transportation Communications International Union*, 173 F.3d 94, 104 (2d Cir.1999).

In the appeal of *Devlin II*, the Second Circuit remanded the plaintiffs' claim that elimination of the Death Benefits Fund constituted conversion because this issue had not been considered by Judge Keenan. *Devlin*, 175 F.3d at 128. It also vacated dismissal of the plaintiffs' ADEA challenge to the Medical Plan participation fee and suggested that this claim might be consolidated with *Devlin I*. *Id*. at 128-30. Finally, the court again affirmed Judge Keenan in all other respects and found in particular that the COLA claim should be adjudicated in the Maryland actions. *Id*. at 130-32.

Thus, the claims remaining in the instant litigation are the claim of conversion with respect to the Death Benefit Plan and the federal and state age discrimination claims as they relate to imposition of a participation fee for the Medical Plan.

*Discussion*

A. *Location of Depositions*

The first discovery dispute concerns the location for the depositions of TCU representatives. The plaintiffs have noticed the depositions of Mr. Scardelletti, the TCU president, and the unidentified witnesses who will testify as to specific topics pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. Both notices identify New York as the place of deposition. (Memorandum in Support of Defendants' Motion for Protective Order ("Def.Memo."), Exhs. 1, 2). The defendants argue that these depositions should instead be conducted in Rockville, Maryland, which is the site of the TCU headquarters. That is the place of business of Mr. Scardelletti and of the persons likely to be designated as Rule 30(b)(6) witnesses. (Declaration of LuAnn Taylor dated Aug. 3, 1999, attached as Exh. 3 to Def. Memo. ("Taylor Decl.") ¶¶ 4, 5).

*3 The plaintiffs respond that New York is the proper locus for the depositions under the circumstances of this case. They argue that as retirees they have limited resources to conduct depositions outside New York. Further, they contend that the Union has offices in New York and that its representatives travel frequently.

As a general matter, there is a presumption that a defendant or non-party witness shall be deposed in the district where the deponent resides or has a principal

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

place of business. See Bank of New York v. Meridien BIAO Bank Tanzania Ltd., 171 F.R.D. 135, 155 (S.D.N.Y.1997); Doe v. Karadzic, Nos. 93 Civ. 878, 93 Civ. 1163, 1997 WL 45515, at *3 (S.D.N.Y. Feb. 4, 1997); Federal Deposit Insurance Co. v. LaAntillana, S.A., No. 88 Civ. 2670, 1990 WL 155727, at *2 (S.D.N.Y. Oct. 5, 1990) ("FDIC"); Mill-Run Tours, Inc. v. Khashoggi, 124 F.R.D. 547, 550 (S.D.N.Y.1989). However, the force of this presumption may be diminished if the plaintiff was constrained in choosing the forum for litigation. See Doe, 1997 WL 45515, at *3; Mill-Run, 124 F.R.D. at 550. Furthermore, it can be overcome by a showing that factors of cost, convenience, and litigation efficiency militate in favor of holding the deposition somewhere other than the district of the deponent's residence or place of business. See Doe, 1997 WL 45515, at *3- *4; FDIC, 1990 WL 155727, at *3; Mill-Run, 124 F.R.D. at 550-51.

1. Choice of Forum

In the instant cases, the plaintiffs have made no argument that they were limited in their ability to choose the forum for litigation. Indeed, as discussed above, some of the same issues initially raised in the complaint here are currently being litigated in Maryland. Therefore, the standard presumption for location of depositions is not weakened.

2. Cost

Cost considerations relevant to the location of a deposition may be looked at from two perspectives: the impact that the choice of site has on total costs and the relative ability of the parties to bear the expenses. Here, overall costs would be greater if the depositions were held in New York. While plaintiffs' counsel is based in New York, defendants' attorney works from Washington, D.C., which is close to the TCU headquarters. Thus, the choice of location would have little effect on the total costs incurred by counsel. The critical additional costs are those that would be generated only if the deponents were required to appear here rather than in the district of their residence.

There is little doubt that any costs are more easily borne by the Union than by any individual plaintiff. However, these cases were filed as class actions. Thus, the plaintiffs implicitly represented that they had the ability to fund the litigation, either through the aggregation of their own resources or on the basis that the plaintiffs' counsel would advance the costs of the lawsuit. See Weber v. Goodman, 9 F.Supp.2d 163, 172-73 (E.D.N.Y.1998); Krueger v. New York Telephone Co., 163 F.R.D. 433, 443 n. 6 (S.D.N.Y.1995). Having committed to pursuing a class action, the plaintiffs cannot now complain of the relatively minor cost of funding their attorney's travel from New York to Maryland to take depositions. Thus, the cost factor tips in favor of deposing the TCU representatives in Maryland.

3. Convenience

*4 Factors relevant to convenience include any hardship to counsel, the residence of the deponents, and the extent to which the witness' affairs might be disrupted. See Mill-Run, 124 F.R.D. at 551. In this case, one attorney or the other will be discommoded, depending upon the choice of site. In any event, the convenience of counsel is less compelling than any hardship to the witnesses.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

The witnesses here all work in Maryland and presumably reside near their place of business. (Taylor Decl. ¶ 5). They are all high-ranking TCU officers and employees whose absence from their workplace would have an adverse impact on the functioning of the Union. (Taylor Decl. ¶¶ 1, 4). The plaintiffs argue that the TCU has offices in New York and that the deponents are often absent from Union headquarters attending the TCU convention and conducting union business. But the deponents work in the Union's Maryland headquarters, not in any New York office. And the fact that a deponent is required to travel for business purposes may make it all the more important that he or she be available at the principal place of business at other times. The convenience criteria thus favor conducting the depositions in Maryland.

4. *Litigation Efficiency*

Considerations of efficient litigation dictate the same result. Relevant Union records that may be referred to during the depositions are likely located in Maryland. Furthermore, while judicial supervision of the depositions may be necessary, this can be accomplished by telephone, as would likely be the case even if the depositions were held here. Cf. Mill-Run, 124 F.R.D. at 551 (judicial supervision by telephone less feasible for overseas depositions).

For all of these reasons, the defendants' application for a protective order designating the District of Maryland as the site for the depositions of TCU representatives is granted.

B. *Scope of Discovery*

The defendants have raised two general issues concerning limitations on the scope of discovery. First, they contend that the TCU Staff Retirement Plan is irrelevant to any issue currently encompassed by the litigation, and discovery related to that program should therefore be disallowed. Second, the defendants argue that the Union's financial information after January 31, 1996 is not a legitimate subject of inquiry.

1. *Staff Retirement Plan*

The defendants maintain that the Staff Retirement Plan is now irrelevant because it relates only to the COLA issue which was dismissed from these cases and is being litigated in Maryland. The plaintiffs do not dispute that such discovery would be pertinent only to the COLA claim. However, they contend that they should be permitted to amend their complaint to reassert that claim here because a proposed settlement of the Maryland actions threatens their ability to raise it in that forum. (Memorandum of Law In Opposition to Defendants' Motion for Protective Order ("Pl.Memo.") at 11-13). The plaintiffs' motion to amend their complaint is currently pending before Judge Keenan.

*5 While relevance is broadly construed in the context of discovery, "it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken...." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 352 (1978) (footnote omitted). That is the case here. Apart from its connection to the dismissed COLA claim, information about the Staff Retirement Plan is only pertinent to the extent that the plaintiffs could use it to attack the proposed settlement of the Maryland actions. But, "when the purpose of a discovery request is to gather

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2000 WL 28173
24 Employee Benefits Cas. 2721
(Cite as: 2000 WL 28173 (S.D.N.Y.))

Page 7

information for use in proceedings other than the pending suit, discovery properly is denied." *Id.* at 352 n. 17 (citations omitted); *see also Southwest Hide Co. v. Goldston*, 127 F.R.D. 481, 484 (N.D.Tex.1989). Therefore, no discovery shall be taken concerning the Staff Retirement Plan, though this determination shall be reconsidered in the event that Judge Keenan allows the plaintiffs to replead the COLA claim.

2. *Union Financial Information*

Nor are the plaintiffs entitled to discovery of the Union's financial information for any period after January 31, 1996. The plaintiffs seek such information on the grounds that: (1) "it is directly relevant to tracing what has become of the proceeds of the funds from the ... Death Benefit Fund," (2) it would undermine the Union's claims that it was motivated by financial hardship to impose the Medical Fund participation fee and eliminate the Death Benefit Fund, and (3) it is relevant to the defendants' purported breach of their fiduciary duty. (Pl. Memo. at 14-16).

None of these arguments withstand scrutiny. The plaintiffs allege that the decision to eliminate the Death Benefit Fund was made in 1995 and that a conversion took place when the monies were transferred to the Union's general fund by January 1996. Thus, the Union finances after January 31, 1996 cannot be relevant to that claim. Similarly, the decision to impose the $100 fee on retirees for participation in the Medical Plan was made in 1993 and implemented effective January 1, 1994. Any information pertinent to a fiscal rationale for that change would therefore relate to the period prior to 1994. The plaintiffs' vague assertions of breach of fiduciary duty do not relate to any claim currently in their complaint and therefore do not justify broader discovery. Finally, until the plaintiffs have prevailed they are not entitled to discovery to trace funds that would be available to satisfy a judgment.

C. *Specific Discovery Requests*

The defendants further object to certain specific topics of discovery identified in the plaintiffs' Rule 30(b)(6) deposition notice.

First, Request No. 8 seeks information concerning money in the TCU Retirement Plan lost through investment in the Crabbe Huson Small Cap Fund. But because the request relates to the Staff Retirement Plan, it is relevant only to the dismissed COLA claim. Furthermore, it cannot be pertinent to any defense of financial necessity since the Union itself never invested with Crabbe Huson, and the Staff Retirement Plan did not do so until May 1997. (Taylor Decl. ¶ 2). Accordingly, the defendants' objection to Request No. 8 is upheld.

*6 Next, in Request No. 21, the plaintiffs seek the names and addresses of all participants in the Staff Retirement Plan. While this information would be relevant to the COLA claim, that claim, as discussed above, is not within the pleadings currently before the Court. Nevertheless, the plaintiffs contend that they need to identify all retirees to ascertain "whether TCU engages in a discriminatory pattern or practice in its treatment of its older employees and/or retirees...." (Pl. Memo. at 19). This argument sweeps far too broadly. First, the plaintiffs have not limited their demand to the identity of retirees who have at some time made an allegation of discrimination against the TCU. Nor have they articulated how any of

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2000 WL 28173
24 Employee Benefits Cas. 2721
(Cite as: 2000 WL 28173 (S.D.N.Y.))

Page 8

a variety of potential claims of age discrimination by retirees might relate to the subject matter at issue here: the specific decision by the defendants to impose a surcharge on retirees for participation in the Medical Plan. Absent some more direct nexus between the discovery demands and the claims at issue in this litigation, the identity of all participants in the Staff Retirement Plan need not be disclosed.

In Request No. 29, the plaintiffs seek information about the compensation and benefits provided to active employees and TCU officers after January 1989. This information is relevant to any argument by the defendants that the challenged decisions were driven by economic necessity. However, since, as discussed above, those decisions were made prior to February 1996, only information pertaining to the period through January 1996 need be produced.

Plaintiffs' Request No. 30 asks for the identity of TCU officers and employees whose compensation is paid through a Department of Labor manpower training program. The plaintiffs contend that "the amount of money TCU receives from the Department of Labor is directly related to TCU's ability to handle the potential liability it faces due to the Trustees' illegal conversion of the Death Benefit Fund." (Pl. Memo. at 21). But, as discussed above, it is premature to take discovery relevant only to enforcement of a judgment that has not yet been won. Accordingly, the defendants need not produce the requested information.

Similarly, the information demanded in Requests No. 31 and 32--the cost of the TCU's 1999 convention and the source of contributions to the cost of that event-- has no relevance to the claims in this case. The convention post-dated the decisions at issue and so cannot be pertinent to arguments of financial necessity. While the plaintiffs argue that they should be permitted to "trace" funds allegedly converted from the Death Benefit Fund, they have not asserted that they have any reason to believe that the alleged converted monies were used to pay for the convention.

Finally, plaintiffs' Requests No. 34, 35, and 36 relate to an escrow account established by the TCU pursuant to a court order in an unrelated case. The plaintiffs have not attempted to justify their demand for such information here, and it therefore need not be disclosed.

D. *Confidentiality Order*

*7 The parties have failed to agree on the appropriate form of a confidentiality order that would govern the dissemination of information obtained through discovery in these cases. The defendants argue that any such order should prevent pretrial disclosure of confidential information and bar the plaintiffs or others from using information obtained through discovery for purposes unrelated to this litigation. In particular, the defendants are concerned about the use or dissemination of the TCU's financial records and its lists of retirees and benefit plan members. The plaintiffs oppose any such restrictions.

Pursuant to Rule 26(c)(7) of the Federal Rules of Civil Procedure, a court may issue a protective order providing that confidential information not be revealed in discovery or that it be revealed only in a designated way. The burden is on the party seeking the protective order to demonstrate good cause for its issuance. See

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

*In re Agent Orange Products Liability Litigation*, 821 F.2d 139, 145 (2d Cir.1987); *Pavlovich v. City of New York*, No. 91 Civ. 5030, 1992 WL 230472, at *4 (S.D.N.Y. Aug. 31, 1992). Here, the defendants have not met this burden with respect to the full range of restrictions that they seek.

The defendants are concerned that the plaintiffs will use information obtained in this litigation to bolster their position in the Maryland actions or in other proceedings. Therefore, the defendants rely on the Supreme Court's admonition in *Oppenheimer Fund*, 437 U.S. at 352 n. 17, that pretrial disclosure is not intended to assist in litigation other than that for which the discovery is being taken. But the defendants are confusing the initial determination of whether information should be disclosed with the purposes for which it may thereafter be used. In *Oppenheimer Fund*, the Court was addressing only the circumstance in which a party seeks to *obtain* information irrelevant to the litigation in which it is sought in order to use it elsewhere.

"However, where the discovery sought is relevant to a good faith [claim or] defense in the federal case, the mere fact that it may be used in other litigation does not mandate a protective order." *Dove v. Atlantic Capital Corp.*, 963 F.2d 15, 19 (2d Cir.1992). On the contrary,

> [s]o long as the initial litigation has not itself been instituted in bad faith for the purpose of obtaining documents for other actions, and so long as the interests of those represented in the initial litigation are being fully and ethically prosecuted, the Federal Rules do not foreclose the collaborative use of discovery.
>
> *Cipollone v. Liggett Group, Inc.*, 113 F.R.D. 86, 91 (D.N.J.1986). Accordingly, "the mere fact that plaintiffs intend to use these materials outside of this litigation is not 'good cause' to support the protective order, unless defendants can establish that the discovery was not procured in good faith for the purposes of this litigation." *Id.* at 93; see also *Baker v. Liggett Group, Inc.*, 132 F.R.D. 123, 126 (D.Mass.1990). Since I have already precluded discovery of information relevant only to other litigation, such as that concerning the COLA claim, there is no basis for a further limitation on the use of material legitimately discovered here.

*8 The defendants also argue that disclosure of the names and addresses of TCU retirees for purposes other than this litigation would impinge on the privacy rights of these persons. [FN1] Indeed, in some circumstances, the privacy rights of non-parties may be invaded if information obtained through discovery was widely disseminated. For example, in *Welch v. Board of Directors of Wildwood Golf Club*, 146 F.R.D. 131, 141 (W.D.Pa.1993), the court issued a protective order barring the parties from disclosing information regarding health, financial, or other personal problems of the members of the defendant club, or regarding disciplinary action taken against them.

> FN1. This may not be an immediate concern, since I have denied the plaintiffs' outstanding request for such information. However, the plaintiffs may reframe their request in a manner that is targeted to more relevant information, and it is therefore appropriate to address this issue in drafting a confidentiality order.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2000 WL 28173
24 Employee Benefits Cas. 2721
(Cite as: 2000 WL 28173 (S.D.N.Y.))

Page 10

But this is not such a case. Here, the plaintiffs have sought only names and addresses of retirees, presumably to contact them about instances of alleged discrimination. Revealing that someone is a retired employee and perhaps contacting them regarding litigation hardly runs the risk of humiliation that was at issue in *Welch*.

This does not mean that there should be unrestricted disclosure of confidential information in this case. It would hardly be appropriate for the plaintiffs to share proprietary TCU financial information with an employer with which the Union is bargaining or to sell the list of TCU retirees to a mail order company. Therefore, any confidential information disclosed in discovery shall be used solely for purposes of this litigation or any related pending or potential litigation. Further, to the extent that such information is shared in connection with other litigation, it shall be subject to all provisions of the confidentiality order entered here. See *Baker*, 132 F.R.D. at 126.

E. *Motion for Sanctions*

Finally, the plaintiffs seek sanctions on the ground that the defendants misrepresented that the TCU financial records are confidential while at the same time they were making those records public in the Maryland action. This application is apparently based on a misunderstanding of the records that the defendants claim are confidential. They do not seek protection for the audited financial statements that were disclosed in the Maryland action. Rather, they have asserted a claim of confidentiality with respect to the TCU's internal accounting documents such as balance sheets, ledgers, and budget reports that were not publicly disclosed. Therefore there is no inconsistency in the defendants' position and no basis for sanctions.

*Conclusion*

For the reasons set forth above, the defendants' motion for a protective order is granted in that: (1) Robert A. Scardelletti and other TCU representatives shall be deposed in Maryland; (2) there shall be no discovery regarding the Staff Retirement Plan; (3) discovery of TCU financial information shall be limited to the period prior to February 1, 1996, and (4) the defendants need not respond to the plaintiffs' discovery Requests No. 8, 21, 30, 34, 35, or 36 and shall respond to Request No. 29 only with respect to information for the period prior to February 1, 1996. The defendants' application for a protective order barring the plaintiffs from using confidential information obtained through discovery for any purpose outside this litigation is denied. Instead, such information may be used only for purposes of this litigation or related or pending or prospective proceedings, provided that it continue to be subject to the confidentiality order to be entered here. Counsel shall submit a draft confidentiality order for my approval. Finally, plaintiffs' application for sanctions is denied.

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works