Westlaw.

2000 WL 33341051    Page 1
(Cite as: 2000 WL 33341051 (D.Del.))

**H**
Only the Westlaw citation is currently available.

United States District Court, D. Delaware.

Orrin T. SKRETVEDT, Plaintiff,
v.
E.I. DUPONT DE NEMOURS AND COMPANY, a
Delaware corporation; E.I. Dupont de
Nemours and Company, Plan Administrator; Pension
and Retirement Plan; Hospital
and Medical-Surgical Plan; Dental Assistance Plan;
Non Contributory Group Life
Insurance Plan; Contributory Group Life Insurance
Plan; Total and Permanent
Disability Income Plan; Savings and Investment
Plan; Tax Reform Act Stock
Ownership Plan; and Short Term Disability Plan
Defendants.

No. CIV. A. 98-61-MPT.

Oct. 31, 2000.

John M. Stull, Esquire, Wilmington, Delaware; counsel for plaintiff.

Gretchen Ann Bender, Esquire, Morris, James, Hitchens & Williams LLP, Wilmington, Delaware; Evelyn H. Brantley, Esquire, E.I. duPont de Nemours & Co., Wilmington, Delaware; counsel for defendant.

OPINION

THYNGE, Magistrate J.

I. Introduction

*1 On September 6, 2000, summary judgment was granted to the defendants, E.I. duPont de Nemours & Company, et al., in this matter upon having found defendants' decision to deny plaintiff, Orrin T. Skretvedt, disability benefits under defendants' retirement and disability benefit plans not arbitrary and capricious under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. Pursuant to Rule 59 of the Federal Rules of Civil Procedure and Local Rule 7.1.5, plaintiff now requests this court to reconsider its decision.

Specifically, plaintiff reargues, based on additional citations to the existing record and additional evidence, that defendants' administration of their benefit determination procedure was arbitrary and capricious. Further, plaintiff contends that the court failed to present any factual basis for failing to find arbitrary and capricious action by defendants. This court finds that plaintiff has failed to demonstrate based upon a change in controlling law, newly discovered evidence, or legal or factual error that plaintiff's motion for reargument or reconsideration is appropriate. On this basis, plaintiff's motion is denied. However, because the court finds that plaintiff has misunderstood its reasoning in awarding summary judgment to defendants, the court will try to further elucidate why defendants' motion was granted.

II. Background

As explained in detail in this court's opinion on summary judgment, *Skretvedt v. E.I. duPont de Nemours and Company, et al.*, 98-61-MPT, slip op. at 2-7 (D.Del. September 6, 2000), plaintiff, Orrin T. Skretvedt was a Senior Research Engineer with defendant, E.I. duPont de Nemours and Company ("DuPont") from June 28, 1974 until February 7, 1995, at which time he was terminated for having misappropriated a company fax machine. At the time of plaintiff's termination, he was on paid leave from DuPont because of the misappropriation, and had been diagnosed by one doctor as having "Adjustment Disorder with Mixed Emotional Features, i.e., anxiety and depression." *See* slip op. at 14. Due to plaintiff's termination, he was not eligible for disability benefits from defendant. However, following the exhaustion of plaintiff's administrative remedies through the Equal Employment Opportunity Commission ("EEOC"), [FN1] plaintiff, through counsel, reached an agreement with defendants allowing plaintiff to apply for benefits. *Id.* at 4.

FN1. The EEOC was unable to conclusively find any violations of the ADA and thus issued plaintiff a right to sue letter. *Skretvedt v. E.I. duPont de Nemours and Company et al.*, 98-61-MPT, slip op. at 4 (D.Del. September 6, 2000).

Defendants provide two types of disability benefit

plans: a "Pension and Retirement Plan" ("P & I Plan") which contains an "Incapability" Pension and a "Total and Permanent Disability Plan" ("T & P Plan"). An applicant must meet the requirements of the P & I Plan before they can apply for T & P Plan benefits. The P & I Plan provides "incapability" pension benefits to a covered employee provided they have 15 years of continuous employment with DuPont and have become incapable of performing their jobs at the degree of efficiency required by DuPont. *Id.* at 6. As was required, plaintiff initially applied for disability benefits under the P & I Plan. On May 23, 1996, the DuPont Board of Benefits and Pensions ("Board"), the body who reviews and determines an applicant's eligibility for benefits, denied plaintiff's application. In its letter to the plaintiff, the Board indicated that it found plaintiff not permanently incapable of performing the duties of his job with the degree of efficiency required by DuPont based upon its review of the medical information submitted by plaintiff. Specifically, the Board noted that plaintiff's diagnosed symptoms of depression and anxiety were not sufficient to support a finding of permanent incapability. *Id.* at 11.

*2 On February 4, 1998, plaintiff, having appealed the Board's decision but having received no response, filed a complaint alleging various violations of ERISA, 29 U.S.C. § 1001 et seq., related to the denial of his application. Upon consideration of the claims raised in the complaint, on June 23, 1998, defendants agreed to an appellate review of plaintiff's application and plaintiff's complaint was subsequently stayed. [FN2] Following the submission of additional medical information by plaintiff to the Board, the Board conducted its appellate review of plaintiff's application. On October 31, 1998, the Board again denied plaintiff's application citing findings similar to those expressed in the initial denial letter. *Id.* at 6.

> FN2. On August 31, 2000, Judge Sue Robinson signed an order, based upon a stipulation entered into by the parties, which precluded judicial review on all issues but the Board's final (appellate) decision on plaintiff's application. *See* slip op. at 10.

On September 28, 1999, plaintiff revived his complaint and the instant litigation resumed. In his complaint, plaintiff alleged that defendants "arbitrarily and capriciously" denied him disability benefits in violation of ERISA § 502. 29 U.S.C. § 1132(a)(1)(B). Specifically, plaintiff asserted that the weight of the medical information presented to the Board favored a finding for plaintiff, that defendants presented no evidence to refute plaintiff's condition, and that there was an inherent conflict of interest in the Board's review of plaintiff's application which translated into an unfair determination of plaintiff's eligibility for benefits. Plaintiff contended that this alleged conflict necessitated that the court use a higher standard of review than usually required. [FN3]

> FN3. According to the U.S. Supreme Court in *Firestone Tire and Rubber Co. v. Bruch*, if a benefit plan assigned the benefits administrator or fiduciary discretion to determine eligibility for benefits, a trial court would review that determination based upon an "arbitrary and capricious" standard. 489 U.S. 101, 115 (1986).

On May 15, 2000, plaintiff filed a motion for summary judgment reemphasizing the arguments raised in his complaint. Similarly, on May 16, 2000, defendants also filed a motion for summary judgment. Therein, defendants asserted that the decision of the Board was not arbitrary and capricious and was emblematic of the information presented and their standard of review. Further, defendants asserted that no conflict actually existed and that the Board member with the alleged conflict appropriately recused himself from the decision-making process.

On June 28, 2000, following briefing on the dispositive motions, this court heard oral arguments on the same. On September 6, 2000, after extensive review and consideration, the court awarded summary judgment to defendants and denied the same to plaintiff. The court also denied plaintiff's motion to amend the complaint.

Initially, the court concluded that as the aforementioned benefits plans gave discretion to DuPont, as the plan administrator, to determine eligibility, that "arbitrary and capricious" action was the proper standard of review. *Id.* at 11. The court was not convinced that the conflict alleged by plaintiff was present and thus a higher standard of review was unwarranted. *See Pinto v. Reliance Standard Ins. Co.*, 214 F.3d 377 (3d Cir.2000) (finding an inherent conflict of interest necessitating a heightened standard of review when the pool of money from which benefits are paid is the same as that from which an administrator generates its

profits).

*3 Using the "arbitrary and capricious" standard, the court evaluated the Board's review of plaintiff's appeal. Acknowledging both a limited record of review and a letter of explanation rivaled only by the record itself in its brevity, the court found that the Board's review and decision was neither arbitrary nor capricious, and thereby had satisfied its obligations under ERISA § 502. *Id.* at 13. In particular, the court, cognizant that the administrator's decision was entitled to deference, found it fair and reasonable for the Board to have concluded that plaintiff was not permanently incapable of performing the duties of his job, because the medical information submitted on plaintiff's behalf was inconclusive as to his incapability. *Id.* at 13-15.

Additionally, the court noted that the Board complied with ERISA § 503 because its denial letter specifically cited the plan provision plaintiff failed to satisfy and indicated why said provision was not satisfied. Further, while more detail regarding plaintiff's ineligibility would have been welcome, it was not required by either § 503, or its regulatory counterpart, 29 C.F.R. § 2560.503-1(h)(3). [FN4] Thus, the court also found that the Board did not act arbitrarily and capriciously regarding the statutory requirements under § 503. *Id.* at 16-17.

> FN4. Although only the Board's appellate review was under consideration on the cross-motions for summary judgment, the court noted that the Board's initial letter of denial also met the requirements of ERISA § 503, as well as 29 C.F.R. § 2560.503-(1)(f). *See* slip op. at 17 n. 23.

Finally, the court determined that there was no evident "bad faith" or "conflict of interest" in the consideration of plaintiff's appeal. Although plaintiff asserted that specific members of the Board were inherently conflicted due to their involvement in other legal matters, the court found that plaintiff provided inadequate factual support for his assertions, and found no independent factual basis to support these claims. Thus, finding a heightened standard of review inappropriate, the court again determined there had been no arbitrary and capricious action by the defendants related to the review and determination of plaintiff's application for disability benefits. *Id.* at 19-20.

III. Applicable Legal Standard

It is the practice within this district and throughout this circuit to analyze with precision motions for reargument or reconsideration of judgment filed pursuant to Rule 59 of the Federal Rules of Civil Procedure [FN5] and Local Rule 7.1.5, [FN6] because such motions can often be misused by a movant who requests reargument that would not reasonably alter the prior determination of the court or "would merely 'allow wasteful repetition of arguments already briefed, considered and decided.' " *Brambles USA, Inc. v. Blocker*, 735 F.Supp. 1239, 1240 (D.Del.1990) (citations omitted). *See also Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231-32 (3d Cir.1995) (same). Further, courts should be particularly vigilant that motions for reargument or reconsideration are not used "as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided," *Brambles*, 735 F.Supp. at 1240 (citing *Weissman v. Fruchtman*, 124 F.R.D. 559, 560 (S.D.N.Y.1989), or misemployed as a "substitute for an appeal from a final judgment." *Id.* Thus, a district court is implicitly charged with the responsibility of excepting cases for reargument or reconsideration that would otherwise cause a "never ending polemic between the litigants and the court." *Oglesby v. Penn Mut. Life Ins. Co.*, 877 F.Supp. 872, 892 (D.Del.1994), *aff'd*, 127 F.3d 1096 (3d Cir.1997).

> FN5. As noted by the court in *Karr v. Castle*, while a motion for consideration is not "explicitly provided for" under the Federal Rules of Civil Procedure, it is "not uncommon in federal practice." 768 F.Supp. 1087, 1090 (D.Del.1991). However, typically, such a motion is invoked pursuant to Rule 59.

> FN6. RULE 7.1.5.
> Rearguments.
> A motion for reargument shall be served and filed within 10 days after the filing of the Court's opinion or decision. The motion shall briefly and distinctly state the grounds therefor. Within 10 days after service of such motion, the opposing party may serve and file a brief answer to each ground asserted in the motion. The Court will determine from the motion and answer whether reargument will be granted.
> D. Del. L.R. 7.1.5 (1995).

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

*4 Therefore, in order to ensure that an appropriate motion is awarded reargument or reconsideration, the court must find that, in entering judgment, it has misunderstood a party, addressed irrelevant issues or made errors "not of reasoning but of apprehension." Brambles USA, Inc. v. Blocker, 735 F.Supp. at 1241 (citing Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D.Va.1983)). This standard was made plain by the Third Circuit in Max's Seafood Café by Lou-Ann, Inc. v. Quinteros, wherein it noted since the purpose of a motion for reconsideration is to "correct manifest errors of law or fact or to present newly discovered evidence," a district court may alter or amend its judgment provided the movant demonstrates at least one of the following: (1) a change in the controlling law; (2) availability of new evidence not available when summary judgment was granted; or (3) need to correct a clear error of law or fact or to prevent manifest injustice. 176 F.3d 669, 677 (3d Cir.1999) (citing North River Ins. Co., v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir.1995).

IV. Discussion

Now, pursuant to Rule 59 and Local Rule 7.1.5, plaintiff requests the court to reconsider its ruling on the aforementioned case dispositive motions. In his motion, plaintiff asserts that the court granted defendants' motion without any facts in support of the Board's determination of ineligibility, and thus does not demonstrate why their actions were not "arbitrary and capricious" under ERISA. Plaintiff also asserts that he now has "newly discovered evidence" which supports reconsideration of the case.

a. Third Circuit Standard

Although plaintiff asserts the two general arguments above as the basis for his motion, the court finds that neither meet the standard for reargument or reconsideration under established Circuit precedent and as a result do not address the purpose of such a motion to "correct manifest errors of law or fact or to present newly discovered evidence." The court will examine why plaintiff has failed to meet his burden in this regard.

1. Controlling Law

The first exception can be summarily dispatched as there has been no change in the controlling law.

2. New Evidence

The second exception requires the present availability of new evidence not available to the movant when the court granted summary judgment. To this end, plaintiff presents the deposition testimony of Dr. Benjamin Ramirez, delegate to the Board of Benefits and Pensions, from this case, the trial testimony of Dr. Ramirez from Skinner v. Dupont Co., et al., C.A. No. 92-147-SLR, and the affidavit of Valetta M. Evans, who was an Employee Assistance Consultant with DuPont.

First and foremost, the deposition testimony of Dr. Ramirez in this case in no way, shape, or form constitutes new evidence. [FN7] The entirety of Dr. Ramirez's deposition testimony was presented to the court in plaintiff's appendix to his motion for summary judgment. (D.I.98) Similarly, the affidavit of Ms. Evans taken on May 12, 1995, was also previously presented to the court in the same appendix. Id. Further, the argument for which this evidence is presented was previously made in plaintiff's motion for summary judgment and is, therefore, not the novel argument anticipated as an appropriate basis for an motion to reargue or reconsider. See Brambles, 735 F.Supp. at 1240 ("[r]eargument should not be granted where it would merely 'allow wasteful repetition or arguments already briefed, considered and decided' "). To the extent that plaintiff considers this evidence or these arguments "new," the court would remind plaintiff that motions for reargument or reconsideration are not the place to assert facts or issues previously available, but inexplicably omitted, as the preceding assertions almost certainly would have been. Brambles, at 1240 (citing Weissman, 124 F.R.D. at 560). Therefore, this evidence and argument, upon which this court has already rendered judgment, is not an appropriate basis for reargument or reconsideration.

FN7. In fact, plaintiff's opening line is that "[p]laintiff now asks for Reargument [sic] and reconsideration based on further citations to the record ...." (D.I.121.)

*5 However, in light of plaintiff's misunderstanding, the court will attempt to further elucidate the findings it made in the opinion below. In that opinion, the court found that defendants made it clear to plaintiff what documentation would necessarily help the Board assess whether plaintiff was permanently incapable of performing the duties of his job as is required under ERISA § 503. See slip op. at 17 n. 23. The initial denial letter to plaintiff of May 23, 1996 stated specifically that objective evidence such as

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

"significant or positive results of tests such as MRI, x-ray reports, and complete medical evaluations ...," indicating total impairment of function would help make plaintiff's appeal successful. *Id.* at 5 n. 8. Presumably, plaintiff understood this letter as he submitted at least one document which corresponded with the requested information--a "psychological evaluation report" from Dr. Richard Zonderman was submitted among the additional materials presented to the Board on appeal. *Id.* at 10 n. 12. Therefore, to the extent that Dr. Ramirez testified that a properly prepared application or "file" would contain documentation of hospitalizations, treatments and reports, his testimony is consistent with the April 23, 1996 denial letter, and appropriate under ERISA § 503.

Additionally, plaintiff seems particularly consumed with the notion that the Board did not consider all of the information presented to it by him, or considered only information generated before his termination from DuPont. As the court expressed in its opinion, the Board had considered all of the information presented to it on appeal by plaintiff. *See* slip op. at 10 n. 12. Defendants' November 16, 1998 letter denying plaintiff's application on appeal specifically stated that it considered all evidence submitted by plaintiff, both pre and post-termination, including new documents generated as recent as July 29, 1998. (D.I. 98 at A-40) Because plaintiff presented no evidence demonstrating that the Board did not consider this information in its entirety, the court did not then, nor does it now find the Board's review to be arbitrary and capricious.

Plaintiff also proffers as "new" evidence, the questioning of Dr. Ramirez by Judge Sue Robinson during trial in the *Skinner* case. While this court has a general concern about using testimony from an unrelated case as evidence herein, the court also finds that the testimony is not novel, and is instead, within the scope of the discovery that plaintiff previously conducted or had an opportunity to conduct. Additionally, this testimony is of questionable relevance to the matters at bar.

First, the questions asked by Judge Robinson directed to the issue of medical evaluations, "windows of recovery," and the Board's formal review process, are versions of, if not the same as, the inquiries and arguments made by plaintiff on summary judgment and in the instant motion. Reconsideration based on regurgitated arguments is not warranted. *See Brambles,* 735 F.Supp. at 1240. Further, this court already noted that it found the medical documentation provided by plaintiff to the Board, spanning over three and one-half years, from November 1994 through July 1998, to have been reviewed in its entirety. The Board's review demonstrated adequate consideration of the information provided and thus was not arbitrary or capricious. To the extent that Dr. Ramirez, individually, or the Board, as a whole, considered information generated prior to plaintiff's termination during its initial review is irrelevant, because not only was that review not an issue in this case, [FN8] but upon final review the Board also considered numerous documents generated during the two plus years after the initial review had occurred.

FN8. *See* note 2, supra.

\*6 Second, this court questions the relevance of testimony from a case factually unrelated to the one at bar, where the process of review and the "reviewers" changed over a number of years, and a case in which that court awarded defendant summary judgment on similar issues. [FN9] Thus, while this court appreciates Judge Robinson's general concerns about the review process, it finds no relationship between what occurred in *Skinner* and the events herein. Therefore, as plaintiff has presented no new evidence in support of his motion, his motion on this basis will be denied.

FN9. Judge Robinson awarded summary judgment on the issue of whether sufficient notice and explanation pursuant to ERISA § 503, was provided by defendant to plaintiff. *Skinner v. Dupont & Co. et al.,* 2000 WL 376452 at \*7-8 (D.Del. Mar. 27, 2000).

3. Clear Error and Manifest Injustice

The third possible basis for granting a motion for reconsideration is that it is necessary to reverse clear error of law or fact made by the court or to prevent a manifest injustice. First, plaintiff argues that the Board's determination was based upon clear factual error because it "utilized only documentary evidence in existence at the time of Plaintiff's job termination as the only factual reason that could be considered in determination of Plaintiff's Incapability." (D.I. 121 at 2 (emphasis in the original)) Again, the court cannot make it can more plainly clear, that on appeal, it found the Board to have considered all of the documentation submitted by plaintiff. Plaintiff has not presented any evidence to the contrary.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Therefore, there has been no discernible error in this regard by either the Board, or this court.

Second, plaintiff argues that the court's opinion contains factual errors and quotations from the record that do not provide a basis for its opinion. To this end, plaintiff's counsel suggests that he was misquoted when asked by the court during oral argument whether the Board should analyze plaintiff's circumstances at the time of his termination to determine his level of incapability. In the opinion below, the court referred to the term "circumstances" as "medical information present." Plaintiff argues this was an error on the court's part and, in particular, contended that:

> This is a misquote for the following reason: Judge Thynge asked 'Do you agree with me, though, that the evidence that the Board has to look at is the circumstances of your client at the time of his termination.' The Court's interpretation of the word 'circumstances' as meaning 'medical information present' is defined as 'surrounding conditions' by Merriam Webster Dictionary, 1995, and in no way does it represent a plan standard that would require limiting factual documentation evidenced by pieces of paper. What Plaintiff's counsel was accepting was the Court's statement that Plaintiff's condition, to be defined as his medical condition would be fairly established as of his job termination date.

(D.I. 121 at 6 (emphasis in the original)) Initially, the court would note that in asking the question, it sought to establish, from plaintiff's perspective, the point at which his incapability, for purposes of review, could be established. Thus, the court found that plaintiff's incapability could be determined by reviewing documented medical information available as of the time of his termination. However, the court did not conclude that this information could or should be reviewed to the exclusion of subsequently generated evidence, nor did the court find that defendants did so. In fact, as reflected in the record, information generated subsequent to plaintiff's termination was considered by the Board, both initially, and on appeal. *See* slip op. at 4 n. 4; 10 n. 12. Therefore, to the extent there has been an error, it was the misinterpretation of this court's opinion by plaintiff.

*7 In addition, while there is an obvious difference between "medical information present" and "circumstances" as defined, in this context, however, they are functionally the same. Because plaintiff's medical condition was relevant only to the extent that plaintiff could demonstrate to the Board its severity and permanency, it would be reflected in the "medical information" present at the time of plaintiff's termination. As there was no proof that the Board refused to consider such information, either initially or on appeal, then there has been no demonstrated error of law or fact by the court in making its findings.

Finally, at no time does plaintiff argue that a "manifest injustice" has occurred. While the court acknowledges that a general tenor of unjust treatment might be inferred from plaintiff's argument, the court does not purport to speculate as to what plaintiff's argument is, nor is it obligated or inclined to do so. Mere inference of inequity is not sufficient to carry the day. Thus, as plaintiff has presented nothing to suggest that the court's assessment of the facts and circumstances in the instant matter was unfair or inequitable, the court's earlier determination remains.

b. ERISA, Summary Judgment and the Standard of Review

In his brief on reargument, plaintiff also spends considerable time arguing there was no factual evidence presented demonstrating his non-incapability, and thereby, argues no evidence justified the court's findings.

Initially, the court believes that plaintiff misunderstands the role an administrator plays in evaluating a benefits application. As the court understands the process, the benefits administrator gives a neutral evaluation of the information or evidence presented in favor of eligibility. Thus, the administrator does not try to disprove eligibility, rather it is searching for proof of disability. If an administrator does not find evidence substantiating a disability, then that is the end of the process. The administrator need not disprove eligibility because, at least at an administrative stage, the burden is on the applicant. It is at this point that ERISA steps in, requiring standardized notice and explanation to the applicant.

The judicial process operates similarly. At the point that judicial review occurs, a court is charged, under ERISA, with determining whether the decision of the administrator was arbitrary and capricious, provided, of course, discretion to determine eligibility had been reserved. At the summary judgment stage the court never formally makes a determination of whether a plaintiff was or was not incapable, rather it defers to the administrator's findings in that regard. Instead the court is initially responsible for evaluating whether something about the process, either substantively or procedurally, was arbitrary and capricious. This, however, does not mean that defendants must prove

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

that plaintiff was not incapable. Rather all the defendants must do is demonstrate that the evaluative and decision-making process was fair. Reciprocally, the plaintiff must show that the process was unfair. Thereafter, the court is charged with determining whether the material facts regarding "fairness," when viewed in a light most favorable to the non-movant, would cause a reasonable trier of fact to find no genuine issue resulting in the movant being entitled to judgment as a matter of law.

*8 In rendering judgment for defendants on their motion, this court determined that both substantively, in evaluating the specific medical information presented by plaintiff, and procedurally, in its notice, explanation, evaluation and decision-making process, defendants acted fairly, or not arbitrarily and capriciously. Therefore, the court ultimately found that defendants presented facts demonstrating that the process was fair, and that plaintiff presented no facts demonstrating that the process was unfair, and thus, as a matter of law, defendants were entitled to judgment.

Finally, to the extent that the import of plaintiff's argument herein is that the Board must not have considered all of plaintiff's submitted evidence because it reached a conclusion on eligibility contrary to plaintiff's expectations or desires, that issue falls outside the purview of the court on summary judgment, because the court never found the Board's actions to be arbitrary and capricious. To the extent that plaintiff's argument herein is that the court must not have properly or adequately considered the facts presented, because it reached a conclusion different than plaintiff expected, the court notes that disagreement with its findings is never an appropriate basis for a motion for reconsideration. See _G-69 v. Degnan,_ 748 F.Supp. 274 (D.N.J.1990) ("A party seeking reconsideration must show more than disagreement with the court's decision ...."); _In re Tutu Wells Contamination Litigation v. Texaco, Inc.,_ 162 F.R.D. 81, 88 (D.V.I.1995) ("[M]ere disagreement with the court's findings and credibility determinations does not constitute proper grounds requiring the court to review its findings).

V. Motion for Sanctions

Defendants request sanctions under Rule 11 for what defendants charge is a baseless theory for reconsideration and the misrepresentation of testimony from the _Skinner_ case by plaintiff. [FN10] Pursuant to Rule 11 of the Federal Rules of Civil Procedure, an attorney who 1) fails to read the pleading; 2) fails to make a reasonable inquiry into the factual or legal legitimacy of the pleading; or 3) files the pleading for an improper purpose, shall be sanctioned. _Simmerman v. Corino,_ 27 F.3d 58 (3d Cir.1994). However, the court is guided by the principle that sanctions should be prescribed " 'only in the exceptional circumstance where a claim or motion is patently unmeritorious or frivolous." ' _Young v. West Coast Indus. Relations Ass'n, Inc.,_ 144 F.R.D. 206, 213 (D.Del.1992) (citing _Ford Motor Co. v. Summit Motor Products, Inc.,_ 930 F.2d 277, 289 (3d Cir.), cert. denied, 502 U.S. 939 (1991)). Upon review of defendants' argument and plaintiff's motion, this court is not convinced that the motion for reconsideration was "patently unmeritorious or frivolous." Although apparent that plaintiff did not provide an appropriate evidentiary basis in support of his motion, it is not obvious that plaintiff's motion was without meritorious intent. The court finds that plaintiff misunderstood the opinion below, and as such, interprets the instant motion as one sought for clarification. Thus, the court does not find it appropriate to award sanctions on this basis. Additionally, as the court found the proffered testimony from the _Skinner_ case irrelevant herein, the court will not address the issue of whether plaintiff mischaracterized the same. Therefore, defendants' motion is denied.

FN10. Defendants originally moved for sanctions in their brief in opposition to plaintiff's motion. On October 11, 2000, defendants voluntarily withdrew their motion, without prejudice, provided plaintiff correct the alleged misrepresentations within the time proscribed by Rule 11(c)(1)(A). On October 30, 2000, defendants renewed their motion citing plaintiff's failure to correct the alleged misrepresentations of the record.

VI. Conclusion

*9 Therefore, having found no basis upon which to grant plaintiff's motion for reargument or reconsideration, plaintiff's motion is DENIED. Reciprocally, defendants' motion for sanctions is also DENIED. An order consistent with this opinion will follow.

2000 WL 33341051, 2000 WL 33341051 (D.Del.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works