

Not Reported in F.Supp.2d                                                                                                    Page 1
(Cite as: 2003 WL 21960997 (S.D.N.Y.))

**H**
Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.

Lori WAGNER Plaintiff,
v.
FIRST UNUM LIFE INSURANCE COMPANY
Defendant.

No. 02 Civ. 9135(RLC).

Aug. 13, 2003.

Employee brought action against plan administrator under Employee Retirement Income Security Act (ERISA) claiming entitlement to unpaid long term disability benefits. On administrator's motion for summary judgment, the District Court, Carter, J., held that: (1) court reviewed denial of benefits to employee using arbitrary and capricious standard, and (2) administrator's denial of benefits to employee was not arbitrary and capricious.

Motion granted.

West Headnotes

[1] Labor and Employment ⚖ 687
231Hk687 Most Cited Cases
       (Formerly 296k139)

Court reviewed denial of unpaid long term disability benefits to employee under ERISA using arbitrary and capricious standard, since plan administrator had discretionary authority to make decision and there was no evidence that administrator was influenced by conflict of interest; although administrator decided against physical examination and employee had been paid some benefits, administrator sent employee's records to three doctors for evaluation and benefits were granted under reservation of rights. Employee Retirement Income Security Act of 1974, § 2 et seq., as amended, 29 U.S.C.A. § 1001 et seq.

[2] Labor and Employment ⚖ 629(2)
231Hk629(2) Most Cited Cases
       (Formerly 296k126)

Plan administrator's denial of unpaid long term disability benefits to employee under ERISA was not arbitrary and capricious, although employee was never subject to independent medical examination (IME) and administrator relied on opinions of non-examining physicians over employee's own treating physicians; IME was critical because employee's symptoms and test results were in her file and three doctors analyzed that information and administrator was not required to accord treating physicians' opinions greater weight than non-treating physicians. Employee Retirement Income Security Act of 1974, § 2 et seq., as amended, 29 U.S.C.A. § 1001 et seq.
Peter G. Eikenberry, New York, NY, for Plaintiff, Peter G. Eikenberry, of counsel.

Begos & Horgan, L.L.P., Bronxville, New York, for Defendant, Patrick W. Begos, of counsel.

OPINION

CARTER, J.

*1 Plaintiff Lori Wagner commenced this action against defendant First Unum Life Insurance Company ("First Unum"), under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, claiming entitlement to unpaid long term disability benefits. Both parties now move for judgment on the administrative record, pursuant to Rule 56, F.R. Civ. P.

BACKGROUND

Plaintiff was employed as an international securities market analyst in the global retail trade and restaurant section of an investment banking firm. (Pl. Ltr. at 1.) She worked approximately 10 1/2 hours a day, and up to 18 hours a day while she was traveling. (Id. at Ex. 1.) Her job required frequent travel abroad to conduct field evaluations of local economies and of target companies and their competitors. (Id.)

Beginning in 1997, plaintiff experienced a number of alleged anaphylactic attacks, [FN1] involving swelling in the throat and of other body parts, tinnitus (ringing in ears), extreme fatigue, headaches, vertigo, rashes, and pruritis (itching). (Id. at 2; Def.'s Mem. at

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

4.) Based on her treating physician, Dr. John Postley's, opinion that it would be dangerous for her to travel, plaintiff secured a modification of her work duties. (*Id.*)

> FN1. Anaphylaxis is an unusual or exaggerated allergic reaction. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (24th Ed.1965).

On or about September, 1999, plaintiff submitted a disability claim form, asserting that she became disabled beginning June 19, 1999. [FN2] (Def.'s Mem. at 4.) Her proof of claim was completed in November, 1999, when Dr. Postley submitted an Attending Physician Statement. Dr. Postley stated that plaintiff's primary diagnosis was idiopathic anaphylaxis ("IA"), a severe allergic reaction to an unknown agent. (*Id.*) He wrote, "Patient is not able to travel outside of N.Y.C. or be exposed to extremes in temperature, may not work long hours or become fatigued." (*Id.* at 5.) In a subsequent letter, Dr. Postley clarified that "Ms. Wagner's work requires her to visit companies in developing nations which do not have adequate health facilities.... She may be able to perform other duties but she may not travel in a way which is necessary for her current job description." (*Id.* at 6.)

> FN2. Pursuant to the insurance plan issued to her employer by First Unum, "disability" and "disabled" mean that because of injury or sickness:
> 1. the insured cannot perform each of the material duties of his regular occupation; or
> 2. the insured, while unable to perform all of the material duties of his regular occupation on a full-time basis, is:
> a. performing at least one of the material duties of his regular occupation or another occupation on a part-time or full-time basis; and
> b. earning currently at least 20% less per month than his indexed pre-disability earnings due to that same injury or sickness. (Def.'s Mem. at 3.)

First Unum conducted a medical review based on Dr. Postley's letters and the medical records that had been submitted. The review concluded that there was a lack of evidence of a continuous disability, as anaphylactic attacks typically occur infrequently and do not require prolonged recovery. (*Id.* at 5.) It also noted that it would be prudent to determine whether travel was a material duty of plaintiff's occupation. (*Id.* at 6.) Toward this end, First Unum commissioned a labor market survey by a consulting company, which concluded that travel is not an essential function of the occupation of Financial Analyst. (*Id.* at 7.) On January 12, 2000, First Unum denied plaintiff's claim, citing both the medical evidence and the labor market survey. (*Id.*)

Plaintiff appealed the decision, and submitted new information about her medical condition. Specifically, Dr. Postley, and another doctor, Ahnna Lake, informed First Unum that in addition to IA, plaintiff was also being treated for a series of endocrine imbalances, chronic thyroid inflammation, a hypoadrenal state, and corticosteroid insufficiency. (*Id.* at 8.)

*2 This new medical information was reviewed by Dr. Woolson Doane, an Associate Medical Director for First Unum. (*Id.* at 9.) On April 19, 2000, Dr. Doane concluded that limiting travel to areas without Western style medicine would be advisable, but that adequately treated, plaintiff had "no disease process that precludes sedentary or light work occupations." (*Id.*) Upon speaking with Dr. Lake and reviewing additional medical information, Dr. Doane recommended an expert medical review by an Allergist/Immunologist and an Endocrinologist. (*Id.* at 9-10.)

During this period, Wagner retained consultants who submitted more information about her job classification. (*Id.* at 10.) First Unum conducted a vocational review based on the consultants' reports, and concluded that Wagner was more properly classified as a Market Research Analyst rather than a Financial Analyst. (*Id.*) First Unum further concluded that the occupation of Market Research Analyst may require travel. (*Id.*)

Upon receipt of this information, some of which was incorporated in a letter written on plaintiff's behalf by Robert Cope, whose company served as Administrator of Benefits for the Securities Industries Association, First Unum notified Wagner on May 25, 2000, that it would commence paying benefits, retroactively, with a reservation of rights, while it continued to gather medical information through Independent Medical Examinations ("IME's") and a personal interview. (R. 300-301.) First Unum continued to make payments to Wagner through January 25, 2001. (Pl.'s Ltr. at 2.)

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

In December of 2000, First Unum informed Wagner that, rather than setting up IME's, it was "sending her medical records to an outside consortium for impartial review." (Def.'s Mem. at 10.) Three doctors examined plaintiff's file. Dr. N. Franklin Adkinson, Jr., Professor of Medicine at Johns Hopkins University and Training Program Director of its Allergy/Immunology Program, found no objective evidence of angioedema (the internal swelling that could accompany an IA episode and lead to breathing difficulty), and stated that even if plaintiff had IA, most patients with IA lead normal lives and continue work and family responsibilities, and that the vast majority of patients with IA improve over time. (Def.'s Mem. at 10-11; R. 425-26.)

Dr. Paul A. Fitzgerald, board certified in Endocrinology, Metabolism and Internal Medicine, and a Clinical Professor at the University of California School of Medicine, concluded that the test results reported by Dr. Lake were "entirely normal," and that Wagner's medical file and laboratory reports did not indicate adrenal insufficiency. (Def.'s Mem. at 11-12; R. 408.)

Dr. Sheldon Hersh, a Fellow of the American Academy of Disability Examining Physicians, and a Certified Independent Medical Examiner, stated that he did not see "any firm evidence from any medical observer that this claimant has Idiopathic Anaphylactic Syndrome," and that Dr. Lake's diagnoses of hyopadrenalism, hypothyroidism, sex hormone imbalance, and osteopenia were tenuous. (Def.'s Mem. at 11-12; R. 411-19.) He suggested that many of Wagner's symptoms, including fatigue, malaise, decreased cognition, poor memory, and sleep disturbance, could be the result of a depressive disorder. [FN3] (R. 412.)

> FN3. The court notes that Wagner was seeing a counselor and had been prescribed the drug Wellbutrin in 1999. Therefore, if plaintiff had a depressive disorder, she could have submitted her counselor's records to support a claim of disability on that basis.

*3 Dr.'s Adkinson and Hersh suggested that, if Wagner was indeed suffering from IA, the only restriction that would be placed on her would be a limitation on long distance travel (if her IA attacks were frequent and severe) or on travel to underdeveloped countries. (R. 413, 425.) First Unum obtained a vocational analysis to determine whether such travel was one of the material and substantial duties of a Market Research Analyst. The vocational analyst concluded that it was not. (Def.'s Mem. at 12-13.)

In addition to occupational and medical information, First Unum conducted a personal interview with Wagner, in which she detailed her health problems and the resulting major limitations on her lifestyle. For example, plaintiff stated that she can only function and accomplish tasks for 2 to 3 hours per day, usually in the late morning or early afternoon. She reported that she typically needed to nap by around 4 P.M., and seldom went out at night due to fatigue. (Pl.'s Ex. 1.) First Unum conducted surveillance of Wagner's activities, which appeared consistent with the interview data.

With all of this information before it, First Unum concluded that Wagner was not disabled within the meaning of the policy at issue. Specifically, defendant did not accept that Wagner had restrictions or limitations due to a specific diagnosis. Furthermore, they reasoned that, even if plaintiff did have IA, this would not prevent her from performing the material duties of her job, because travel to underdeveloped countries is not a generalized requirement of her occupation as it appears in the national economy. (Def.'s Mem. at 13 .)

Plaintiff appealed the decision administratively and that appeal was denied. Thereafter, plaintiff submitted additional information about her occupation and doctors' notes from three more physicians, which supported the diagnoses of her treating physicians and suggested that she had an autoimmune multisystem disease and IA. (R. 508-15.) One of the doctors, Leo Galland, also diagnosed her with chronic fatigue syndrome. First Unum obtained a medical review of the new information, which concluded: "the three letters referred to above describe multiple subjective complaints but present no new medical support for additional restrictions." (Def.'s Mem. at 14.) On July 30, 2001, First Unum notified plaintiff that the additional information did not alter its conclusion that she was not disabled. (*Id.*) This action followed.

## DISCUSSION
*I. Summary Judgment Standard*

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56, F.R. Civ. P. In

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). "In considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are factual issues to be tried." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986).

*II. ERISA Standards*

*4 Where discretionary authority is afforded an ERISA-regulated plan administrator, as it is here, denial of plan benefits is generally reviewed under an "arbitrary and capricious" standard of review. *Pulvers v. First Unum Life Ins. Co.,* 210 F.3d 89, 92 (2d Cir.2000). An exception arises where a plan administrator is acting under a conflict of interest, and has in fact been influenced by the conflict of interest. *Id.* In such a case, de novo review is appropriate. *Id.*

[1] The parties disagree as to which standard of review should govern in this case. First Unum served as both a plan administrator and plan insurer, which, according to plaintiff, makes it a conflicted body. *See, e.g., Sullivan v. LTV Aerospace and Defense Co.,* 82 F.3d 1251, 1255-56 (2d. Cir.1996). Plaintiff points to two facts to support its contention that First Unum was influenced by this conflict: 1) that First Unum decided not to conduct a physical examination of her; and 2) that First Unum stated in its January 27, 2001 letter denying benefits that it had determined that Wagner was "no longer" disabled, though there was no evidence that her condition had improved.

The fact that First Unum decided against a physical examination, without more, is not evidence that First Unum was influenced by a conflict of interest. First Unum sent Wagner's records to three doctors for evaluation. While a physical examination may have been informative, there is nothing before the court that indicates that First Unum's actions were improper or insufficient under the circumstances.

Plaintiff makes much of the wording of the January 27, 2001 letter, arguing that the fact that a First Unum representative stated that she was "no longer" disabled indicates that First Unum had previously determined that she was disabled and then arbitrarily changed its decision. The record as a whole does not support this contention. Defendant granted plaintiff benefits under a reservation of rights, stating that "[a]lthough we will commence paying these benefits, there is outstanding information needed to make a final determination of your eligibility. As a result, any payment ... cannot be construed as an admission of present or future liability." (R. 300-01.) Upon further investigation, defendant concluded that there was insufficient evidence of a disability. Unfortunate wording aside, the letter was simply meant to inform plaintiff that it would no longer pay her benefits.

As there is no evidence that First Unum was influenced by a conflict of interest, the court will review the denial of benefits under an arbitrary and capricious standard. A court may set aside a decision to deny benefits as arbitrary and capricious only if it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Maniatty v. Unumprovident Corp.,* 218 F. Supp 2d 500, 502 (S.D.N.Y.2002) (Rakoff, J.) (citing *Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 442 (2d. Cir.1995)). This scope of review is narrow; thus the court may not substitute its own judgment for that of the plan administrator "as if it were considering the issue of eligibility anew." *Id.*

*5 [2] Plaintiff argues that First Unum's determination was arbitrary and capricious because she was never subject to an IME, and defendant relied on the opinions of non-examining physicians over plaintiff's own treating physicians. The court rejects plaintiff's arguments. First, the court is not convinced that an IME was critical in this case, as plaintiff's symptoms and test results were in her file and three doctors analyzed this information. *See Alakozai v. Allstate Ins. Co.,* 98 Civ. 3720, 2000 WL 325685, at *7 (S.D.N.Y. March 28, 2000) (Casey, J.) (acceptance of opinions of two non-treating medical reviewers not arbitrary and capricious). Second, the administrator of an ERISA plan is not required to accord treating physicians' opinions greater weight than non-treating physicians. *See Black & Decker Disability Plan v. Nord,* 538 U.S. 822, ----, 123 S.Ct. 1965, 1972, 155 L.Ed.2d 1034 (2003). It is clear from the record that First Unum reviewed the opinions of Wagner's treating physicians, but after consulting with Dr. Adkinson, Dr. Fitzgerald, and Dr. Hersh, reached a different conclusion as to whether Wagner had a disability that would prevent her from working within her occupation as it is performed generally. Perhaps First Unum could have given greater consideration to the possibility that Wagner suffered from chronic fatigue syndrome, but overall, defendant's determination of Wagner's claim had support in the record and was not clearly erroneous.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d                                                          Page 5
(Cite as: 2003 WL 21960997 (S.D.N.Y.))

CONCLUSION

There is no doubt in the court's mind that plaintiff has experienced great difficulties with her health over the years. Nevertheless, based on a careful review of the record and in accordance with the highly deferential standard of review applied to such determinations, the court declines to substitute its judgment for that of First Unum. Summary judgment is granted to defendant. [FN4]

> FN4. Plaintiff requested that discovery beyond the administrative record be allowed in the event judgment were not granted. As judgment has been granted to defendant, this issue is moot.

IT IS SO ORDERED.

2003 WL 21960997 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works