UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2004 JUN 30  P 4: 55

US DISTRICT COURT
HARTFORD CT

| | |
|---|---|
| LARRY A . KATZ and,<br>KENNETH M. RAFTERY,<br><br>          Plaintiffs,<br><br>v.<br><br>THE SEPARATION PAY PLAN OF<br>TEXACO, INC. and TEXACO INC.<br><br>          Defendant. | CASE NO.<br><br>3: 02CV02201(AWT)<br><br><br><br>June 30, 2004 |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Conrad S. Kee (Ct 16901)
Ellen M. Nichols (Ct 25631)
Jackson Lewis LLP
177 Broad Street
P.O. Box 251
Stamford, Connecticut 06904-0251
Tel: (203) 961-0404
Fax: (203) 324-4704
E-mail: Keec@jacksonlewis.com
Nicholse@jacksonlewis.com

ATTORNEYS FOR DEFENDANTS
THE SEPARATION PAY PLAN OF TEXACO INC. AND TEXACO INC.

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................... 1

II.     STATEMENT OF FACTS ........................................................................................ 1

        A.      TEXACO AND FAMM ................................................................................. 1

        B.      TEXACO AND FAMM POSITION GRADES AND BENEFIT PLANS ........... 2

        C.      THE SEPARATION PAY PLAN .................................................................. 3

        D.      THE GRADE 20 AND ABOVE ENHANCEMENT TO THE PLAN................... 4

        E.      PLAINTIFFS' EMPLOYMENT WITH TEXACO AND FAMM........................ 6

        F.      PLAINTIFFS' INFORMAL ATTEMPTS TO RECEIVE THE GRADE 20 AND
                ABOVE ENHANCEMENT ........................................................................... 6

        G.      PLAINTIFFS' FORMAL CLAIM FOR THE GRADE 20 AND ABOVE
                ENHANCEMENT ...................................................................................... 7

III.    ARGUMENT.......................................................................................................... 8

        A.      THE STANDARD OF REVIEW ON A MOTION FOR SUMMARY
                JUDGMENT ............................................................................................. 8

        B.      THE PLAN ADMINISTRATOR'S DENIAL OF PLAINTIFFS' CLAIM FOR
                BENEFITS WAS NOT ARBITRARY AND CAPRICIOUS AND PLAINTIFFS'
                CLAIMS SHOULD BE DISMISSED. ............................................................ 9

                1.      The Arbitrary and Capricious Standard Governs the Court's Review of the
                        Instant Case.............................................................................................. 9

                2.      Plaintiffs Have Failed to Show The Plan Administrator's Determination
                        Was without Reason, Unsupported by Substantial Evidence or Erroneous
                        As a Matter of Law. ................................................................................. 11

                3.      If This Court Does Not Award Defendants Summary Judgment, the
                        Appropriate Remedy Is a Remand to the Plan Administrator .................. 12

IV.     CONCLUSION...................................................................................................... 14

ii

## I.  INTRODUCTION

Plaintiffs, Larry Katz and Ken Raftery, commenced this action seeking severance pay enhancements available to certain employees of Texaco, Inc. and related companies based upon their position grade.  As set forth below, Mr. Katz and Mr. Raftery are not eligible for the severance benefits because their position grade was lower than the threshold set out in the plan. Further, the Plan Administrator properly exercised its discretion in determining that Mr. Katz and Mr. Raftery were not eligible for such benefits and its determination may not be set aside so long as there was some reasonable basis for its determination.  Accordingly, the Court should grant summary judgment against Plaintiffs on their claims against the Defendants.

## II.  STATEMENT OF FACTS

### A.  TEXACO AND FAMM

Defendant Texaco Inc. ("Texaco") was a well-known publicly traded energy company formerly headquartered in White Plains, New York until its October 9, 2001 merger with Chevron Corporation.  Following the merger, the merged entity was generally known as ChevronTexaco.  Declaration of Janet Stoner, ¶ 1 ("Stoner Decl., ¶ __").

Fuel and Marine Marketing ("FAMM") was a joint venture formed November 1, 1998 by Texaco and Chevron combining the global residual fuel and marine lubricants marketing businesses of both companies.  Deposition of Lawrence A. Katz, p. 8, 15 (Katz Dep., p.___")[1]; Deposition of Kenneth M. Raftery, p. 7-8, 10 ("Raftery Dep., p.___").[2]  FAMM was a majority owned subsidiary of defendant Texaco Inc.  Complaint, ¶ 10; Raftery Dep., p. 15.

---

[1]  The pertinent pages of the Deposition of Lawerence A. Katz are attached to the Declaration of Conrad S. Kee, submitted along with the Memorandum of Law, as Exhibit I.

[2]  The pertinent pages of the Deposition of Kenneth M. Raftery are attached to the Declaration of Conrad S. Kee, submitted along with the Memorandum of Law, as Exhibit J.

**B.    TEXACO AND FAMM POSITION GRADES AND BENEFIT PLANS**

Between December 1998 and October 2001, Texaco used a position grading system for most U.S. based employees.  Stoner Decl., ¶ 5.  Texaco also maintained various Executive incentive compensation plans including a stock option plan and supplemental pension plan for eligible U.S. based employees.  Id. at ¶ 6.  In general, most of the employees who participated in Texaco's Executive incentive compensation plans were Position Grade 20 or above.  Id. at ¶ 7.  While most of the participants in Texaco's Executive incentive compensation plans were Position Grade 20 or above, the eligibility requirements for participation in the incentive compensation plans was not based on position grade and several Texaco employees in position grades below Position Grade 20 participated in some of those plans.  Id. at ¶ 8.  The Plaintiffs never participated in any of Texaco's Executive incentive compensation plans.  Katz Dep., p. 13-14; Raftery Dep., p. 29-30.

At the time FAMM was created as a joint venture, FAMM adopted Texaco's pay grading system.  Declaration of C. Michael Bandy at ¶ 3.("Bandy Decl., ¶ ").  This pay grading system remained in place until October 2001 when the merger occurred between Chevron and Texaco.  Id., at ¶ 4.  Some months after the joint venture was established, FAMM implemented its own incentive compensation plans which were maintained through the October 2001 merger.  Id., at ¶ 5  While some of the FAMM incentive compensation plans may have had names similar to the names of some of Texaco's incentive compensation plans, FAMM management determined the incentive scheme and criteria for participation in FAMM's plans based on FAMM specific business objectives.  Id., at ¶ 6.  Plaintiffs were generally selected to participate in FAMM's incentive compensation plans.  Id., at ¶ 7.

2

## C.    THE SEPARATION PAY PLAN

As of December 1998, Texaco maintained a benefits plan known as The Separation Pay Plan of Texaco Inc. (the "Plan"). Stoner Decl. ¶ 8; Ex. A.  The Plan, which also covered employees of FAMM, provided, *inter alia*, for a severance pay benefit in the event of a "Change of Control" which was not dependent on an employee's position grade.  Id. at ¶ 12. Specifically, covered employees would be eligible to receive basic Change of Control benefits in the event of a termination or qualifying resignation for a two-year period following a "Change of Control."  Id. at ¶ 13. Plaintiffs received the basic severance pay benefit following the merger of Chevron and Texaco as a result of their qualifying resignation.  Id. at ¶ 29.

For the purposes of Change of Control benefits, the "Change of Control Committee" is the Plan Administrator.  Id. at ¶ 32.  In August 2002, the Change of Control Committee consisted of six individuals: Janet Stoner, Patrick Lynch, Michael Rudy, Glenn Tilton, Rosemary Moore and John Bethancourt.  Id. at ¶ 4.  Ms. Stoner was the Chair of the Change of Control Committee.  Id. at ¶ 3.  Ms. Stoner, Mr. Lynch and Mr. Rudy had all retired from Texaco at or about the time of the merger.  Id. at ¶ 4.  Ms. Moore and Mr. Bethancourt were Texaco employees who joined ChevronTexaco after the merger.  Id.  Mr. Tilton resigned from the Change of Control Committee in 2002 after he became the Chairman and Chief Executive Officer of United Airlines.  Ms. Moore resigned from ChevronTexaco to join United Airlines in the latter part of 2002 but remained on the Change of Control Committee after her resignation. Id.

The Plan Administrator has the "final discretionary authority to interpret the plan's provisions, including questions of fact."  Stoner Dec., ¶ 20; Ex. A, p. 0167.  The Plan Administrator is permitted to delegate certain ministerial responsibilities and may also approve

changes to the Plan. Stoner Dec., Ex. A, p. 0167.[3]  The Change of Control Committee had established procedures for obtaining benefits under the Plan. Id. at ¶ 21. If there is no dispute that an employee has qualified for Change of Control benefits, payouts under the Plan are made as a matter of course. Stoner Dec., ¶ 22.  If an employee does not agree with a matter pertaining to benefits under the Plan, the employee may submit a written claim to the Benefits Center Change of Control Claims Committee. Id. at ¶ 23.  The Benefits Center Change of Control Claims Committee renders a written decision, which the employee may appeal to the Change of Control Committee. Id. at ¶ 24.  In hearing administrative appeals, the Change of Control Committee does not defer to the Benefits Center Change of Control Claims Committee's decision. Id. at ¶ 24.  Instead, it conducts a plenary review and reaches an independent decision. Id.

Neither the Change of Control Committee nor the Claims Committee has ever had, as a majority of its members, persons who intended to remain employed with ChevronTexaco after the merger. Id. at ¶ 26.  ChevronTexaco does not control the deliberations or the decisions of the Claims Committee or the Change of Control Committee. Id. at ¶ 28.

Certain senior Texaco executives were party to individual agreements with Texaco providing for contractual severance benefits in the event of a change of control. Id. at ¶ 36.  These arrangements were through individual contracts and were not governed by the Plan. Id.

### D.     THE GRADE 20 AND ABOVE ENHANCEMENT TO THE PLAN

On December 11, 1998, the Board of Directors of Texaco adopted a resolution amending the Plan. Stoner Dec., ¶ 14; Ex. B.  In relevant part, the amendment provided that

---

[3] The citation reference to page numbers of Exhibits to the Declarations of Stoner are the Texaco Bates stamped numbers.

employees in Position Grade 20 or higher would receive an enhanced severance benefit. Id. at ¶ 15; Ex. B. The amendment also provided that accrued benefits under other Texaco benefit plans would be vested for *all* participants upon a change of control. Id. at ¶ 16; Ex. B. Subsequently, on June 25, 1999 the Board of Directors of Texaco passed a clarifying amendment regarding the grade 20 or above enhancement providing:

> Employees in grade 20 or higher qualifying for benefits under the [Plan] shall be entitled to the following supplemental benefits. In determining years of Company service under paragraphs A, B and C of this resolution setting forth certain benefits to be provided to eligible participants in the separation pay plan upon a change of control, such employee shall be credited with a minimum of 12 years of service plus (a) for employees in grade 20, one additional year for each actual completed or partial year of Company service .... in no event shall the aggregate years of service, actual and deemed, used in determining benefits under the separation pay plan exceed 24 years of service.

Id. at ¶ 18; Ex. D.

The Position Grade 20 and above enhancement to the Plan was announced in a June 2, 1999 memo by Stephen Penacchio addressed "To All Position Grade 20 and above Employees." Stoner Decl., ¶ 17; Ex. C. The memorandum set forth information concerning the vesting changes as well as the Position Grade 20 and above enhancement. Id. Neither Plaintiff received this memorandum in 1999. Katz Dep., p. 22; Raftery Dep., p. 19-20.

E.    **PLAINTIFFS' EMPLOYMENT WITH TEXACO AND FAMM**

Mr. Katz worked for Texaco from 1991 until 1998 when he became an employee of FAMM.  Complaint, ¶ 8; Katz Dep., p. 7-8.  Mr. Katz' last position at Texaco was as a Corporate Development Associate holding Position Grade 16. Katz Dep., p. 9. From 1998 until 2002, Mr. Katz was the Treasurer of FAMM holding Position Grade 19.  Complaint ¶ 8; Katz Dep., p. 10.  Mr. Katz' position grade and job title did not change during his employment at FAMM.  Id. at p. 11.  Mr. Katz resigned from FAMM in 2002 in lieu of relocating to Houston. Katz Dep., p. 17.  Mr. Katz never held Position Grade 20 at either Texaco or FAMM.  Id. at p. 11, 29.

Mr. Raftery worked for Texaco from 1990 until 1998 when he became an employee of FAMM.  Complaint, ¶ 9; Raftery Dep., p. 7-8, 10.  Mr. Raftery's last position at Texaco was as an Assistant Manager in the Texaco Fuel and Marine Marketing division holding Position Grade 16.  Id. at p. 8, 10-11, 24.  From 1998 until 2002, Mr. Katz was the Comptroller of FAMM holding Position Grade 19.  Complaint, ¶ 9; Raftery Dep., p. 8-9, 12-14, 24.  Mr. Raftery's job title did not change during his employment at FAMM but his position grade may have changed early in his employment from Position Grade 18 to Position Grade 19.  Raftery Dep., p. 8-9.  Mr. Raftery resigned from FAMM in 2002 in lieu of relocating to Houston.  Id. at p. 57-58.  Mr. Raftery never held Position Grade 20 at either Texaco or FAMM.  Id. at p. 24, 34.

F.    **PLAINTIFFS' INFORMAL ATTEMPTS TO RECEIVE THE GRADE 20 AND ABOVE ENHANCEMENT**

Throughout their four year tenure with FAMM, neither plaintiff questioned their position grade until they learned of the Grade 20 and above enhancement to the Plan. Katz Dep., p. 12; Raftery Dep., p. 19.  After learning of enhancement, Plaintiffs made numerous unsuccessful appeals to executives within FAMM and Texaco to obtain the enhanced separation

pay benefits outlined in the Penacchio memo.  Katz Dep., p. 32-38, 41-44, 60-64; Raftery Dep., p. 34-35, 41-45, 53, 62-67.

After Plaintiffs had been repeatedly informed that they would not receive the Grade 20 and above enhancement, they sought to be promoted by FAMM to Position Grade 20. Katz Dep., p. 36-37; Raftery Dep., p. 44-45.  Such promotions required the approval of the FAMM Board of Directors.  Bandy Dec., at ¶ 9.  The President of FAMM, C. Michael Bandy, discussed the promotion issue with the FAMM Board of Directors at FAMM Board meetings in July and August 2001.  Bandy Dec., at ¶ 10-11; Exs. F-H.  In fact, on August 22, 2001, the FAMM Board held a special meeting to consider the promotion of Mr. Katz and Mr. Raftery to Position Grade 20.  Id. at ¶ 11; Exs. G-H.  Ultimately, after discussion, the Board decided not to take any action regarding the promotions.  Bandy Dec., at ¶ 11; Ex. H.  By taking no action, Mr. Katz and Mr. Raftery remained in Position Grade 19.  Bandy Dec., at ¶ 12; Katz Dep., p. 38; Raftery Dep., p. 53.

G.    **PLAINTIFFS' FORMAL CLAIM FOR THE GRADE 20 AND ABOVE ENHANCEMENT**

Plaintiffs initiated a formal claim for the Position Grade 20 and above enhancement to the Benefits Center Change of Control Claims Committee on March 27, 2002. Stoner Dec., ¶ 30; Ex. E, p. 0043-0045.  The Benefits Center Change of Control Claims Committee considered their claim on April 16, 2002 and concluded that they were not eligible for the Position Grade 20 and above enhancement because they were Position Grade 19 employees.  Stoner Dec., Ex. E, p. 0039.  On June 18, 2002, the plaintiffs' attorneys appealed the Claims Committee's denial of benefits to the Change of Control Committee.  Stoner Dec., ¶ 32; Ex. E, p. 0009-0033; Raftery Dep., p. 70-72.  The Change of Control Committee considered Plaintiffs' claims and also concluded they were not eligible for the Position Grade 20 and above

7

enhancement because they were Position Grade 19 employees. Stoner Dec., ¶¶ 33-34. The Change of Control Committee provided a reasoned, written decision by letters dated August 26, 2002. Id. at ¶ 35; Ex. E., p. 0006 and 0095.

## III.    ARGUMENT

### A.    THE STANDARD OF REVIEW ON A MOTION FOR SUMMARY JUDGMENT

The standard for summary judgment is well settled; Defendants, as the movant, are entitled to summary judgment upon demonstration that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Plaintiff, as the non-movant, "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith, 475 U.S. 574, 586 (1986)(citation omitted). It is the non-movant's burden to "demonstrate to the court the existence of a genuine issue of material fact." Lendino v. Trans Union Credit Info Co., 970 F.2d 1110, 1112 (2d Cir. 1992). In opposing summary judgment, a party may not rest upon unsupported allegations or denials, or simply claim without support that evidence adduced by the movant in support of the motion is not credible. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); Mycak v. Honeywell, Inc., 953 F.2d 798, 801-802 (2d Cir. 1992). To survive the motion, Plaintiff must produce "concrete evidence" that would allow a reasonable fact-finder to find in their favor. Dister v. Continental Group, Inc., 859 F. 2d 1108, 1114 (2d Cir. 1988)(citation omitted).

**B.**   **THE PLAN ADMINISTRATOR'S DENIAL OF PLAINTIFFS' CLAIM FOR BENEFITS WAS NOT ARBITRARY AND CAPRICIOUS AND PLAINTIFFS' CLAIMS SHOULD BE DISMISSED.**

**1.**   **<u>The Arbitrary and Capricious Standard Governs the Court's Review of the Instant Case</u>**

**(i)**   **The Arbitrary and Capricious Standard of Review Applies Where A Plan Administrator Is Granted Discretion to Interpret and Construe the Plan and Determine Benefit Claims.**

Where a plan administrator is granted discretionary authority to interpret and construe plan terms and to determine benefit claims, a court is mandated to review a denial of benefits under an "arbitrary and capricious" standard of review. <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989); <u>see also</u> <u>Pagan v. NYNEX Pension Plan</u>, 52 F.3d 438, 441 (2d Cir. 1995)(when a plan affords such discretion to the administrator, federal courts will not disturb the administrator's decisions unless they are "arbitrary and capricious.").

**(ii)**   **The Separation Pay Plan Grants the Plan Administrator Discretionary Authority to Interpret the Plan and Decide Benefit Claims**

The Change of Control Committee is the designated Plan Administrator for the purpose of determining Change of Control benefits. Stoner Dec., ¶ 19. The Plan grants the Change of Control Committee, as Plan Administrator, "discretionary authority to make a final and conclusive determination" of claims, as well as "final discretionary authority to interpret the plan's provisions, including questions of fact." Stoner Dec., ¶ 20; Ex. A, p. 0167. The Plan further provides that "[t]he decisions of the Plan Administrator with respect to all issues and questions will be final, conclusive, and binding on all persons." <u>Id</u>. This language undoubtedly provides the Change of Control Committee with the discretionary authority to interpret plan terms and to determine eligibility for, and entitlement to, benefits under the Separation Pay Plan.

9

### (iii)    The Court's Scope Of Review Is Limited

Under the arbitrary and capricious standard, the scope of judicial review is narrow. Celardo v. GNY Auto. Dealers Health & Welfare Trust, 318 F.3d 142, 146 (2d Cir. 2003), citing, Peterson v. Cont'l Cas. Co., 282 F.3d 112, 117 (2d Cir. 2002); Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995). "[A] district court's review under the arbitrary and capricious standard is limited to the administrative record." Miller v. United Welfare Fund, 72 F.3d 1066, 1071 (2d Cir. 1995). "The court may not upset a reasonable interpretation by the administrator." Jordan v. Retirement Comm. For Rensselaer Polytechnic Inst., 46 F.3d 1264, 1271 (2d Cir. 1995). The plan administrator's denial of benefits may be judicially overturned only if it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." Celardo v. GNY Auto. Dealers Health & Welfare Trust, 318 F.3d 142, 146 (2d Cir. 2003); see also, O'Shea v. First Manhattan Co. Thrift Plan & Trust, 55 F.3d 109 (2d Cir. 1995) (upholding Trustees' decision holding Trustees' interpretation reasonably consistent with the terms of the plan and therefore, not arbitrary and capricious). In the context of upholding a plan administrator's decision, "substantial evidence" is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached" by the administrator. Id. It is "more than a scintilla but less than a preponderance." Id. Consequently, "[w]here both the plan administrator and a spurned claimant 'offer rational, though conflicting, interpretations of plan provisions, the [administrator's] interpretation must be allowed to control." Pulvers v. First UNUMLife Ins. Co., 210 F.3d 89, 92-93 (2d Cir. 2000) (brackets in original; citation omitted). Indeed, "even if the plaintiff's interpretation of the facts is as reasonable as the interpretation adopted by the plan administrator, the arbitrary and capricious standard requires the court to defer to the interpretation of the plan administrator." Mormile v. Metro. Life Ins. Co., 91 F. Supp. 2d 492, 495 (D. Conn. 2000).

**2.      Plaintiffs Have Failed to Show The Plan Administrator's Determination Was without Reason, Unsupported by Substantial Evidence or Erroneous As a Matter of Law.**

A review of the Plan Administrator's denial of Plaintiffs' claims shows that the decision was well-reasoned and based on the unambiguous language of the Plan. Under the terms of the Plan, only employees in "grade 20 or higher" are entitled to the enhanced benefits at issue in this claim. Stoner Dec., ¶ 15; Exs. B and D. The Plan Administrator determined that Plaintiffs were not entitled to the enhanced benefits because they were Position Grade 19 employees. Stoner Dec., ¶ 34. Indeed, there is no dispute Plaintiffs were never Position Grade 20 employees. Katz Dep., p. 11, 29; Raftery Dep., p. 24, 34. In making its determination, the Change of Control Committee was fully familiar with the Texaco position grading system, was aware that FAMM had adopted the Texaco position grading system, and was aware that the FAMM Board of Directors had considered Plaintiffs for promotion to Position Grade 20 but not promoted them. Stoner Dec., ¶ 30-34, Ex. E, p. 0039.

Plaintiffs assert that the Change of Control Committee's determination was wrong and argue that they were entitled to the enhancement afforded only to Position Grade 20 or above employees because they were members of FAMM's management group and received every FAMM executive perk. Katz Dep., p. 30, 82-83; Raftery Dep., p. 22-24, 33-34. They argue that the Change of Control Committee did not recognize that FAMM had its own compensation plans and executive benefits for its management group and Plaintiffs were part of said management group in considering Plaintiffs' claim. Katz Dep., p. 67, 82-83; Raftery, p. 33-34. Plaintiffs argue that the Change of Control Committee should have compared their responsibilities and compensation to that of a Texaco position grade 20 to make its determination. Katz Dep., p. 82-83; Raftery Dep., p. 27-28. Plaintiffs further assert that they should receive additional severance benefits beyond the Position Grade 20 and above enhancement based on the fact that a limited

11

number of Texaco executives were party to individual contracts providing for contractual severance benefits in the event of a change of control. However, they never requested these benefits in their claim to the Claims Committee or their appeal to the Change of Control committee. Stoner Dec., Ex. E, p. 0009-0033.

Plaintiffs' claims simply have no basis under the Plan. The Grade 20 and above enhancement was not available to employees based on the compensation or other plans in which they participated. Nor, was the Grade 20 and above enhancement available to employees based upon their service as managers, executives or as members of a management group. Rather, the relevant eligibility criterion was entirely objective. Since the Plaintiffs were not Position Grade 20 employees, they were not eligible for the Grade 20 and above enhancement.

As for the assertion that Plaintiffs are entitled to benefits available to certain senior executives under individual contracts, there are no allegations in the Complaint that cover such claims. Further, the individual contractual severance benefits are not governed by the Plan and even if the benefits were governed by the Plan, Plaintiffs have not exhausted their administrative remedies under the Plan.

### 3. If This Court Does Not Award Defendants Summary Judgment, the Appropriate Remedy Is a Remand to the Plan Administrator

In recognition of the well-established federal policy favoring exhaustion of administrative remedies in ERISA cases, a claimant is required to exhaust all administrative remedies provided under an ERISA plan prior to seeking judicial review of a denial of benefits. Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1199 (2d Cir. 1989). The purposes behind this policy are to: "(1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made

under the arbitrary and capricious standard, not *de novo*." <u>Kennedy v. Empire Blue Cross &</u>
<u>Blue Shield</u>, 989 F.2d 588, 594 (2d Cir. 1993) (citation omitted).

> If a court reviewing a plan administrator's determination finds that such
determination was arbitrary and capricious, the appropriate remedy is to remand the matter to the
administrator. <u>Miller</u>, <u>supra</u>, 72 F. 3d 1066, 1073 (2d Cir. 1995). In discussing the sole
exception to this rule, the Second Circuit in <u>Miller</u>, <u>supra</u>, stated as follows:

> if upon review a district court concludes that the Trustee's decision
> was arbitrary and capricious, <u>it must remand to the Trustees</u> with
> instructions to consider additional evidence <u>unless no new</u>
> <u>evidence could produce a reasonable conclusion permitting denial</u>
> <u>of the claim.</u>

<u>Miller</u>, <u>supra</u>, 72 F. 3d 1066, 1071 (2d Cir. 1995)(emphasis supplied).

> Second Circuit precedent is clear that the appropriate remedy, if any, available to
Plaintiff under these circumstances is a remand to the plan administrator for a new consideration
of the claim and development of an administrative record, rather than judicial consideration and
determination of the claim. <u>Crocco v. Xerox Corp.</u>, 956 F. Supp. 129 (Dist. Conn. 1997), <u>aff'd</u>,
137 F. 3d 105 (2d Cir. 1998).

> Accordingly, Defendants respectfully request that, should the Court deny their
Motion for Summary Judgment, the Court remand Plaintiffs' claim to the Plan Administrator of
the Separation Pay Plan for further consideration of their claim.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant

their motion for summary judgment and dismiss the Plaintiffs' Complaint in its entirety.

Respectfully submitted,

JACKSON LEWIS LLP

By: _____

Conrad S. Kee (Ct 16901)
Ellen M. Nichols (Ct 25631)
177 Broad Street
P.O. Box 251
Stamford, Connecticut 06904-0251
Tel: (203) 961-0404
Fax: (203) 324-4704
E-mail: Keec@jacksonlewis.com

ATTORNEYS FOR DEFENDANTS
THE SEPARATION PAY PLAN OF TEXACO
INC. AND TEXACO INC.

14

## **CERTIFICATION**

THIS IS TO CERTIFY that a copy of the foregoing has been hand delivered, this 30th day of June 2004, to counsel of record listed below:

Scott Lucas, Esq.
Mary Canaday, Esq.
Martin, Lucas & Chioffi, LLP
177 Broad Street, 16th Floor
Stamford, CT 06901

Conrad S. Kee