UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LARRY A. KATZ and, <br> KENNETH M. RAFTERY, <br>         Plaintiffs, <br> v. <br> THE SEPARATION PAY PLAN OF <br> TEXACO, INC. and TEXACO INC. <br>         Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CASE NO. 3:02CV02201(AWT) <br><br><br><br> June 30, 2004 |

## **LOCAL RULE 56(a)1 STATEMENT**

Pursuant to Rule 56(a)1 of the Local Rules of this Court, Defendants The Separation Pay Plan of Texaco Inc. and Texaco Inc. (hereinafter the "Plan" and "Texaco", respectively) submit the following Statement of Material Facts Not in Dispute:

1. Defendant Texaco Inc. ("Texaco") was a well-known publicly traded energy company formerly headquartered in White Plains, New York until its October 9, 2001 merger with Chevron Corporation. Following the merger, the merged entity was generally known as ChevronTexaco. Declaration of Janet Stoner, ¶ 1 ("Stoner Decl., ¶ __"); Complaint ¶ 15; Deposition of Kenneth M. Raftery, p. 19 ("Raftery Dep., p.___").

2. Fuel and Marine Marketing ("FAMM") was a joint venture formed November 1, 1998 by Texaco and Chevron combining the global residual fuel and marine lubricants marketing businesses of both companies. Deposition of Lawrence A. Katz, p. 8, 15 ("Katz Dep., p.___"); Raftery Dep., p. 7-8, 10.

3. FAMM was a majority owned subsidiary of defendant Texaco Inc. Complaint, ¶ 10; Raftery Dep., p. 15.

4. Mr. Katz worked for Texaco from 1991 until 1998 when he became an employee of FAMM. Complaint, ¶ 8; Katz Dep., p. 7-8.

5. Mr. Katz' last position at Texaco was as a Corporate Development Associate holding Position Grade 16. Katz Dep., p. 9.

6. From 1998 until 2002, Mr. Katz was the Treasurer of FAMM holding Position Grade 19. Complaint ¶ 8; Katz Dep., p. 10.

7. Mr. Katz' position grade and job title did not change during his employment at FAMM. Katz Dep., p. 11.

8. Mr. Katz resigned from FAMM in 2002 in lieu of relocating to Houston. Katz Dep., p. 17.

9. Mr. Katz never held Position Grade 20 at either Texaco or FAMM. Katz Dep., p. 11, 29.

10. Mr. Raftery worked for Texaco from 1990 until 1998 when he became an employee of FAMM. Complaint, ¶ 9; Raftery Dep., p. 7-8, 10.

11. Mr. Raftery's last position at Texaco was as an Assistant Manager in the Texaco Fuel and Marine Marketing division holding Position Grade 16. Raftery Dep., p. 8, 10-11, 24.

12. From 1998 until 2002, Mr. Katz was the Comptroller of FAMM holding Position Grade 19. Complaint, ¶ 9; Raftery Dep., p. 8-9, 12-14, 24.

13. Mr. Raftery's job title did not change during his employment at FAMM but his position grade may have changed early in his employment from Position Grade 18 to Position Grade 19. Raftery Dep., p. 8-9.

14. Mr. Raftery resigned from FAMM in 2002 in lieu of relocating to Houston. Raftery Dep., p. 57-58.

15. Mr. Raftery never held Position Grade 20 at either Texaco or FAMM. Raftery Dep., p. 24, 34.

16. Between December 1998 and October 2001, Texaco used a position grading system for most U.S. based employees. Stoner Decl., ¶ 5.

17. Texaco also maintained various incentive compensation plans including a stock option plan and supplemental pension plan for eligible U.S. based employees. Stoner Decl., ¶ 6.

18. In general, most of the employees who participated in Texaco's incentive compensation plans were Position Grade 20 or above. Stoner Decl., ¶ 7.

19. While most of the participants in Texaco's incentive compensation plans were Position Grade 20 or above, the eligibility requirements for participation in the incentive compensation plans was not based on position grade and several Texaco employees in position grades below Position Grade 20 participated in some of those plans. Stoner Decl., ¶ 8.

20. The Plaintiffs never participated in any of Texaco's incentive compensation plans. Katz Dep., p. 13-14; Raftery Dep., p. 29-30.

21. At the time FAMM was created as a joint venture, FAMM adopted Texaco's pay grading system. Declaration of C. Michael Bandy, ¶ 3 ("Bandy Decl., ¶ __").

22. This pay grading system remained in place until October 2001 when the merger occurred between Chevron and Texaco. Bandy Decl., ¶ 4.

23. Some months after the joint venture was established, FAMM implemented its own incentive compensation plans which were maintained through the October 2001 merger. Bandy Decl., ¶ 5.

24. While some of the FAMM incentive compensation plans may have had names similar to the names of some of Texaco's incentive compensation plans, FAMM management determined the incentive scheme and criteria for participation in FAMM's plans based on FAMM specific business objectives. Bandy Decl., ¶ 6.

25. Plaintiffs were generally selected to participate in FAMM's incentive compensation plans. Bandy Decl., ¶ 7.

26. For some period before 1998, Texaco maintained a benefits plan known as The Separation Pay Plan of Texaco Inc. (the "Plan"). Stoner Decl. ¶ 9.

27. The Plan provides automatic participation to all regular, full-time employees meeting certain service requirements upon completion of one year of continuous service with Texaco Inc. or a subsidiary or affiliated company that participates in the Plan. Stoner Decl., ¶ 10.

28. FAMM was a majority owned subsidiary of defendant Texaco Inc. and a participating company in the Plan. Stoner Decl., ¶ 11.

29. The Plan provided to participant employees, a severance pay benefit in the event of a "Change of Control" which was not dependent on an employee's Position Grade. Stoner Decl., ¶ 12.

30. Covered employees were eligible to receive Change of Control benefits in the event of a termination or qualifying resignation for a two-year period following a "Change of Control." Stoner Decl., ¶ 13.

31. Plaintiffs received the severance pay benefit following the merger of Chevron and Texaco as a result of their qualifying resignations. Stoner Decl., ¶ 29.

32. The Change of Control Committee is the Plan Administrator for the purposes of Change of Control benefits. Stoner Decl., ¶ 19.

33. In August 2002, the Change of Control Committee consisted of six individuals: Janet Stoner, Glenn Tilton, Patrick Lynch, Michael Rudy, Rosemary Moore and John Bethancourt. Stoner Decl, ¶ 4.

34. Ms. Stoner was the Chair of the Change of Control Committee. Stoner Decl., ¶ 3.

35. Ms. Stoner, Mr. Lynch and Mr. Rudy had all retired from Texaco at or about the time of the merger. Stoner Decl., ¶ 4.

36. Mr. Tilton, Ms. Moore and Mr. Bethancourt were Texaco employees who joined ChevronTexaco after the merger. Stoner Decl., ¶ 4.

37. Mr. Tilton resigned from the Change of Control Committee in 2002 when he became the Chairman and Chief Executive Officer of United Airlines. Mr. Tilton was not replaced on the Change of Control Committee. Ms. Moore resigned from ChevronTexaco to join United Airlines in the latter part of 2002 but remained on the Change of Control Committee after her resignation. Stoner Decl., ¶ 4.

38. The Plan Administrator has the "final discretionary authority to interpret the plan's provisions, including questions of fact." Stoner Decl., ¶ 20; Ex. A, p. 0167.

39. The Change of Control Committee had established procedures for obtaining benefits under the Plan. Stoner Decl., ¶ 21.

40. If there is no dispute that an employee has qualified for Change of Control benefits, payouts under the Plan are made as a matter of course. Stoner Decl., ¶ 22.

41. If an employee does not agree with a matter pertaining to benefits under the Plan, the employee may submit a written claim to the Claims Committee. Stoner Decl., ¶ 23.

42. The Claims Committee renders a written decision, which the employee may appeal to the Change of Control Committee. Stoner Decl., ¶ 24.

43. In hearing administrative appeals, the Change of Control Committee does not defer to the Benefits Center Change of Conrol Claims Committee's decision. Stoner Decl., ¶ 24.

44. Instead, it conducts a plenary review and reaches an independent decision. Stoner Decl., ¶ 24.

45. Neither the Change of Control Committee nor the Claims Committee has ever had, as a majority of its members, persons who intended to remain employed with ChevronTexaco after the merger. Stoner Decl., ¶ 26.

46. ChevronTexaco does not control the deliberations or the decisions of the Claims Committee or the Change of Control Committee. Stoner Decl., ¶ 28.

47. Certain senior Texaco executives were party to individual agreements with Texaco providing for contractual severance benefits in the event of a change of control. Stoner Decl., ¶ 36.

48. These arrangements were through individual contracts and were not governed by the Plan. Stoner Decl., ¶ 36.

49. On December 11, 1998, the Board of Directors of Texaco adopted a resolution amending the Plan. Stoner Decl., ¶ 14; Ex. B.

50. In relevant part, the amendment provided that employees in Position Grade 20 or higher would receive an enhanced severance benefit. Stoner Decl., ¶ 15; Ex. B.

51. The amendment also provided that accrued benefits under other Texaco benefit plans would be vested for all participants upon a change of control. Stoner Decl., ¶ 16; Ex. B.

52. Subsequently, on June 25, 1999 the Board of Directors of Texaco passed a clarifying amendment regarding the grade 20 or above enhancement providing:

> Employees in grade 20 or higher qualifying for benefits under the [Plan] shall be entitled to the following supplemental benefits. In determining years of Company service under paragraphs A, B and C of this resolution setting forth certain benefits to be provided to eligible participants in the separation pay plan upon a change of control, such employee shall be credited with a minimum of 12 years of service plus (a) for employees in grade 20, one additional year for each actual completed or partial year of Company service ..... in no event shall the aggregate years of service, actual and deemed, used in determining benefits under the separation pay plan exceed 24 years of service.

Stoner Decl, ¶ 18; Ex. D.

53. The Position Grade 20 and above enhancement to the Plan was announced in a June 2, 1999 memo by Stephen Penacchio addressed "To All Position Grade 20 and above Employees." Stoner Decl., ¶ 17, Ex. C.

54. Neither Plaintiff received this memorandum in 1999. Katz Dep., p. 22; Raftery Dep., p. 19-20.

55. Throughout their four year tenure with FAMM, neither plaintiff questioned their position grade until they learned of the Grade 20 and above enhancement to the Plan. Katz Dep., p. 12; Raftery Dep., p. 19.

56. After learning of enhancement, Plaintiffs made numerous unsuccessful appeals to executives within FAMM and Texaco to obtain the enhanced separation pay benefits outlined in the Penacchio memo. Katz Dep., p. 32-38, 41-44, 60-64; Raftery Dep., p. 34-35, 41-45, 53, 62-67.

57. After Plaintiffs had been repeatedly informed that they would not receive the Grade 20 and above enhancement, they sought to be promoted by FAMM to Position Grade 20. Katz Dep., p. 36-37; Raftery Dep., p. 44-45.

58. Such promotions required the approval of the FAMM Board of Directors. Bandy Decl., ¶ 8.

59. The President of FAMM, C. Michael Bandy, discussed the promotion issue with the FAMM Board of Directors at FAMM Board meetings in July and August 2001. Bandy Decl., ¶¶ 9-10; Exs. F-H.

60. In fact, on August 22, 2001, the FAMM Board held a special meeting to consider the promotion of Mr. Katz and Mr. Raftery to Position Grade 20. Bandy Decl., ¶ 10; Exs. G-H.

61. Ultimately, after discussion, the Board decided not to take any action regarding the promotions. Bandy Decl., ¶ 12; Ex. H.

62. By taking no action, Mr. Katz and Mr. Raftery remained in Position Grade 19. Bandy Decl., ¶ 12; Katz Dep., p. 38; Raftery Dep., p. 53.

63. Plaintiffs made a claim for the improved benefits pursuant to the 1998 amendments to the Plan on March 27, 2002. Stoner Decl., ¶ 30; Ex. E, p. 0043-0045.

64. The Claims Committee reviewed Plaintiffs' claims and provided a written decision dated April 22, 2002 denying their claims. Stoner Decl., ¶ 31; Ex. E, p. 0039.

65. On June 18, 2002, the Plaintiffs' attorneys appealed the decision to the Change of Control Committee. Stoner Decl., ¶ 32; Ex. E, p. 0009-0033; Raftery Dep., p. 70-72.

66. On August 20, 2002, the Change of Control Committee duly considered Plaintiffs' appeal of the Claims Committee's denial of benefits during a teleconference. Stoner Decl., ¶ 33.

67. The members of the Change of Control Committee unanimously agreed that Plaintiffs' position grade 19 statuses made them ineligible for the enhanced benefits afforded to position grade 20 and above employees. Ms. Moore was unavailable and did not participate in the consideration of Plaintiffs' claims. Stoner Decl., ¶ 34.

68. The Change of Control Committee notified Plaintiffs of its decision by letters dated August 26, 2002. Stoner Decl., ¶ 35; Ex. E., p. 0006 and 0095.

69. The Plaintiffs' claims to the Change of Control Committee did not include claims for individual contractual severance benefits or the type received by executives who were party to agreements providing such benefits. Stoner Decl., ¶ 37.

70. On or about June 18, 2002, the plaintiffs appealed to the Change of Control Committee. Stoner Decl., ¶ 34; Ex. E, p. 0009-0033; Raftery Dep., p. 70-72.

71. The Change of Control Committee considered Plaintiffs' claims and also concluded they were not eligible for the Position Grade 20 and above enhancement because they were Position Grade 19 employees. Stoner Decl., ¶¶ 35-36.

72. The Change of Control Committee provided a reasoned, written decision by letters dated August 26, 2002. Id. at ¶ 37; Ex. E., p. 0006 and 0095.

Respectfully submitted,

THE DEFENDANTS
THE SEPARATION PAY PLAN
OF TEXACO INC. AND TEXACO INC.

By: _____
Conrad S. Kee (CT 16904)
Ellen M. Nichols (CT 25631)
JACKSON LEWIS LLP
177 Broad Street
P.O. Box 251
Stamford, CT 06904-0251
(203) 961-0404
Their Attorneys

## **CERTIFICATION**

THIS IS TO CERTIFY that a copy of the foregoing has been hand delivered, this 30th day of June 2004, to counsel of record listed below:

> Scott Lucas, Esq.
> Mary Canaday, Esq.
> Martin, Lucas & Chioffi, LLP
> 177 Broad Street, 16th Floor
> Stamford, CT 06901

_____
Conrad S. Kee