UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LARRY A. KATZ : | |
| And KENNETH M. RAFTERY, : | CIVIL ACTION NO. |
| : | 302 CV 02201 (AWT) |
| Plaintiffs, : | |
| : | |
| V. : | |
| : | |
| THE SEPARATION PAY PLAN : | |
| OF TEXACO, INC. : | |
| And TEXACO, INC., : | |
| : | AUGUST 5, 2004 |
| Defendants. : | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

*PRELIMINARY STATEMENT*

A perfunctory review of defendants' Motion for Summary Judgment reveals that, at the very least, there are questions of fact as to whether plaintiffs, as *FAMM* employees, were entitled to the enhanced severance available to *Texaco* employees holding a position grade 20 or above. Indeed, a close reading of defendants' Motion and supporting memorandum supports plaintiffs' position that their claims are certainly not frivolous, and that they are in fact entitled to the enhanced severance they sought.

Defendants' argument, boiled down, is simply that as far as position grades are concerned, a 19 is a 19 and a 20 is a 20 without any regard to the fact that there are two independent employers involved with two different compensation schemes. Defendants' argument amounts to drawing a line in the sand without any investigation or analysis. This simply is not sufficient to support a denial of benefits, under either a *de novo* review or applying an arbitrary and capricious standard of review. Moreover, under either standard of review, it is clear that, at the very least, there are

material questions of fact that cannot be determined at this stage of the litigation. Accordingly, plaintiffs respectfully request that defendants' Motion for Summary Judgment be denied in its entirety.

## *STATEMENT OF FACTS*

On June 29, 2004, plaintiffs also filed a Motion for Summary Judgment on defendants' counterclaim requesting a declaratory judgment that plaintiffs' claims are frivolous. Accordingly, the detailed Statement of Facts included in the Memorandum in support of that motion is incorporated herein by reference, and other than a brief preliminary overview, plaintiffs will attempt only to respond to discrete factual assertions made by defendants which plaintiffs did not address in the prior memorandum.

Defendants maintain that an employee's position grade is the sole factor in determining whether an employee is entitled to the "enhanced" benefits sought here by plaintiffs. (Excerpt of defendants' interrogatory responses, Response Nos. 2 and 5 (A.Ex. D)[1]; administrative record (A.Ex. E at Bates Nos. Texaco 0033 and 0006).) However, defendants' argument fails to take into account that plaintiffs are *not* Texaco employees and do not hold *Texaco* position grades. Indeed, in a memorandum issued by *Texaco*, it states that the enhanced benefits are for members of "our management group" and then defines that term as "position grade 20 or above." (See June 2, 1999 memorandum (A.Ex. E at Bates No. Texaco 0100).) However, no such memo was issued to FAMM employees and no such definition was provided for or used to define FAMM's "management group." (Id. (A.Ex. E at Texaco 0100); Deposition of Peter M. Meade taken February 5, 2004 (hereinafter "Meade Depo."), P51 L13 -- Page 52 L14[2] (A.Ex. F).) The undisputed testimony demonstrates that both plaintiffs were key members of FAMM's management group and key members of FAMM's

---

[1] "A.Ex. ___" refers to the exhibits contained in the Appendix to Plaintiffs' Motion for Summary Judgment dated June 29, 2004.
[2] "P___ L___" refers to page and line number.

leadership team. (Deposition of C. Michael Bandy taken April 1, 2004 (hereinafter "Bandy Depo."), P17 L7-12 (A.Ex. G); Deposition of Michele Swanson taken March 31, 2004 (hereinafter "Swanson Depo."), P20 L5-10, P26 L9-21 (A.Ex. H); FAMM management listing and letters to Raftery referring to him as a member of FAMM's management team (all part of A.Ex. I).) Indeed, defendants admit that plaintiffs were both Officers of FAMM. (Requests for Admission Nos. 5-6 and Answers thereto (A.Ex. B).) Moreover, as set forth in plaintiffs' June 29, 2004 Memorandum, the undisputed evidence reveals that while plaintiffs may have been graded a FAMM position grade 19, their duties, responsibilities and compensation far exceeded those of employees holding a *Texaco* position grade 19.

What becomes clear after a perfunctory review of the evidence is that there are multiple material questions of fact which must be resolved before a determination can be made as to whether plaintiffs were entitled to the enhanced benefits they sought. Accordingly, defendants' Motion for Summary Judgment should be denied.

### I. WHETHER THE POSITION GRADING SYSTEMS OF TEXACO AND FAMM ARE ANALOGOUS IS A MATERIAL QUESTION OF FACT.

One of the primary issues that is in dispute is whether individuals holding a Texaco position grade 19 were comparable to individuals holding a FAMM position grade 19 in terms of responsibility, duties, compensation and benefits. Despite being faced with indisputable evidence that individuals holding a FAMM position grade 19 were not treated the equivalent to, and were compensated significantly more than, employees holding a Texaco position grade 19, defendants argue that the position grading systems of FAMM and Texaco were analogous. Indeed, in a weak attempt to show that Texaco employees holding a Texaco position grade 19 received the same types of benefits as those employees holding a FAMM position grade 19, defendants assert:

> In general, most of the employees who participated in Texaco's Executive incentive compensation plans were Position Grade 20 or above. While, most of the participants in Texaco's Executive incentive compensation plans were Position Grade 20 or above, the eligibility requirements for participation in the incentive compensation

3

plans was not based on position grade and several Texaco employees in position grades below Position Grade 20 participated in some of those plans.

(Defendants' Memo at 2; Declaration of Janet Stoner dated June 30, 2004 (hereinafter "Stoner Decl.") ¶¶7-8.) Not only is this assertion extremely vague using terms such as "*in general*," "*most of*," "*several*," and "*some of*," but Ms. Stoner has offered no explanation as to what types of benefits were received by individuals holding a Texaco position grade below 20, how such awards were determined, or how many individuals holding a position grade below a Texaco 20 actually received such awards. (See Stoner Decl.)

Moreover, the deposition testimony elicited during discovery clearly indicates that to be eligible for benefits under Texaco's incentive compensation plans, an employee *had* to hold a Texaco position grade of 20 or above. In fact, Carolyn Sellers, a Texaco employee, attorney and member of the Benefits Center Change of Control Claims Committee, as well as others, testified that in their experience you *had* to hold a Texaco position grade 19 to be eligible for benefits pursuant to Texaco's Cash Bonus Plan, Supplemental Retirement Plan or Long Term Incentive Plan. (Deposition of Carolyn Sellers taken April 1, 2004 ("Sellers Depo."), P13 L16 – P15 L23 (A.Ex. M); Swanson Depo. P39 L6-16 and P40 L25 (A.Ex. H); A.Ex.T; Deposition of Scott D.H. Jeffery taken December 16, 2003 (hereinafter "Jeffery Depo.") P33 L23- P32 L5(A.Ex. S).) Similarly, to be a participant in Texaco's Deferred Compensation Plan, an employee *had* to hold a Texaco position grade 20 or above. (See e.g. Swanson Depo. P42 L8-16 and P52 L22 -- P53 L2 (A.Ex. H); Meade Depo. P45 L7-13; Jeffery Depo. P9 L5-10 (A.Ex. S); Sellers Depo. PP13-15 (A.Ex. M).)

Defendants also state, citing Michael Bandy (CEO and President of FAMM), that FAMM adopted Texaco's pay grading system and that "this pay grading system remained in place until October 2001 when the merger occurred between Chevron and Texaco." (Defendants' Memo at 2.) However, Mr. Bandy's deposition testimony is contrary. Throughout his deposition testimony, Mr. Bandy continually distinguishes between Texaco position grades and FAMM position grades stating:

4

"Technically they were not Texaco pay grades.  They were FAMM pay grades…" (Bandy Depo. P11 L21-24 (A.Ex.G).)  He even stated that he "no longer had a pay grade at Texaco once he became President of FAMM. …. Because FAMM was a separate company." (Bandy Depo. P11 L1-4 (A.Ex.G).)   Mr. Bandy further asserted during his deposition that the position grades initially adopted from Texaco "were pretty much irrelevant because FAMM was creating its own compensation system, which was significantly different from Texaco's." (Bandy Depo. P12 L13-19 (A.Ex. G).)  Indeed, although FAMM may have initially adopted Texaco's position grading system, FAMM did not focus on position grades, FAMM, as a general matter focused on an individual employee's function and responsibility within the organization. (Meade Depo. P89 L19-21 and P90 L5-14 (A.Ex. F).)  Mr. Peter Meade, C.F.O. and V.P. of FAMM is a perfect example of this, as  Mr. Meade held the same position grade for over a decade, despite the tremendous advances he made in terms of his duties and compensation. (Swanson Depo. P32 L11 -- P33 L6 (A.Ex. H).) Indeed, the President of FAMM, Michael Bandy testified during his deposition that "pay grades weren't anywhere near the issue in FAMM as they were in Texaco" because "people were actually getting compensated, for the most part, as well or better than Texaco." (Bandy Depo. P12 L8-20 (A.Ex. G.) Moreover, and as set forth in the Statement of Facts, Section 4, of plaintiff's June 29, 2004 Memorandum, Ms. Swanson, head of FAMM's executive compensation, stated that FAMM was a totally different company, so it was  difficult to compare the position grades of FAMM employees to those of Texaco employees, FAMM was an independent organization. (Swanson Depo. P80 L11-20 (A.Ex. H).)

Accordingly, the issue of whether the position grading systems of Texaco and FAMM were analogous is a material question of fact that is in dispute.  The vague statements made by defendants with citations to Ms. Stoners declaration and the statements contained in Mr. Bandy's declaration that are inconsistent with his deposition testimony have only crystallized plaintiffs' position that this

5

is a material question of fact which requires resolution before a determination as to plaintiffs' entitlement to the enhanced severance can be made.

## II. WHETHER THE ENHANCEMENT TO THE SEPARATION PAY PLAN WAS AVAILABLE TO THE "MANAGEMENT GROUP" OF BOTH TEXACO AND FAMM IS A MATERIAL QUESTION OF FACT.

It is undisputed that despite Stephen Pennacchio's initial attempts to exclude FAMM employees from participating in the Separation Pay Plan of Texaco, FAMM employees were ultimately eligible for benefits thereunder. The dispute, of course, arises when determining whether plaintiffs were eligible for the enhancement to the Plan. Although defendants attempt to argue that the enhancement was only available to employee's holding a position grade 20 regardless of whether they were employed by Texaco or FAMM, this argument simply does not make sense as each company had its own compensation and pay grade systems. At the very least, there are questions of fact surrounding whether the definition of *Texaco's* "management group" as being those individuals in "position grade 20 and above" applied to FAMM employees as well. (See A.Ex. E at Bates No. Texaco 0100.) This disputed issue is material, as it admitted by defendants' that both plaintiffs were Officers of FAMM (A.Ex.B) and were part of FAMM's key management team. (Bandy Depo. P17 L7-12 (A.Ex. G); Swanson Depo. P20 L5-10, P26 L9-21 (A.Ex. H); FAMM management listing and letters to Raftery referring to him as a member of FAMM's management team (all part of A.Ex. I).) In light of defendants' own admissions, the evidence simply does not support defendants' position that even for a FAMM employee, an individual had to hold a position grade 20 or above to be considered part of FAMM's "management team" and therefore be eligible for the enhanced severance.

III.  **THE ADEQUACY OF THE COMMITTEES' REVIEW, ANALYSIS OR INVESTIGATION IS A MATERIAL QUESTION OF FACT.**

Defendants maintain that because the Plan gave the administrator discretion to decide plaintiffs' claims, there are no questions of fact for determination because the court must grant deference to the administrator's decision. However, there are questions of fact as to whether either the Benefits Center Change of Control Claims Committee or the Change of Control Committee conducted an adequate review, analysis or investigation of plaintiffs' claims or indeed, any review at all.

Defendants, tellingly, do not assert what either Committee actually reviewed or discussed when "considering" plaintiffs' claims. Although defendants attempt to characterize the second letter denying plaintiffs the benefits they sought as a "reasoned, written decision," the letter comprises one sentence of "reason," *to wit:* "The Committee concurs with the earlier decision by the Claims Committee that as a Position Grade 19 employee, you are not eligible for the enhanced benefits made available to Position Grade 20 employees." (A.Ex. E at Texaco 0095.) There is no indication in this letter as to what the Change of Control Committee reviewed or discussed in coming to their decision to deny plaintiffs the benefits they sought. It appears to be nothing more than a rubber stamp of the earlier decision rendered by the Benefits Center Change of Control Claims Committee. This is especially so when considering that the same person, Ron G. Boilla, signed both letters, despite the fact that he was not on the Change of Control Committee. (A.Ex.E at Texaco 0033 and 0095.)

There has been no testimony or assertion by defendants or anyone on their behalf as to what was actually done in arriving at the decisions to twice deny plaintiffs the benefits they sought. At the very least, there is a question of fact as to whether there was a full and fair review as required by 29 U.S.C. §1132(2).

## *ARGUMENT*

I.  *REVIEWING PLAINTIFFS' CLAIMS DE NOVO REVEALS MATERIAL QUESTIONS OF FACT.*

Defendants have completely failed to recognize that a *de novo* review by the court is appropriate if (1) the eligibility requirements of a plan are ambiguous, or (2) there is a conflict of interest that influenced the denial of benefits. See, e.g., Pulvers v. First Unum Life Ins. Co., 210 F.3d 89, 92 (2d Cir. 2000); I.V. Services of America, Inc. v. Trustees of American Consulting Engineers Council Ins. Trust Fund, 136 F.3d 114 (2d Cir. 1998). Plaintiffs' arguments are set forth in detail in Section III of their Memorandum dated June 29, 2004, and such arguments are incorporated herein by reference.

As set forth in detail in Section III-A-1 of plaintiffs' memorandum dated June 29, 2004, the criteria set forth in Mr. Pennacchio's letter (A.Ex. E at Texaco 0100) as it pertains to FAMM employees is ambiguous at best. Moreover, the purported "clarifying amendment" attached to defendants' memorandum as Exhibit D does not rectify the ambiguity, as again there is no distinction drawn between FAMM and Texaco employees. Moreover, the amendment to the Plan was only announced to *Texaco* employees holding a Texaco position grade 20 or above. (Swanson Depo. P56 L18 -- P57 L11 (A.Ex. H); Meade Depo. P51 L13 -- P52 L14 (A.Ex. F).) In the memorandum announcing the enhancement (circulated only within Texaco), Mr. Pennacchio states that "the purpose of this letter is to provide you with information regarding … an enhancement to the Plan for members of *our* management group (position grade 20 and above)." (A.Ex. E at Texaco 0100 (emphasis added).) No such definition or limitation is included for FAMM employees. Accordingly, at best, the criteria set forth in Mr. Pennacchio's letter and the "clarifying amendment" is ambiguous as it pertains to FAMM employees and it is clearly susceptible to more than one reasonable interpretation. Moreover, when reviewing the eligibility requirements of an ERISA plan,

8

any ambiguity in the plan's language must be construed against the defendants. Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 251-52 (2d Cir. 1999).

In addition, and as clearly set forth in Section III-A-2 of plaintiffs' June 29, 2004 Memorandum, plaintiffs have provided clear evidence that there is a conflict of interest and that this conflict influenced the decision to deny plaintiffs' claims. Accordingly, *de novo* review by the Court is appropriate, and plaintiffs respectfully submit that under such a standard there are multiple questions of fact which necessitate a denial of defendants' Motion for Summary Judgment.

## II. EVEN UNDER THE ARBITRARY AND CAPRICIOUS STANDARD OF REVIEW THERE ARE MATERIAL QUESTIONS OF FACT.

Even if the Court determines that an arbitrary and capricious standard of review applies in the present case, summary judgment is still not appropriate on plaintiffs' claims. As an initial matter, defendants assert that the Court's scope of review is limited to the administrative record when applying the arbitrary and capricious standard of review. However, defendants have interpreted the case law far too narrowly, as such is not always the case. As set forth in detail in Section III-A-2-(c) of plaintiffs' June 29, 2004 Memorandum, when a conflict of interest is shown to exist (as it has been here), the court is not limited to the administrative record in performing its review even when applying the arbitrary and capricious standard of review. DeFelice v. American Intern. Life Assur. Co. of New York, 112 F.3d 61, 66 n.3 (2d Cir. 1997) (When a conflict of interest is shown to exist, the district court may assume an active role in order to ensure a comprehensive and impartial review of the case.). This is so even if the court is not satisfied that the conflict actually influenced the denial of the benefits sought. Id.

Accordingly, while deference is afforded to the administrator's decision when applying the arbitrary and capricious standard of review, this deference does not amount to no review at all. Lister v. Stark, 942 F.2d 1183, 1188-89 (7th Cir. 1991)(an interpretation will not pass muster if the

administrator fails to consider an important aspect of the problem); Reilly v. Blue Cross and Blue Shield United of Wisconsin, 846 F.2d 416, 420 (7th Cir. 1988)(even though the scope of review under the 'arbitrary and capricious' standard is narrow, the administrator must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made); Motor Vehicle Mfrs. Ass'n of U.S., Inc.v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983)(while the scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency, the administrator must examine the relevant data and articulate a satisfactory explanation for a denial of benefits.)

It has been held that summary judgment is not appropriate if there is a question as to whether a claim was properly investigated by the administrative body. See Sparkes v. Morrison & Foerster Long-Term Disability Ins. Plan, 129 F.Supp.2d 182, 188 (N.D.N.Y. 2001) (the court denied a motion for summary judgment holding that there were "significant disputes as to whether or not [plaintiff]'s claim was appropriately investigated by [defendant] prior to [the adverse decision relating to] benefits."). Indeed, in Sparkes, the plaintiff, as the plaintiffs here, contended that the investigation purportedly conducted by defendant was superficial and therefore inadequate to support the denial of benefits. Despite the fact that the defendant in Sparkes argued that it had conducted a sufficient investigation, the court held that such a dispute over the adequacy of the investigation was a material question of fact mandating a denial of the motion for summary judgment. Id at 188.

Accordingly, even under the arbitrary and capricious standard, the court must consider whether the decision to deny benefits was based on a consideration of the relevant factors. Miller v. United Welfare Fund, 72 F.3d 1066, 1072 (2d Cir. 1995) (quoting Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst., 46 F.3d 1246, 1271 (2d Cir. 1995)). In Miller, the Second Circuit

affirmed the district court's finding that the Trustee's denial of plaintiff's claim was arbitrary because there was no evidence that the Trustees relied on anything other than a three-sentence report supplied by the administrator. Id. The present case is similar. Even when reviewing the declarations and depositions transcripts supplied by the defendants, there is absolutely no evidence that the Change of Control Committee conducted a "full and fair review" or based its decision on a consideration of the relevant factors. Indeed, Ms. Stoner, Chairperson of the Change of Control Committee, in her declaration merely states that the Change of Control Committee "duly considered" plaintiffs' appeal. (Stoner Decl. at ¶33.) Nowhere does Ms. Stoner state what evidence or issues were considered by the Committee, nor does she detail any discussions, conversations, meetings or investigations conducted by either of the Committees in connection with plaintiffs' claims. No minutes were created or maintained. Indeed, as set forth in detail in Section III-A-2-(b) and Sections 6-7 of the Statement of Facts in plaintiffs' Memorandum dated June 29, 2004, the adequacy and/or sufficiency of the review or investigation (if any) conducted by either the Benefits Center Change of Control Claims Committee or the Change of Control Committee is questionable at best. Indeed, in order to satisfy the requirements of a full and fair review as required by 29 U.S.C. §1133(2), the plan's administrator is bound to consider any and all pertinent information available to it. Crocco v. Xerox, Corp., 956 F.Supp. 129, 139 (D.Conn. 1997), *aff'd in part, rev'd in part* 137 F.3d 105 (2d Cir. 1998), Certainly, in the present case, the Change of Control Committee had all the information available to consider the issues raised by plaintiffs. The Committee, however, simply decided not to consider any evidence other than the fact that plaintiffs each held a FAMM position grade 19.

Moreover, although Ms. Stoner in her declaration stated in the most general terms that the Change of Control Committee conducts a "plenary review and reaches an independent decision," she

did not specifically reference if that was in fact done in this case. (Stoner Decl. at ¶24.) Indeed, when reviewing the facts of this case, the degree of independent review is highly suspect. As an initial matter, Mr. Boilla, a member of the Benefits Center Change of Control Claims Committee, signed the letters dated April 22, 2002 from the Benefits Center Change of Control Claims Committee that first denied plaintiffs the benefits they sought (A.Ex.E at Texaco 00033), and despite the fact that he was not a member of the Change of Control Committee, Mr. Boilla *also* signed the August 26, 2002 letters that were purportedly from the Change of Control Committee that again denied plaintiffs the enhanced benefits. (A.Ex.E at Texaco 00095; Goldsby Depo. P25 L1-25 (A.Ex. Y).) Moreover, Patrick Lynch, a member of the Change of Control Committee, has no memory of reviewing any documents or having any discussions in connection with plaintiffs' claims. (See footnote 11 of plaintiffs' June 29, 2004 Memorandum.)

Accordingly, as there are material questions of fact as to whether either Committee conducted a sufficient review or an adequate investigation, it is appropriate on that basis alone to deny defendants' Motion for Summary Judgment in its entirety.

### III. A REMAND TO THE PLAN ADMINISTRATOR WOULD BE A USELESS FORMALITY.

Defendants have asserted that if the Court does not grant them summary judgment, the appropriate remedy is to remand the claims to the Plan administrator. Defendants, however, have failed to discuss a number of critical issues which must be determined before remand is even an option.

In denying defendants' Motion for Summary Judgment, which plaintiffs' of course believe is the appropriate decision, the Court is only determining that there are material questions of fact which need resolution. In order to determine whether remanding the case is appropriate, the Court must

specify which standard of review is appropriate. If the Court determines that it will review the case *de novo*, remanding the case to the Plan administrator is not an option.

Should the Court determine that an arbitrary and capricious standard of review is appropriate, remand may be an option, but there are exceptions. Defendants cite <u>Miller</u> for the proposition that if a decision by an administrator is found to be arbitrary and capricious the case must be remanded to the administrator with instructions to consider additional evidence. Defendants quote from <u>Miller</u> as follows:

> if upon review a district court concludes that the Trustees' decision was arbitrary and capricious, <u>it must remand to the Trustees</u> with instructions to consider additional evidence <u>unless no new evidence could produce a reasonable conclusion permitting denial of the claim</u>.

<u>Id</u>. Incredibly, however, the sentence quoted by defendants does not end where defendants have inserted underlining for emphasis as well as a *period*. The language quoted *correctly* is as follows:

> if upon review a district court concludes that the Trustees' decision was arbitrary and capricious, it must remand to the Trustees with instructions to consider additional evidence unless no new evidence could produce a reasonable conclusion permitting denial of the claim ***or remand would otherwise be a "useless formality*."**

<u>Id.</u> (emphasis added). The misquote is sloppy at best and at worst could be viewed as an intentional attempt to mislead the Court, especially given defendants' characterization of the quoted language as a *"sole"* exception to remanding the case. <u>See</u> <u>also</u> <u>Zuckerbrod v. Phoenix Mut. Life Ins. Co.</u>, 78 F.3d 46, 51 n.4 (2d cir. 1996) (stating that a district court is not required to remand the case to the plan administrator if it would be a useless formality); <u>Durr v. Metropolitan Life Ins. Co.</u>, 15 F.Supp.2d 205, 214 (D.Conn.,1998) (remand not necessary even when court found administrator's denial of benefits was arbitrary and capricious).

Given the clear existence of a conflict of interest, taken together with the showing of hostility and animosity between Texaco and FAMM (<u>see</u> Plaintiffs' June 29, 2004 Memorandum, Statement

of Facts, Section 3), remanding the case to the Change of Control Committee would be a useless formality simply resulting in another denial. The fact of the matter is that both Committees had all the evidence readily available to them to make a reasoned decision at the time of the original denials. Plaintiffs raised all of the pertinent issues at the appropriate time and have not raised new issues during this litigation. There is, therefore, no "new" evidence necessitating a remand.

Accordingly, should the Court deny defendants' Motion for Summary Judgment and make a determination that the denial of benefits was arbitrary and capricious, plaintiffs respectfully request that the Court deny defendants' request for remand and decide the issue of entitlement itself.

## *CONCLUSION*

In view of the foregoing, and in view of the arguments and factual assertions contained in plaintiffs' June 29, 2004 Memorandum, plaintiffs respectfully request that defendants' Motion for Summary Judgment be denied in its entirety.

By_____
Scott R. Lucas (ct00517)
Mary Alice S. Canaday (ct17608)
*Attorneys for Plaintiffs*
MARTIN, LUCAS & CHIOFFI, LLP
177 Broad Street
Stamford, CT 06901
Phone: (203) 973-5200
Fax: (203) 973-5250
slucas@mlc-law.com
mcanaday@mlc-law.com

## *CERTIFICATE OF SERVICE*

This is to certify that on this 5th day of August, 2004, a copy of the foregoing was mailed, first class, postage prepaid, to:

Conrad S. Kee, Esq.
Jackson Lewis LLP
177 Broad Street, P.O. Box 251
Stamford, CT 06904
Phone: (203) 961-0404
Fax: (203) 324-4704
KeeC@JacksonLewis.com

_____
Scott R. Lucas