## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LARRY A. KATZ | : | |
| And KENNETH M. RAFTERY, | : | CIVIL ACTION NO. |
| | : | 302 CV 02201 (AWT) |
| Plaintiffs, | : | |
| | : | |
| V. | : | |
| | : | |
| THE SEPARATION PAY PLAN | : | |
| OF TEXACO, INC. | : | |
| And TEXACO, INC., | : | |
| | : | AUGUST 20, 2004 |
| Defendants. | : | |

### PLAINTIFFS' REPLY TO
### DEFENDANTS' MEMORANDUM IN OPPOSITION
### TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Defendants' assertions that there are questions of fact surrounding the issue of whether plaintiffs' claims are "frivolous" are belied by the statements contained in their opposition brief as well as their Rule 56(a)2 Statement. What becomes clear after a perfunctory review of defendants' submissions is that there are no questions of fact that require resolution in making the determination that plaintiffs' claims not only are meritorious, but that the facts readily demonstrate that plaintiffs should prevail. Accordingly, plaintiffs' Motion for Summary Judgment on defendants' counterclaim seeking a declaratory judgment should be granted.

**I.     *DEFENDANTS' FACTUAL ADMISSIONS SUPPORT A CONCLUSION THAT PLAINTIFFS SHOULD PREVAIL AND THAT THEIR CLAIMS ARE CLEARLY NOT "FRIVOLOUS."***

It is undisputed that Texaco and FAMM were two separate and independent companies. Indeed, defendants readily admit that "FAMM was being run as an entrepreneurial entity striving to remain

independent and to create its own compensation and benefit schemes that would be separate and apart from those of Texaco. (Bandy Depo. P14 L14-25 (A.Ex. G).)"[1] (Defendants' Local Rule 56(a)2 Statement ¶16.)  Accordingly, a preliminary and elementary issue in determining whether plaintiffs were entitled to the enhanced benefits should have been to determine whether the position grading systems employed by Texaco and FAMM were analogous.  This is even more apparent given the fact that defendants admit that "FAMM, as a general matter, simply did not focus on position grades, but rather focused on an individual employee's function and responsibility within the organization. (Meade Depo. P89 L19-21 and P90 L5-14 (A.Ex. F).)" (Defendants' Local Rule 56(a)2 Statement ¶26.)  In addition, defendants admit that plaintiffs were perceived as part of FAMM's management group and were both Officers of FAMM.  (Defendants' Local Rule 56(a)2 Statement ¶¶32, 36.)  In view of these admissions, it is clear (1) that at the very least a comparison between Texaco and FAMM should have been conducted before either Committee rejected plaintiffs' claims; and (2) had such a review been conducted, plaintiffs' entitlement would have been clear.

No such comparison was ever made. Indeed, defendants admit that "No committee, or member thereof, analyzed the duties, responsibilities or compensation of employees holding a FAMM position-grade 19 as compared to employees holding a Texaco position-grade 19 or 20 when making the determination to deny plaintiffs the enhanced benefits they sought under the Plan. (See Request to Admit No. 20 and Answer thereto (A.Ex. B)." (Defendants' Local Rule 56(a)2 Statement ¶133.) Defendants further admit that no one from either committee ever initiated contact with the plaintiffs, nor with any other employee of FAMM, to discuss plaintiffs' eligibility for the enhanced severance. (Defendants' Local Rule 56(a)2 Statement ¶116.) Indeed, defendants admit that no committee

---

[1] "A.Ex __" refers to exhibits attached the Appendix filed together with Plaintiffs' June 29, 2004 Memorandum in Support Of Plaintiffs' Motion For Summary Judgment.

members ever contacted Michelle Swanson, Michael Bandy or Peter Meade, plaintiffs' direct supervisor, concerning their views or opinions as to whether plaintiffs were entitled to enhanced severance. (Defendants' Local Rule 56(a)2 Statement ¶117-119.) Incredibly, defendants even admit that no one from either of the committees could "quite remember what, if anything, the Committees did to review plaintffs' claims." (Defendants' Local Rule 56(a)2 Statement ¶127.)

Moreover defendants' admissions raise significant questions as to whether there ever was a review by the Change of Control Committee, let alone a "full and fair review" as required by 29 U.S.C. §1132(b). For instance, defendants admit that Patrick Lynch, a member of the Change of Control Committee "has virtually no memory whatsoever of reviewing any documents in connection with plaintiffs' claims, or what if any discussions he had with the Committee or anyone else regarding plaintiffs' claims." (Defendants' Local Rule 56(a)2 Statement ¶112.) Defendants further admit that Mr. Lynch confirmed that the Change of Control Committee kept no recordings, minutes or notes of its meetings. (Defendants' Local Rule 56(a)2 Statement ¶113.)

Most disturbing, however, is the evidence of bias and pre-judgment. Defendants admit that "[i]n April 2002 Tom Lynch, head of executive compensation for Texaco (but who was not on either the Benefits Center Change of Control Claims Committee or the Change of Control Committee), informed Michael Bandy that plaintiffs' claims were a "slam dunk" for Texaco. In fact, Pat Lynch, who is Tom Lynch's brother, was on the Change of Control Committee (the appellate committee), and that Committee had not yet reviewed plaintiffs' claims." (Defendants' Local Rule 56(a)2 Statement ¶111.) Moreover, Ron Boilla who was *not* on the Change of Control Committee signed the final denial letter sent to plaintiffs. Mr. Boilla was in fact a member of the Benefits Center Change of Control Claims Committee, the Committee that made the *initial* denial of benefits which

3

should have been fully reviewed by the only committee authorized to deny plaintiffs' claims – the Change of Control Committee. (Defendants' Local Rule 56(a)2 Statement ¶109.)

Defendants' admissions reveal that basically no investigation or comparison of position grades was conducted by the Benefits Center Change of Control Claims Committee and further expose a significant question as to whether there was any review at all by the Change of Control Committee. In view of the facts *admitted* by the defendants, it is clear that plaintiffs' claims are meritorious. Accordingly, plaintiffs' Motion for Summary Judgment should be granted.

## II.　DEFENDANTS MISCONTSTRUE THE PROPER DEFINITION OF "FRIVOLOUS."

Defendants are seeking a declaratory judgment from the court that plaintiffs' claims are "frivolous" so that they can avoid the obligation to reimburse plaintiffs for "all reasonable attorney's fees, costs and other expenses." The relevant provision of the Plan, entitled "Expenses & Fees Reimbursement," provides as follows:

> Reimbursement of all reasonable attorney's fees, costs and other expenses incurred by you in enforcing your rights under this plan, unless a court of competent jurisdiction determines that your cause of action is frivolous.

(A.Ex. A, p.18.)

Absent a specific clause providing for attorney's fees in an ERISA plan, an application for such fees is governed by 29 U.S.C. 1132(g)(1), which provides in pertinent part: "In any action under this subchapter … by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." Ordinarily, the decision to award attorney's fees to a plaintiff is based on five factors: (1) the degree of the offending party's culpability or bad faith; (2) the ability of the offending party to satisfy the award of attorney's fees; (3) whether an award of attorney's fees would deter other persons from acting similarly under like

circumstances; (4) the relative merits of the parties positions; and (5) whether the action conferred a common benefit on a group of pension plan participants.  <u>Chambless v. Masters, Mates & Pilots Pension Plan</u>, 815 F.2d 869 (2d Cir. 1987.)  In <u>Chambless</u>, the court in granting plaintiff's award of attorney's fees explained that "ERISA's attorney's fee provision must be liberally construed to protect the statutory purpose of vindicating …rights…". <u>Id.</u> at 872.

However, in the present case, the Plan specifically included a provision that afforded the plaintiffs more protection than that afforded to them by 1132(g)(1).  Accordingly, defendants' argument that the definition of "frivolous" found in Webster's Collegiate Dictionary is the definition that should be used in to interpret the foregoing provision of the Plan simply does not make sense when construing the Plan as a whole and is contrary to applicable law governing ERISA.[2] Defendants assert that "frivolous" should be defined as "having no sound basis (as in fact or law)" and further appear to argue that if plaintiffs were to ultimately be unsuccessful in their quest for benefits, their claims should be deemed frivolous.  Such simply is not in accordance with the law, as this interpretation would allow defendants to defeat the requirements of 29 U.S.C. 1132(g)(1).  It has long been recognized that the requirements of ERISA form the floor as far as an employer's requirements and obligations are concerned, and while an employer can increase the protection afforded to participants, an employer cannot decrease the protection afforded to participants pursuant to ERISA. Indeed, it is impermissible to attempt to reduce employees' benefits or protections under ERISA, or to frustrate ERISA's broad regulatory purposes.  <u>Kinek v. Paramount Communications,</u>

---

[2] Interestingly, defendants do not cite the definition of a "frivolous claim" contained in Black's Law Dictionary, 8th Edition, 2004 which specifically refers to Rule 11, to wit: "A claim that has no legal basis or merit, esp. one brought for an unreasonable purpose such as harassment. Fed. R. Civ. P. 11(b)."

Inc., 22 F.3d 503, 510 (2d Cir. 1994) ("It is well established that ERISA provides merely a floor for benefits, not a ceiling"); see also Gerosa v. Savasta & Co., Inc., 329 F.3d 317, 329 (2d Cir. 2003) (ERISA guarantees the floor of responsibility).

Moreover, although defendants attempt to distance themselves from the definition of "frivolous" applied when enforcing Rule 11, this definition is appropriate and reasonable in this instance.[3]  Defendants argue that because sanctions are being imposed pursuant to Rule 11, the standard for determining whether a claim is "frivolous" is much higher than in the present case. Again, this argument does not make sense when viewing the intent of the Plan as a whole and the specific provision requiring reimbursement of fees.  A determination that plaintiffs' claims are frivolous would be paramount to imposing sanctions in the form of non-reimbursement of fees expended while seeking to enforce their federal rights pursuant to ERISA.  Indeed, the sanctions imposed pursuant to Rule 11 are "reasonable expenses and attorney's fees." Fed. Rule Civil Proc. 11. Accordingly, the standard applied to determine frivolousness here should be that utilized when determining whether sanctions under Rule 11 are appropriate.

## III.    *EVEN APPLYING DEFENDANTS' DEFINITION, PLAINTIFFS' CLAIMS ARE NOT FRIVOLOUS.*

Even assuming for the sake of argument *only* that the dictionary definition of "frivolous" should be applied in the instant case, it is clear that plaintiffs' claims are not frivolous.  Defendants

---

[3] Defendants assert that plaintiffs' reference to a "frivolousness" standard applied in the 7th Circuit providing:  "Something is frivolous only when (a) we've decided the very point, and recently, against the person reasserting it, or (b) 99 of 100 practicing lawyers would be 99 percent sure that the position is untenable, and the other 1 percent would be 60 percent sure its untenable. Either one is a pretty stiff test", citing Smith v. Blue Cross & Blue Shield United of Wisconsin, 724 F.Supp. 618, 623, aff'd, 959 F.2d 655 (7th Cir. 1992), is "misguided."  However, plaintiffs specifically pointed out that this is a higher standard than that generally applied in the Second Circuit. See Plaintiffs' June 29, 2004 Memorandum in Support of Plaintiffs' Motion for Summary Judgment, p. 24.

assert that the appropriate definition of frivolous is "having no sound basis (as in fact or law.)"  Even under this standard, which plaintiffs do not believe is the correct standard, plaintiffs' claims are not frivolous.  In order to be deemed frivolous applying the dictionary definition plaintiffs' claims can have "*no*" sound basis in fact or in law.  It is clear from defendants' own admissions that plaintiffs have multiple bases for their claims.

As set forth above and in plaintiffs' prior Memorandums[4], Texaco and FAMM were two separate and distinct companies, with two separate and distinct compensation and benefit schemes.  Accordingly, in order to determine whether plaintiffs, who were employed by FAMM, were eligible for benefits awarded to employees holding a Texaco position grade 20, a comparison of the position grading systems was necessary.  Defendants readily admit no such comparison was made.

Furthermore, it is questionable whether plaintiffs were ever afforded a "full and fair review" as required by 29 U.S.C. §1132(b), as no one from the Change of Control Committee can remember reviewing plaintiffs' claims, there are no notes or minutes of any review, no one from the Change of Control Committee ever contacted anyone at FAMM regarding plaintiffs' entitlement, and no one from the Change of Control Committee signed the letters ostensibly sent from that Committee denying plaintiffs the benefits they sought.

Accordingly, even using defendants' definition, plaintiffs' claims are not frivolous and plaintiffs' Motion for Summary Judgment should be granted.

---

[4] Plaintiffs hereby incorporate by reference their Memorandum In Support Of Plaintiffs' Motion For Summary Judgment dated June 29, 2004 and the accompanying Local Rule 56(a)1 Statement, as well as their Memorandum In Opposition To Defendants' Motion For Summary Judgment dated August  5, 2004 and the accompanying Local Rule 56(a)2 Statement.

## IV.   DEFENDANTS FAIL TO RECOGNIZE THAT DE NOVO REVIEW IS APPROPRIATE.

Finally, defendants again have neglected to recognize that although the Plan here grants the administrator discretion, *de novo* review should be the appropriate standard for this court to apply. As set forth in plaintiffs' prior memoranda, if the eligibility criteria set forth in the Plan language is deemed ambiguous or if plaintiffs show that the conflict of interest present in this case influenced the denial of benefits, *de novo* review is appropriate.  See, e.g., Pulvers v. First Unum Life Ins. Co., 210 F.3d 89, 92 (2d Cir. 2000); I.V. Services of America, Inc. v. Trustees of American Consulting Engineers Council Ins. Trust Fund, 136 F.3d 114 (2d Cir. 1998).  If the Court deems *de novo* review appropriate under either of these scenarios, it is axiomatic that plaintiffs' claims are not frivolous. Even if the Court determines that an arbitrary and capricious standard of review is appropriate, plaintiffs' claims are still not frivolous in view of the complete failure by either the Benefits Center Change of Control Claims Committee or the Change of Control Committee to conduct an adequate, fair or independent review of plaintiffs' claims and the fact that when properly analyzed, the facts clearly demonstrate that plaintiffs are entitled to the benefits they seek.

## *CONCLUSION*

In view of the foregoing and all of plaintiffs' prior submissions, it is respectfully submitted that plaintiffs' Motion for Summary Judgment on defendants' counterclaim should be granted.

By_____
  Mary Alice S. Canaday (ct17608)
  Scott R. Lucas (ct00517)
  *Attorneys for Plaintiffs*
  MARTIN, LUCAS & CHIOFFI, LLP
  177 Broad Street
  Stamford, CT 06901
  Phone: (203) 973-5200
  Fax: (203) 973-5250
  slucas@mlc-law.com
  mcanaday@mlc-law.com

### *CERTIFICATE OF SERVICE*

This is to certify that on this 20th day of August, 2004, a copy of the foregoing was hand delivered to:


Conrad S. Kee, Esq.
Jackson Lewis LLP
177 Broad Street, P.O. Box 251
Stamford, CT 06904
Phone: (203) 961-0404
Fax: (203) 324-4704
KeeC@JacksonLewis.com


_____
Mary Alice S. Canaday