# EXHIBIT A

Westlaw.

Not Reported in F.Supp. Page 1
Not Reported in F.Supp., 1994 WL 132151 (S.D.N.Y.), 18 Employee Benefits Cas. 1911
**(Cite as: Not Reported in F.Supp.)**

H
Briefs and Other Related Documents
Memorial Hosp. for Cancer and Allied Diseases v. Empire Blue Cross and Blue ShieldS.D.N.Y.,1994
United States District Court, S.D. New York.
MEMORIAL HOSPITAL FOR CANCER AND ALLIED DISEASES, Plaintiff,
v.
EMPIRE BLUE CROSS AND BLUE SHIELD, Defendant.
No. 93 CIV. 6682 (JSM).

April 12, 1994

Minna Schragg, Proskauer Rose Goetz & Mendelsohn, New York City.
Jeffrey D. Chansler, Empire Blue Cross and Blue Shield, New York City.

MEMORANDUM OPINION AND ORDER
MARTIN, District Judge:

BACKGROUND AND FACTS

*1 Empire Blue Cross and Blue Shield ("Empire") has a provider agreement with Memorial Hospital ("Memorial") whereby Memorial provides hospital services to Empire policyholders and Empire reimburses Memorial directly for those services. This dispute arises out of Empire's refusal to reimburse Memorial for two particular treatments- High Dosage Chemotherapy with blood product support ("HDC"), and Taxol, an anti-cancer drug often used in conjunction with chemotherapy, administered to several patients insured by Empire (collectively, the "Treatments"). Since 1990, Empire has allegedly refused to pay Memorial for HDC with blood product support used to treat certain forms of cancer on the ground that its use in those instances is experimental. In addition, while Empire once regularly paid Memorial for Taxol treatments, Empire has allegedly stopped reimbursing the hospital for such treatments on the grounds that the treatments are experimental.

Memorial filed a complaint in New York Supreme Court on September 8, 1993 alleging seven state law causes of action based on common law breach of contract and New York insurance, unfair trade practices and human rights laws. Memorial is seeking a declaratory judgment stating that Empire's refusal to pay for the Treatments is unlawful, injunctive relief enjoining Empire from denying future claims, compensatory damages of approximately $2 million for services rendered, punitive damages and attorneys fees and costs.

With its Answer, Empire asserted ten counterclaims, five of which allegedly arise under Section 1132(a)(3) of the Employee Retirement and Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. (1985) [FN1] Specifically, Empire is seeking equitable restitution of monies previously paid to Memorial for Taxol treatments, the imposition of a constructive trust over those monies, a right to set off any amounts previously paid against any amounts otherwise owing to Memorial, an accounting with respect to the amounts previously paid and a declaratory judgment upholding Empire's exclusion of the Treatments from coverage under the terms of the ERISA-covered plans [FN2]

Empire subsequently removed the case to federal court pursuant to 28 U.S.C. § 1441 on the grounds that its obligations to Memorial are governed by ERISA. Memorial now moves to remand the action to state court pursuant to 28 U.S.C. § 1447(c), arguing that this Court lacks federal subject matter jurisdiction over the dispute because Empire's obligation to reimburse the hospital arises out of the provider agreement, which is a product of state law and is independent of any obligation Empire has to its subscribers, including those covered by ERISA plans. Memorial has also requested attorneys fees and costs incurred in connection with this motion to remand pursuant to 28 U.S.C. § 1447(c)

In response, Empire contends there are three bases for federal jurisdiction over this case. First, Empire argues that many of Memorial's state law claims are completely preempted by ERISA so that they are deemed federal. Second, Empire argues that Memorial's complaint can be read to allege claims arising out of federal common law, over which the Court would have jurisdiction pursuant to 28 U.S.C. § 1331. Finally, Empire asserts that its federal counterclaims provide the Court with an independent basis of federal jurisdiction.

*2 For the reasons stated below, the motion to remand is granted

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:02-cv-02201-AWT   Document 91-2   Filed 01/23/2007   Page 3 of 16

Not Reported in F.Supp.
Not Reported in F.Supp., 1994 WL 132151 (S.D.N.Y.), 18 Employee Benefits Cas. 1911
**(Cite as: Not Reported in F.Supp.)**

Page 2

## DISCUSSION

The propriety of removal depends on whether plaintiff's case falls within the original federal question jurisdiction of the court. *Franchise Tax Board v. Const. Laborers Vac. Trust*, 463 U.S. 1, 8, 103 S.Ct. 2841, 2845 (1983). 28 U.S.C. § 1447(c) provides in relevant part: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c) (Supp.1993). On a motion to remand, it is the removing defendant's burden to show the removal was proper by establishing the existence of federal subject matter jurisdiction. *See, e.g., Newmark & Lewis, Inc. v. Local 814, Internat'l Brotherhood of Teamsters*, 776 F.Supp. 102, 105 (E.D.N.Y.1991).

*Complete Preemption*

Federal question cases are those arising under the Constitution, laws or treaties of the United States. *See, e.g., Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546 (1987). Under the "well-pleaded complaint" rule, the federal question must clearly appear on the face of the plaintiff's complaint or the complaint's right to relief must require the resolution of a substantial question of federal law in dispute between the parties. *Franchise Tax Board*, 463 U.S. at 13, 103 S.Ct. at 2848.

It is well-established that a case may not be removed to federal court merely on the basis of a federal defense, such as preemption. 463 U.S. at 14, 103 S.Ct. at 2848. Courts have developed a limited exception to the "well-pleaded complaint" rule, allowing removal of an ostensibly state law claim when congressional intent to "so completely preempt a particular area" is clear and therefore "any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. at 63-64, 107 S.Ct. at 1546.

The Supreme Court, in *Metropolitan Life Ins Co. v. Taylor*, held that in appropriate circumstances, ERISA is a statute subject to this doctrine of "complete preemption." *Metropolitan Life*, 481 U.S. at 67, 107 S.Ct. at 1548. For a state law claim to be completely preempted by ERISA, and therefore removable to federal court, the claim must be preempted by ERISA *and* must be brought by a party who falls within the scope of ERISA's civil enforcement provision, 29 U.S.C. § 1132(a). *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. at 64-67, 107 S.Ct. at 1546-48. *See also Smith v. Dunham-Bush, Inc.*, 959 F.2d 6, 8-10 (2d Cir.1992)(even if state law claim is preempted, "it may be removed only if it comes within the scope of ERISA's civil enforcement provisions.") Accordingly, as a threshold matter, the Court must examine whether Memorial has standing under ERISA to seek enforcement of the statute.

29 U.S.C. § 1132 provides that a civil action may be brought by either ERISA plan participants, beneficiaries, fiduciaries or the Secretary of Labor. Looking at the plain language of § 1132 and the statutory definitions, Memorial, as a health care provider, does not fit into any of these categories. *See* 29 U.S.C. § 1002. Therefore, Memorial does not have independent standing to bring actions pursuant to 29 U.S.C. § 1132. *See Lifetime Medical Nursing Services, Inc. v. New England Health Care Employees Welfare Fund*, 730 F.Supp. 1192, 1195-96 (D.R.I.1990).[FN3]

*3 Undeterred, Empire asserts that the provider agreement between Empire and Memorial is merely a payment arrangement which bestows no independent or substantive rights. Thus, Empire contends that Memorial is necessarily suing as an assignee of the ERISA plan beneficiaries to enforce the benefit provisions of their health plans. Even though Memorial has not alleged an assignment of benefits, Empire contends that Memorial is arguably a "beneficiary" within the scope of ERISA's civil enforcement provisions.

However, courts have repeatedly rejected exactly this argument. *See Lifetime Medical Nursing Services*, 730 F.Supp. at 1195-96; *Pritt v. Blue Cross & Blue Shield of West Virginia, Inc.*, 699 F.Supp. 81, 84-85 (S.D.W.Va.1988)(under identical fact situation, rejecting defendant's theory that physician, by virtue of provider agreement, was beneficiary of plan and remanding to state court for resolution under state contract law); *Northeast Dept. ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund*, 764 F.2d 147, 154 n. 6 (3d Cir.1985)(rejecting argument that ERISA plan was suing another plan as the assignee of its participant or beneficiary in the absence of any formal assignment and holding that § 1132(a)(1)(B) does not provide for persons other than beneficiaries or participants to sue).[FN4]

Case 3:02-cv-02201-AWT    Document 91-2    Filed 01/23/2007    Page 4 of 16

Not Reported in F.Supp.                                                                                           Page 3
Not Reported in F.Supp., 1994 WL 132151 (S.D.N.Y.), 18 Employee Benefits Cas. 1911
**(Cite as: Not Reported in F.Supp.)**

Empire has not presented this Court with any convincing argument for declining to follow the above-cited precedents. Furthermore, the Supreme Court has distinguished between the obligations of an insurer under its insurance policies and the obligations that insurer incurs under provider agreements, finding that provider agreements constitute "separate contractual arrangements .... for the purchase of goods and services" by the insurer, and cannot be identified with the insurance contracts between the insurer and its policyholders for purposes of regulation, despite the fact that each agreement may refer to the other. *Group Life & Health Ins. Co. v. Royal Drug Co.,* 440 U.S. 205, 213-16, 99 S.Ct. 1067, 1074-75 (1979). The Supreme Court's analysis of provider agreements in *Royal Drug* lends further support to conceiving of Memorial's claim based on the provider agreement as separate and distinct from Empire's obligations under its insurance policies, even the ERISA-covered plans.

Since Memorial's action does not fall within the scope of § 1132, an essential element of complete preemption is missing. Therefore, Empire's preemption argument is nothing more than a federal defense. Under the "well-pleaded complaint" rule, such a defense cannot defeat the motion to remand.

*Federal Common Law and § 1331 Jurisdiction*

Empire further argues that, even if Memorial's claims are not subject to complete preemption, the Court has jurisdiction over them pursuant to 28 U.S.C. § 1331 because they arise under federal common law. This argument is wholly without merit.

The Supreme Court has recognized that ERISA authorizes federal courts to develop a body of federal common law "of rights and obligations under ERISA-regulated plans." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 954 (1989). Empire asserts that federal common law governs Memorial's claims because they purportedly present the question of whether a provider may sue to obtain benefit payments allegedly due under an ERISA plan. [FN5]

*4 However, the Supreme Court did not authorize lower courts to create additional rights under ERISA under the rubric of federal common law. "Instead, it was directing federal courts to develop a federal common law to aid in understanding the rights and obligations under ERISA *when addressing claims pursuant to that statute.*" *Adler v. Aztech Chas. P. Young Co.,* 1992 WL 309548, *4 (S.D.N.Y. Oct. 15, 1992)(interpreting *Firestone v. Bruch* ) (emphasis added).

In all of the cases Empire cites in support of its contention that Memorial's claims arise under federal common law, it is clear that the issues raised in each case were directly related to specific statutory provisions in ERISA. In *Whitworth Bros. Storage Co. v. Central States, Southeast & Southwest Areas Pension Fund,* 794 F.2d 221 (6th Cir.), *cert. denied,* 479 U.S. 1007, 107 S.Ct. 645 (1986), an employer sued to recover payments mistakenly made to an ERISA-covered plan, seeking restitution under state common law. The Court found the claim to be governed by federal common law, citing 29 U.S.C. § 1103(c)(2)(A)(ii), which provides that ERISA's anti-inurement provisions do not prohibit the return of mistaken contributions to employers. The court held that 29 U.S.C. § 1103(c)(2)(A)(ii) "evinces congressional intent not to completely preclude employer recovery of mistakenly paid contributions." *Whitworth Bros.,* 794 F.2d at 236 n. 4. *Airco Industrial Gases, Inc. v. Teamsters Health & Welfare Pension Fund,* 850 F.2d 1028 (3d Cir.1988), also based its holding on the fact that an employer's claim for restitution of erroneous overpayments to an employee benefit plan implicated 29 U.S.C. § 1103(c)(2)(A)(ii). *See* 850 F.2d at 1033-34 n. 5.

In *Provident Life & Accident Ins. Co. v. Waller,* 906 F.2d 985 (4th Cir.), *cert. denied,* 498 U.S. 982, 111 S.Ct. 512 (1990), another case cited by Empire, the court recognized a federal common law claim of unjust enrichment where a plan administrator sued a plan participant to recover advances made as a benefit under the plan. The court based its holding on the fact that the ERISA-covered plan itself provided for repayment of advanced funds and that 29 U.S.C. § 1103(c)(2)(A)(ii) evinced congressional intent "to ensure that plan funds are administered equitably and that no one party, not even plan beneficiaries, should unjustly profit." *Provident Life,* 906 F.2d at 993.

Since Memorial is not one of the enumerated parties authorized to sue under ERISA's civil enforcement provisions, its claims by definition cannot be based on any provision found in ERISA. While Memorial's breach of contract action may require consultation of the terms of ERISA-covered benefit plans, its complaint does not make any claim pursuant to ERISA, and does not seek an adjudication of its rights under ERISA or an ERISA-covered plan. Accordingly, federal common law would be totally

Case 3:02-cv-02201-AWT   Document 91-2   Filed 01/23/2007   Page 5 of 16

Not Reported in F.Supp                                                                                                                                        Page 4
Not Reported in F.Supp., 1994 WL 132151 (S.D.N.Y.), 18 Employee Benefits Cas. 1911
**(Cite as: Not Reported in F.Supp.)**

inapplicable because none of Memorial's claims directly implicate ERISA. Therefore, there is no basis for federal jurisdiction pursuant to § 1331.

*Counterclaims as a Basis for Federal Jurisdiction*

\*5 Empire contends that its federal counterclaims provide this Court with an independent source of jurisdiction sufficient to preclude a remand to state court. Empire further contends that, even if the Court decides to remand Memorial's action, the Court must nonetheless retain jurisdiction over the federal counterclaims. The Court disagrees.

Removal jurisdiction cannot be created by pleading a federal counterclaim. *See, e.g., Takeda v. Northwestern Nat'l Life Ins. Co.,* 765 F.2d 815, 822 (9th Cir.1985); *Federal Deposit Ins. Corp. v. Elefant,* 790 F.2d 661, 667 (7th Cir.1986).[FN6] In addition, there is simply no authority to support Empire's assertion that the Court must at least retain jurisdiction over the ERISA counterclaims. *Kuehne & Nagel v. Geosource, Inc.,* 874 F.2d 283 (5th Cir.1989), which Empire cites, merely held that the court has discretion to adjudicate a compulsory counterclaim which rests on an independent ground of federal jurisdiction, notwithstanding the dismissal (not the remand) of plaintiff's complaint for lack of subject matter jurisdiction. *See also* 6 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 1414 at 113-14 (2d ed. 1990) (noting that court *may* adjudicate compulsory counterclaim presenting independent basis of federal jurisdiction despite dismissal of plaintiff's claim due to lack of federal jurisdiction).

Moreover, none of the purported ERISA counterclaims are cognizable under the statute. All of Empire's federal counterclaims have been brought pursuant to 29 U.S.C. § 1132(a)(3). That section provides that a civil action may be brought by a plan fiduciary
(A) to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) to obtain ... equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan ...

29 U.S.C. § 1132(a)(3)(1988 & Supp. II 1990).[FN7] Pursuant to 29 U.S.C. § 1132(e), district courts have exclusive jurisdiction over these actions.

By its own terms, § 1132(a)(3) authorizes fiduciaries to seek equitable relief only. While Empire's first four federal counterclaims clearly seek equitable relief, courts have consistently found that fiduciary insurers like Empire do not have standing under § 1132(a)(3) to seek the form of relief Empire essentially seeks-namely, restitution for money paid to third parties-because such actions seek neither to redress violations of ERISA or an ERISA plan nor to enforce a provision of ERISA or an ERISA plan. *See Connors v. Amax Coal Co., Inc.,* 858 F.2d 1226, 1229 n. 4 (7th Cir.1988)("Section [1132(a)(3) ] does not apply to suits by fiduciaries to recover money that they paid to outside entities in violation of the terms of ERISA or the plan."); *NYSA-ILA GAI Fund v. Poggi,* 617 F.Supp. 847, 849 (S.D.N.Y.), *amended and reaffirmed,* 624 F.Supp. 443 (1985)(language of § 1132(a)(3) does not permit fiduciary to bring action to recover benefits wrongfully paid out); *National Ben. Administrators, Inc. v. Mississippi Methodist Hosp. & Rehabilitation Center,* 748 F.Supp. 459, 464 (S.D.Miss.1990)(§ 1132(a)(3) not intended to address question of whether health care provider, "having extended medical services to a patient and having received payment from the plan, may be made to return those payments"). Accordingly, the first four counterclaims do not provide a basis for federal jurisdiction because they do not arise under 29 U.S.C. § 1132(a)(3).

\*6 Similarly, Empire's declaratory judgment counterclaim does not provide a basis for federal jurisdiction.[FN8] Empire seeks a declaratory judgment upholding its interpretation of its rights and obligations under Empire's ERISA-covered plans, thereby validating Empire's refusal to pay Memorial for the Treatments. Thus, the controversy underlying Empire's declaratory judgment action is basically one of contract interpretation. This is a legal claim, not an equitable claim, and as such, it is not the type of claim authorized by § 1132(a)(3). *See Simler v. Conner,* 372 U.S. 221, 222, 83 S.Ct. 609, 611 (1963)("The fact that the action is in form of a declaratory judgment case should not obscure the essentially legal nature of the action"); *Transamerica Occidental Life Ins. Co. v. Digregorio,* 811 F.2d 1249, 1251 (9th Cir.1987)("A particular declaratory judgment draws its equitable or legal substance from the nature of the underlying controversy," and an action seeking a declaration of insurer's obligations under ERISA-covered policy is not an equitable action); *Connecticut General Life Ins. Co. v. Cole,* 821 F.Supp. 193, 197 (S.D.N.Y.1993)(finding no jurisdiction under § 1132(a)(3) over fiduciary's declaratory judgment action seeking interpretation of its obligations under ERISA-covered policy because such action sought

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:02-cv-02201-AWT   Document 91-2   Filed 01/23/2007   Page 6 of 16

Not Reported in F.Supp                                                                                                    Page 5
Not Reported in F.Supp., 1994 WL 132151 (S.D.N.Y.), 18 Employee Benefits Cas. 1911
**(Cite as: Not Reported in F.Supp.)**

legal relief)

Even if the declaratory judgment counterclaim were equitable in nature, it still would not be cognizable under § 1132(a)(3) because it does not seek to enforce ERISA or the terms of an ERISA plan. Empire has not alleged that Memorial has violated the terms of either ERISA or any ERISA plan. Moreover, courts have consistently held that fiduciary insurers like Empire do not have standing under § 1132(a)(3) to seek clarification of their obligations under ERISA-governed contracts and that such suits are not actions to "enforce" ERISA plan terms. See, e.g., Transamerica, 811 F.2d at 1252 (drawing distinction between insurer's declaratory judgment suit to interpret its policy and an action to enforce plan terms); Reynolds v. Stahr, 758 F.Supp. 1276, 1279-81 (W.D.Wis.1991)(concluding an action by fiduciary to determine the eligibility of a claimant for benefits is neither an action for "equitable relief" nor an action to "enforce" the provisions of ERISA or a plan); Connecticut General Life Ins. Co., 821 F.Supp. at 197 ("An action brought solely to clarify one's obligations as an insurer is *not* a suit to 'enforce' the terms of an ERISA plan.")(emphasis in original)

Such a conclusion seems particularly appropriate in this case because Memorial is not a party to any of Empire's ERISA-covered policies. See Northeast Dept. ILGWU Health & Welfare Fund, 764 F.2d at 153 (rejecting argument that suit for declaratory judgment regarding fiduciary's obligations under insurance policy is a suit to enforce the terms of ERISA-covered plan because such argument is based on "an untenable legal fiction" that fiduciary could seek enforcement against someone not a party to the plan).

*7 Accordingly, Empire's counterclaims do not provide a basis for ERISA jurisdiction either. Lacking any basis for federal subject matter jurisdiction, the Court is bound to remand this case to the state court from which it was removed. The motion to remand is hereby granted.

In addition, the Court grants Empire's request for an opportunity to submit its opposition to Memorial's request for costs and attorneys fees. Empire is directed to file its papers no later than Monday April 25, 1994. If Memorial wishes to reply to Empire's submission, such reply shall be filed by Monday May 2, 1994.

SO ORDERED

FN1. Approximately thirty-two of the patients to whom Memorial administered the Treatments are insured by ERISA-covered benefit plans.

FN2. Empire's five state law counterclaims seek the same relief under New York law regarding payments and exclusions made pursuant to the non-ERISA insurance policies.

FN3. While the Second Circuit has not ruled on this question, it has consistently found the list of parties contained in § 1132 to be an exclusive one. See, e.g., Chemung Canal Trust Co. v. Sovran Bank/Maryland, 939 F.2d 12, 15 (1991), cert. denied, 112 S.Ct. 3014 (1992)("in the absence of some indication of legislative intent to grant additional parties standing to sue, the list in [29 U.S.C. § 1132(a)] should be viewed as exclusive"); Pressroom Unions-Printers League Income Security Fund v. Continental Assurance Co., 700 F.2d 889, 892 (2d Cir.), cert. denied, 464 U.S. 845, 104 S.Ct. 148 (1983)(concluding that pension fund which was neither participant, beneficiary nor fiduciary could not bring suit under ERISA, even if suit was purportedly on behalf of beneficiaries).

FN4. Empire's attempt to use language from the Supreme Court's decision in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948 (1989), as support for extending the scope of § 1132 is misguided. Empire argues that Firestone established that any party who has a "colorable claim" to benefits under an ERISA-covered plan falls within the scope of § 1132 for purposes of determining federal jurisdiction. However, Empire overstates the applicability of the "colorable claim" analysis. In Firestone, the Court used this language in interpreting the term "participant", finding a "participant" could mean either current employees in an ERISA-covered plan or "former employees who have a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits." 489 U.S. at 117, 109 S.Ct. at 958. Therefore, it is clear that the "colorable claim" analysis

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

only applies to *former employees* seeking benefits allegedly past due. Since Memorial is neither a current nor a former employee, the "colorable claim" analysis is inapplicable to its state law claims.

FN5. As the Court has indicated in its discussion of Memorial's standing to sue under § 1132(a), this characterization of plaintiff's claim is totally untenable. Memorial is suing in its own behalf under the provider agreement, and has made no claim to benefits under the Empire ERISA plans.

FN6. The only two cases Empire cites are clearly distinguishable. In *First Federal Sav. & Loan Ass'n of Boston v. Greenwald*, 591 F.2d 417 (1st Cir.1979), which did not involve ERISA, the defendant counterclaimed for a declaratory judgment that the state regulation the plaintiff was seeking to enforce was preempted by federal law and filed a separate civil action seeking the same declaratory relief. Because the two actions had been consolidated in the district court, the Court of Appeals found federal jurisdiction existed over the second civil action, and did not address the counterclaim. 591 F.2d at 423.
In *Wong v. Bacon*, 445 F.Supp. 1177, 1184 (N.D.Cal.1977), the court held that, despite the dismissal of plaintiff's declaratory judgment action for lack of subject matter jurisdiction, it could retain jurisdiction over a compulsory counterclaim for which an independent basis for federal jurisdiction existed. As will be discussed below, there is no independent basis for federal jurisdiction over Empire's declaratory judgment counterclaim.

FN7. The parties agree that Empire, as plan administrator for its ERISA-covered health plans, is a fiduciary within the scope of § 1132(a)(3).

FN8. In its brief, Empire states that the Supreme Court in *Franchise Tax Board* suggested that a counterclaim for a declaratory judgment could provide an independent jurisdictional basis. This is inaccurate. The Court merely restated appellees' argument, which was the same argument Empire makes here, and expressly did not comment on the merits of the argument because no counterclaim had been made. *See* 463 U.S. at 22 n. 24, 103 S.Ct. at 2853 n. 24.

S.D.N.Y.,1994.
Memorial Hosp. for Cancer and Allied Diseases v Empire Blue Cross and Blue Shield
Not Reported in F.Supp., 1994 WL 132151 (S.D.N.Y.), 18 Employee Benefits Cas. 1911

Briefs and Other Related Documents (Back to top)

• 1:93cv06682 (Docket) (Sep. 24, 1993)

END OF DOCUMENT

**EXHIBIT B**

Westlaw.

Not Reported in F.Supp.                                                                                        Page 1

Not Reported in F.Supp., 1992 WL 13425 (W.D.N.Y.), 14 Employee Benefits Cas. 2509
**(Cite as: Not Reported in F.Supp.)**

▷
Frank L. Ciminelli Const. Co., Inc. v. Buffalo Laborers Supplemental Unemployment Ben FundW.D.N.Y.,1992.
United States District Court, W.D. New York.
FRANK L. CIMINELLI CONSTRUCTION CO., INC., Plaintiff,
v.
BUFFALO LABORERS SUPPLEMENTAL UNEMPLOYMENT BENEFIT FUND, Buffalo Laborers Pension Fund, Buffalo Laborers Welfare Funds and Buffalo Laborers Training Fund, Defendants.
**No. Civ-90-1265E(F).**

Jan. 3, 1992.

Thomas S. Gill, Buffalo, N.Y., for plaintiff.
Harold J. Boreanaz, Buffalo, N.Y., for defendants.

MEMORANDUM and ORDER
ELFVIN, District Judge.
*1 The plaintiff ("Ciminelli") has brought this action against the defendants ("the Funds") seeking recoupment of overpayments mistakenly made to the Funds. Presently before this Court are Ciminelli's motion for summary judgment and the Funds's cross-motion for judgment on the pleadings or for summary judgment. The parties have stipulated that there is no triable issue of material fact.

Ciminelli is a member of the Construction Industry Employers Association, Inc. ("CIEA"), a multi-employer bargaining group. In June 1981 CIEA entered into a collective bargaining agreement with Laborers International Union of North America, Local Union No. 210 ("Local 210"), which provided *inter alia* that fringe benefits were to be paid only on the basis of hours worked and not on the basis of hours paid as had been the case under the prior agreement. In October 1984 CIEA and Local 210 entered into a successor agreement which continued this provision of the 1981 agreement. Ciminelli was bound by both of these agreements.

After the signing of the 1981 agreement, Ciminelli continued to calculate and make contributions based on hours paid rather than hours worked and therefore remitted monies to the funds in excess of the amounts required by the agreements. The overpayments, as calculated by an accountant hired by the Trustees of the Funds, are as follows:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2
Not Reported in F.Supp., 1992 WL 13425 (W.D.N.Y.), 14 Employee Benefits Cas. 2509
**(Cite as: Not Reported in F.Supp.)**

| | |
|---|---|
| Buffalo Laborers Supplemental Unemployment Benefit Fund | $4,735 |
| Buffalo Laborers Pension Fund | 15,475 |
| Buffalo Laborers Welfare Fund | 10,969 |
| Buffalo Laborers Training Fund | 1,147 |
| Total | $32,326 |

The Funds do not dispute that Ciminelli mistakenly overpaid monies into the funds but allege that, under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, (1985) Ciminelli has no cause of action to recover these funds and that this Court lacks jurisdiction to hear the case.

ERISA provides that the assets of a plan shall not inure to the benefit of any employer except in very limited circumstances. *See* 29 U.S.C. § 1103(c)(1).[FN1] One such exception to this general rule is where an employer makes a contribution to a fund by mistake of law or fact. *See* 29 U.S.C. § 1103(c)(2).[FN2] In such a case, a fund may return the mistaken contribution without violating section 1103(c)(1), but must return it to an employer in a multiemployer plan within six months after the plan administrator determines the contribution was mistakenly made. *See* 29 U.S.C. § 1103(c)(2)(A)(ii). However, section 1103(c)(2) does not require the return of mistakenly paid contributions but only allows the fund to do so without violating the anti-inurement provision of ERISA-section 1103(c)(1). Also, ERISA does not explicitly provide for any right of an employer to sue for a return of mistakenly paid contributions. In fact, employers are noticeably absent from the civil enforcement provisions of ERISA, which allow suits only by a participant, a beneficiary, a fiduciary or the Secretary of Labor. *See* 29 U.S.C. § 1132(a). In addition, there is no implied right for an employer to sue to enforce the provisions of ERISA. *See Tuvia Convalescent Center, Inc. v National Union of Hospital & Health Care Employees,* 717 F.2d 726, 729-730 (2d Cir.1983).

*2 However, the preponderance of the case law allows a federal common law action for recovery of mistakenly paid contributions. *See Provident Life & Acc. Ins. Co. v. Waller,* 906 F.2d 985, 993 (4th Cir.), *cert. denied,* --- U.S. ----, 111 S.Ct. 512 (1990) (unjust enrichment); *Plucinski v. IAM Nat. Pension Fund,* 875 F.2d 1052, 1056-1058 (3rd Cir.1989); *Kwatcher v Mass. Service Emp Pension Fund,* 879 F.2d 957, 965-967 (1st Cir.1989) (equitable restitution); *Whitworth Bros Storage Co. v Cent. States,* 794 F.2d 221, 236 (6th Cir.), *cert. denied,* 479 U.S. 1007 (1986)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp. Page 3

Not Reported in F.Supp., 1992 WL 13425 (W.D.N.Y.), 14 Employee Benefits Cas. 2509
**(Cite as: Not Reported in F.Supp.)**

(restitution); *but see Dime Coal Co Inc. v Combs,* 796 F.2d 394 (11th Cir.1986) (no federal common law right to recovery of the disputed contribution in this case). While the United States Court of Appeals for the Second Circuit has not ruled on whether an employer has such a cause of action, it has stated that courts, in appropriate circumstances, may develop a federal common law under ERISA. *See Amato v Western Union Intern., Inc.,* 773 F.2d 1402, 1419 (1985), *cert. denied.* 474 U.S. 1113 (1986).[FN3]

This Court finds the present situation appropriate for developing federal common law under ERISA and hereby states that there should be a federal common law action of equitable restitution in order for an employer to recover mistakenly paid contributions.[FN4] *See Kwatcher v Mass. Service Emp Pension Fund, supra,* at 965-967.

This does not mean, however, that Ciminelli is automatically entitled to the mistakenly paid contributions or that all of such contributions must be returned. An action for restitution of money paid under a mistake of fact or law is equitable in nature. *See Plucinski v I.A.M Nat. Fund, supra,* at 1057. As such, the return of the money paid is only required where the balance of equities favors such relief. In the context of ERISA, a court must look to the principles and purposes of ERISA for guidance in determining whether the equities favor restitution. *See Kwatcher v. Mass Service Emp. Pension Fund, supra,* at 967. One of the principal considerations under ERISA is the effect the payment of restitution would have on the financial stability of the Fund. *See Dumac Forestry v. Intern Broth. of Elec. Wkrs.,* 814 F.2d 79, 83 (2d Cir.1987). In addition, in light of the permissive wording of section 1103(c)(2)(A), when determining whether restitution should be granted, it is the employer who must establish that "the equities favor restitution in order to succeed on the merits." *Ibid.*

Because this is a motion for summary judgment, the failure of a party to establish, after adequate time for discovery, an element essential to its case and upon which it will bear the burden of proof at trial mandates the entry of summary judgment against that party. *See Celotex Corp v Catrett,* 477 U.S. 317, 322 (1986).

In the present case, there has been adequate time for discovery and Ciminelli has offered no evidence that the equities favor restitution, an element it must establish in order to be entitled to a refund of the monies mistakenly paid to the Funds.

*3 Accordingly, it is hereby ORDERED that the plaintiff's motion for summary judgment is denied, that the defendants' cross-motion for summary judgment is granted and that this action is dismissed.

FN1. 29 U.S.C. § 1103(c)(1) provides:
"(c)(1) Except as provided in paragraphs (2), (3), or (4) or subsection (d) of this section, or under section 1342 and 1344 of this title (relating to termination of insured plans), or under section 420 of Title 26 as in effect on January 1, 1991 the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan."

FN2. 29 U.S.C. § 1103(c)(2) provides:
"(A) In the case of a contribution, or a payment of withdrawal liability under part I of subtitle E [section 1381-1415] of subchapter III of this chapter-

(ii) if such contribution or payment is made by an employer to a multiemployer plan by a mistake of fact of law (other than a mistake relating to whether the plan is described in section 401(a) of Title 26 or the trust which is part of such plan is exempt from taxation under section 501(a) of Title 26), paragraph (1) shall not prohibit the return of such contribution or payment to the employer within 6 months after the plan administrator determines that the contribution was made by such a mistake."

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                   Page 4

Not Reported in F.Supp., 1992 WL 13425 (W.D.N.Y.), 14 Employee Benefits Cas. 2509
**(Cite as: Not Reported in F.Supp.)**

FN3. In *Amato,* the Court held that there is no federal common law of unjust enrichment under ERISA. The Court however limited its holding to stating that it found "no need in the circumstances of this case to supplement these specific statutory sections with the ERISA common law of unjust enrichment." *Id.,* at 1419. The case is distinguishable because the plaintiffs therein were participants in the plan and thus able to sue under the provisions of ERISA while the instant plaintiff is an employer who has no such right.

FN4. This Court, therefore, has jurisdiction pursuant to 28 U.S.C. § 1331. *See Whitworth Bros. Storage Co. v. Cent. States, supra,* at 236.

W.D.N.Y.,1992.
Frank L. Ciminelli Const. Co., Inc. v. Buffalo Laborers Supplemental Unemployment Ben. Fund
Not Reported in F.Supp., 1992 WL 13425 (W.D.N.Y.), 14 Employee Benefits Cas. 2509

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT C**

**Westlaw.**

Not Reported in F.Supp.2d                                                                                           Page 1

Not Reported in F.Supp.2d, 2006 WL 177003 (S.D.N.Y.), 37 Employee Benefits Cas. 1606
**(Cite as: Not Reported in F.Supp.2d)**

H
Briefs and Other Related Documents
Blanck v. Consolidated Edison Retirement PlanS.D.N.Y.,2006.
United States District Court,S.D. New York
Kathleen BLANCK, Plaintiff,
v.
CONSOLIDATED EDISON RETIREMENT PLAN, f/k/a the Consolidated Edison Retirement Plan for Management Employees, Defendant.
**No. 02 Civ. 7718 LTS DCF.**

Jan. 24, 2006

*MEMORANDUM OPINION AND ORDER*
SWAIN, J.
*1 Before the Court is Plaintiff's motion for reconsideration of one aspect of the Court's January 26, 2004, Opinion, and for relief pursuant to Federal Rule of Civil Procedure 60(b) from the judgment entered thereon. In its January 26, 2004, Opinion, this Court granted summary judgment in favor of Defendant Consolidated Edison Retirement Plan ("Defendant" or the "Plan") on two counterclaims for overpayment of benefits, in the aggregate amount of $8,575.29 (Opinion at 16.) Plaintiff Kathleen Blanck ("Blanck" or "Plaintiff") does not dispute that she was overpaid by the Plan in that amount between February 2001 and March 2002 due to clerical errors. (*Id* at 15-16.)

Plaintiff now argues, however, that the Court lacked subject matter jurisdiction to adjudicate the Plan's counterclaims and that the judgment in Defendant's favor on those counterclaims should be vacated and the counterclaims dismissed without prejudice. Defendant opposes Plaintiff's motion. After carefully reviewing the parties' written submissions in support of and in opposition to Plaintiff's motion, the Court grants the motion, without prejudice to application for intervention by a fiduciary of the Plan to prosecute these counterclaims against Plaintiff.

A party making a motion for reconsideration must show an intervening change of controlling law, that new evidence has become available, or that there is a need to correct a clear error or prevent manifest injustice. *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992) (citation omitted); *see also* Fed.R.Civ.P. 60(b) (West 2005), S.D.N.Y. Local Civil Rule 6.3. Here, reconsideration is warranted because Plaintiff correctly, albeit belatedly, points out that the Plan lacks standing to bring its counterclaims.

The Second Circuit applies strictly the provisions of ERISA section 502, 29 U.S.C.A. § 1132 that identify the parties authorized to bring civil actions under the statute. *See Pressroom Unions-Printers League Income Security Fund v. Continental Assurance Co.*, 700 F.2d 889 (2d Cir.1983); *see also Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 247 (2000). Thus, only the parties enumerated in the statute-the Secretary of Labor, a participant, beneficiary, or fiduciary-can bring a civil suit pursuant to its provisions, and a federal court lacks subject matter jurisdiction of such an action brought directly by a plan. *See Pressroom Unions-Printers League Income Security Fund*, 700 F.2d at 892; ERISA § 502(e)(1), 29 U.S.C.A. § 1132(e)(1) (West 2006).

The Defendant Plan's invocation of general federal question jurisdiction in support of its counterclaims is likewise ineffective to demonstrate subject matter jurisdiction. The Circuit has concluded that "the limited text of ERISA's civil remedies is inconsistent with judicial discovery of new liabilities," and, thus, that courts cannot turn to Federal common law to fill gaps in ERISA's civil remedy provisions. *Gerosa v. Savasta & Co, Inc.*, 329 F.3d 317, 322-323 and n. 6 (2d Cir 2003). Defendant's reliance upon *Frank L. Ciminelli Construction Co., Inc v. Buffalo Laborers Supplemental Unemployment Benefit Fund*, 1992 WL 13425, No. 90-1265E, at *1 (W.D.N.Y. Jan. 3, 1992), *aff'd*, 976 F.2d 834 (2d Cir.1992), in this

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d                                                                                                    Page 2

Not Reported in F.Supp.2d, 2006 WL 177003 (S.D.N.Y.), 37 Employee Benefits Cas. 1606
**(Cite as: Not Reported in F.Supp.2d)**

regard is misplaced. In that case, the court reasoned that an employer could bring a federal common law cause of action to recover payments mistakenly made to an employee benefit plan because it otherwise would not have a remedy under ERISA at all. *Frank L. Ciminelli Construction Co., Inc.*, 1992 WL 13425 at *2. Even assuming that this principle survives *Gerosa*, it is inapplicable here because ERISA's civil remedy provisions provide an avenue for the Plan's pursuit of the relief sought here, albeit through a fiduciary rather than directly in the name of the Plan.

*2 The judgment entered on February 4, 2004, will be vacated and the Plan's counterclaims will be dismissed for lack of subject matter jurisdiction. Because it appears that a Plan fiduciary would have a cause of action under 29 U.S.C. § 1132 to recover the overpayments for the Plan by way of restitution, the Court will afford a 30 day period in which a Plan fiduciary may seek to intervene in this action to pursue the counterclaims on that basis.[FN1] Such an intervention application will not prejudice Plaintiff, who has long been aware of the Plan's position and claim as to the overpayment. Furthermore, allowing such an application is consistent with the general purposes of ERISA, which include facilitating proper plan administration and protecting plan assets. In order to recover for equitable relief under section 502(a)(3) of the statute,[FN2] "[the Defendant] must demonstrate that [the Plaintiff] had wrongfully secured a benefit or had passively received one which it would be unconscionable for him to retain." *Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18, 22 (2d Cir.1996). Here, there is no dispute that Plaintiff wrongfully received additional payments from the Plan as a result of clerical errors; it would thus appear that a fiduciary would have a cause of action for restitution on the Plan's behalf. *Great-West Life & Annuity Insurance Co v. Knudson*, 534 U.S. 204 (2002), a decision cited by Plaintiff, is not to the contrary. In that case, the petitioners sought "restitution" of funds that had never been in the respondents' hands. Finding that the remedy sought was more in the nature of a legal action for personal liability for money damages than a traditional equitable restitution remedy, the Supreme Court held that it was outside the scope of section 502(a)(3). Here, the recovery sought is of monies wrongfully, and actually, paid to Plaintiff.

> FN1 Defendant's request for permission to amend its answer to assert a state law cause of action is, however, denied as futile. Such a state law claim would be based on a benefit determination made pursuant to the terms of a plan, and thus, would "relate to" an employee benefit plan so as to be preempted by ERISA. *See* ERISA § 514(a), 29 U.S.C.A. § 1144(a) (West 2006) (State law claims are preempted if they "relate to any employee benefit plan"); *Pilot Life Insurance Co v. Dedeaux*, 481 U.S. 41, 47 (1987) (interpreting the phrase "relate to any employee benefit plan" broadly for preemption purposes).

> FN2 ERISA section 502(a)(3) authorizes an employee benefit plan "participant, beneficiary or fiduciary to bring a civil action ... to obtain equitable relief (i) to redress ... violations [of the statute or the terms of the plan] or (ii) to enforce any provisions of [the statute] or the terms of the plan." 29 U.S.C.A. § 1132(a)(3) (West 2006).

Accordingly, the Court grants Plaintiff's motion for reconsideration and relief from the judgment entered on February 4, 2004. The judgment is hereby vacated and the Court's Opinion and Order are vacated to the extent they grant judgment to Defendant on its counterclaims. Defendant's counterclaims are hereby dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1), without prejudice to an intervention application by a Plan fiduciary to pursue the claims asserted therein. Any such application must be served and filed within 30 days from the date hereof.

Because the outcome of further proceedings on the counterclaims will not affect the Court's determination dismissing Plaintiff's claims in this action, the Court finds that there is no just reason for delay in re-entering judgment dismissing

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 3
Not Reported in F.Supp.2d, 2006 WL 177003 (S.D.N.Y.), 37 Employee Benefits Cas. 1606
**(Cite as: Not Reported in F.Supp.2d)**

Plaintiff's claims. The Clerk of Court is respectfully directed, pursuant to Federal Rule of Civil Procedure 54(b), to enter judgment dismissing Plaintiff's claims.

SO ORDERED.

S.D.N.Y.,2006
Blanck v. Consolidated Edison Retirement Plan
Not Reported in F.Supp.2d, 2006 WL 177003 (S.D.N.Y.), 37 Employee Benefits Cas. 1606

Briefs and Other Related Documents (Back to top)

• 1:02cv07718 (Docket) (Sep. 25, 2002)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.