UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LARRY A. KATZ and, | : | |
| KENNETH M. RAFTERY, | : | CASE NO.  3: 02CV02201(AWT) |
| Plaintiffs, | : | |
| vs. | : | |
| | : | |
| THE SEPARATION PAY PLAN OF | : | |
| TEXACO, INC. and TEXACO INC. | : | |
| | : | |
| Defendant. | : | JULY 17, 2007 |
| | : | |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S
## MOTION FOR ATTORNEYS' FEES AND COSTS

Defendants, the Separation Pay Plan of Texaco ("Plan") and Texaco Inc. (collectively, "Defendants"), hereby object to Plaintiffs Larry A. Katz and Kenneth M. Raftery's ("Plaintiffs") Motion for Attorneys' Fees and Costs.

## I.    INTRODUCTION

Plaintiffs commenced this action in December 2002 seeking severance pay enhancements in addition to the tens of thousands of dollars they received following the merger of Texaco Inc. with Chevron Corporation.  After unsuccessful extensive lobbying for a promotion in advance of the merger to be eligible for the benefits, Plaintiffs sought these enhancements under a novel theory; i.e., that they were the "equivalent" of a Texaco Grade 20 employee even though they had never held a position with a Grade of 20 or above, their claims for enhanced benefits had been denied  by the Benefits Center Change of Control Committee, their appeal to the Change of Control Committee was denied, and the Plan provided the plan administrator with the full discretion to interpret the plan's provisions, including questions of fact.

Texaco and Plaintiffs both filed Motions for Summary Judgment on June 30, 2004. The Magistrate Judge issued a Recommended Ruling denying Plaintiffs' Motion for Summary Judgment and granting Texaco's Motion.  On September 30, 2006, the District Court adopted the Recommended Ruling granting Defendants' Motion for Summary Judgment.  Plaintiffs were not eligible for the severance benefits because their position grade was lower than the threshold set out in the Plan.  This Court held that the Plan Administrator properly exercised its discretion in determining that Plaintiffs were not eligible for such benefits on the grounds that Plaintiffs were not in Position Grade 20.  <u>See</u> Recommended Ruling dated 8/31/06 at 10 (Doc. 76).

Plaintiffs have asked this court to award them over $220,000 under the terms of the Plan which provides for "reimbursement" of "reasonable" attorneys' fees and costs "incurred" by them under certain conditions.  Plaintiffs are not entitled to such an award for a number of reasons.

First, Plaintiffs' claims for $220,000 in attorneys' fees under the circumstances of this case are not supported by the terms of the Plan or applicable law which provide only for "reimbursement" of "reasonable" fees and costs "incurred."   In this case, Plaintiffs' pursuit of this matter was unreasonable and Plaintiffs' claim for attorneys' fees should be denied in its entirety since a contrary result would be inconsistent with public policy as well as the terms of the Plan.

Second, rather than merely seeking reimbursement of the approximately $30,000 in attorneys' fees and costs which Plaintiffs have actually incurred and despite the fact that Plaintiffs did not succeed on any part of their claims, Plaintiffs ask this Court to provide them with a windfall of attorneys' fees far beyond the amount necessary to reimburse them for the fees and costs they have incurred.  Plaintiffs' claims for attorney's fees and costs should be denied in its entirety or reduced to the approximately $30,000 necessary to reimburse them.

Third, even if Plaintiffs' were entitled to a windfall of attorneys' fee which they are not otherwise obligated to pay, the lodestar analysis should apply to significantly reduce Plaintiffs' fee request. A key element of the lodestar analysis is the results obtained in the case. This factor suggests that Plaintiffs should recover only nominal fees since they failed to succeed on any of their substantive claims and only pursued this otherwise meritless claim because of the potential award of attorneys' fees.

Fourth, Plaintiffs can point to no evidence to support their claim for interest of $45,316.72. First, it is inappropriate to award interest pursuant to a Connecticut state statute in a federal question case. Second, even if the Connecticut statute governed Plaintiffs' interest claim, they would not be entitled to an interest award because Defendants have not wrongfully withheld any money owed to Plaintiffs.

Finally, the Plan only provides for reimbursement of fees incurred during the administrative claims process, and does not cover fees incurred in litigation. Because ERISA § 502(g) provides for attorneys' fees incurred in litigation, the drafters of the Plan never intended to grant reimbursement of litigation fees. Such an interpretation would undermine the American Rule and induce plaintiffs to file baseless claims merely as a means to recover attorneys' fees.

## II.    DISCUSSION

### A.    Plaintiffs' Motion For Attorneys' Fees And Costs Is Not Permitted Under The Terms Of The Plan And Is Contrary To Public Policy

Plaintiffs have not asked this Court to award them their attorneys' fees and costs under ERISA or any other statutory basis. Rather, Plaintiffs' have asked this Court to award them their attorneys' fees and costs under the provisions of the Plan which provide for "reimbursement of all *reasonable* attorney's fees, costs and other expenses incurred by you." (emphasis added). For public policy reasons and under the terms of the Plan, Plaintiffs' claim for attorneys' fees is

unreasonable in light of the nature of Plaintiffs' claims and their complete lack of success.  Indeed, Plaintiffs' interpretation of the Plan would motivate Plaintiffs to pursue protracted non-meritorious litigation in the federal courts in contravention of ERISA's limited judicial review and thwart the purposes of ERISA 502(g) and Fed.R.Civ.P. 68.

In examining similar cases in which highly compensated executives seek attorneys' fees under the terms of ERISA plans, courts have strictly construed the terms of the plans and closely examined the reasonableness of the fees in light of the success and merits of such claims.  Otherwise, employees would flood the courts with meritless claims on the "off chance" the court might order them to pay.  As noted by the Seventh Circuit, in Gerow v. Rohm & Hass Co., 308 F.3d 721, 725-26 (7th Cir. 2002), "[a]n opportunity to litigate on the adversary's dime, without any need to prevail in order to collect, creates a moral hazard, which is mitigated by the requirement that the fees be incurred 'reasonably.'"  Id.  The Seventh Circuit then proceeded to deny Gerow's request for attorneys' fees because his litigation position was unreasonable.

Similarly, in Curby v. Solutia, Inc., 351 F.3d 868, 873 (8th Cir. 2003), the Plaintiff sought to recover her attorneys' fees in an ERISA matter relating to severance compensation.  Even though Curby had lost on the merits of her underlying claim, Curby asserted she was entitled to her attorneys' fees because the language at issue provided for payment of "all legal fees and expenses which the Executive may reasonably incur as a result of any contest (regardless of the outcome thereof) by … the Executive … of liability under, any provision of this Agreement."  Despite this broad language, the Eighth Circuit denied Curby's claim for fees in its entirety holding:

> Curby contends, even if we reject her ERISA claims, she is entitled to attorney fees because the 1998 agreement provided Solutia would pay her legal fees "regardless of the outcome" of any dispute between the two over the agreement. We disagree. Although the agreement promised fees regardless of the outcome of this dispute, it also limited recovery to those fees "reasonably" incurred. See App. at 114 (providing Solutia would pay "all legal fees and expenses which the Executive may reasonably

incur as a result of any contest (regardless of the outcome thereof) by the Company, the Executive or others of the validity or enforceability of, or liability under, any provision of this Agreement . . . .") (emphasis added). We conclude the reference to fees "reasonably incurred" requires both that the time spent on the claims be reasonable and that the claimant's litigation position be reasonable. See Gerow v. Rohm & Haas Co., 308 F.3d 721, 726 (7th Cir. 2002) (interpreting similar language in a golden parachute agreement). "Otherwise the employer has written a blank check that every employee would seek to cash on the off chance that a court would order the employer to pay more." Id. Since Curby's litigation position is unreasonable, she is not entitled to fees under the agreement.

Id.

In this case, as in Curby and Gerow, there can be little doubt that Plaintiffs' litigation position in this case was highly unreasonable.  Plaintiffs were highly compensated executives who received significant severance pay and then sought additional enhanced benefits under the Plan available to employees in Position Grade 20.  The Plaintiffs never held Position Grade 20 and the Plaintiffs unsuccessfully took every effort to attempt to manipulate the system to become Position Grade 20's after learning of the enhanced benefit during the merger process.  Further, before commencing this litigation, Plaintiffs were well aware that the Plan gave the Plan Administrator the maximum discretion available in interpreting and administering the Plan and that the Plan Administrator determined the Plaintiffs were ineligible for the enhancements at issue because they were not Position Grade 20 or above employees.

Indeed, it is readily apparent that the only reason Plaintiffs filed suit was to take advantage of the attorneys' fees provision of the Plan.  Consistent with public policy and the terms of the Plan, Plaintiffs' attorneys' fees and costs are unreasonable and Plaintiffs' Motion should be denied in its entirety.

### B.    The Plaintiffs' Reimbursement Is Limited to The Actual Fees and Costs They Incurred

Even if Plaintiffs' Motion For Attorneys' Fees was not unreasonable, Plaintiffs' claim for attorneys' fees and costs should be significantly reduced under the terms of the Plan. The Plan provides only for "*reimbursement* of all reasonable attorney's fees, costs and other expenses *incurred* by you." (emphasis added). As discussed below, Plaintiffs have only incurred $32,882.51 in attorneys' fees and $1,835.69 in expenses and any reimbursement is limited to these actual expenditures. See Motion for Attorneys' Fees and Costs at 2,

Plaintiffs cannot obtain reimbursement for attorneys' fees from Defendants which they have not incurred and are not ultimately obligated to pay. Pursuant to the retainer agreement dated September 23, 2003 between Plaintiffs and their counsel, "[i]n the unlikely event we lose our case so that you receive nothing and the court finds no fees are due from defendants, you shall owe nothing." See Retainer Agreement dated 9/23/03, Ex. B(2) to Motion for Attorneys' Fees. The retainer agreement also states, "payment need no longer be made on a monthly basis (except for expenses as detailed in the prior paragraph)." Id. Instead, payment is made on a contingency basis.

The Plan provides only for "reimbursement" and Plaintiffs cannot demand fees in excess of what they have actually paid. See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 180 (2d Cir. 2005). Where a defendant is obligated to reimburse a plaintiff for attorneys' fees incurred, the amount of attorneys' fees owed to counsel cannot depend on the amount the plaintiff can recover from the defendant. Id.

The court in Mid-Hudson examined an indemnity clause between the parties which provided:

> [Plaintiff] shall be indemnified and held harmless from any actions resulting from the negligence of [defendant]; from … expenses (including reasonable attorney fees, court costs, and other costs) or actions of any kind or nature arising, growing out of, or otherwise connected with any activity under this Agreement.

Id. at 178.

The plaintiff and its counsel in Mid-Hudson agreed to a retainer agreement with a contingency fee arrangement, which provided that the plaintiff and its counsel agreed to the rate of either one third of any gross settlement or judgment, or the amount of fees received from defendants, whichever was greater. Id. at 179. The plaintiff had only incurred $1,000 in fees actually owed to its counsel. Id.

The court held that the plaintiff could not demand greater expenses than the plaintiff had actually incurred. Id. at 179. The plaintiff's obligation to its attorney could not depend on what the plaintiff received from the defendants where the underlying indemnity agreement required defendant to reimburse plaintiff only after the plaintiff demonstrated a liability to its attorney. Id. at 180. The court noted, "the retainer agreement is unenforceable to the extent that it attempts to calculate plaintiff's liabilities to counsel based on what plaintiff can secure as reimbursement for those liabilities in an indemnity action." Id. The court capped awardable fees at $1,000. Id.

Similarly, in Chojnacki v. Georgia Pacific Corp., 108 F.3d 810, 818 (7th Cir. 1997), the court affirmed a holding that because the plaintiffs had a contingent fee agreement with their lawyers, they never incurred legal fees and were not entitled to recover fees allegedly generated after the agreement was signed. The court held that the plaintiffs were only entitled to recover nominal fees which they had actually paid their attorneys before signing the contingency fee agreement. Id.

Under the rationale of Mid-Hudson and Chojnacki, because Plaintiffs Katz and Raftery were not obligated to pay counsel any attorneys' fees unless they won their case, they are only entitled to reimbursement for those expenses and fees for which they actually compensated their counsel. The retainer agreement should be deemed unenforceable to the "extent that it

attempts to calculate Plaintiffs' liabilities to counsel based on what [they] can secure as reimbursement for those liabilities."  See Mid-Hudson, 418 F.3d at 180.

      According to Plaintiffs, they actually paid only $32,882.51 in attorneys' fees and $1,835.69 in expenses.  See Motion for Attorneys' Fees and Costs at 2.  Plaintiffs' fee request should therefore be limited to these amounts.

### C.      Plaintiffs' Fees and Costs Should Be Reduced Under Lodestar Principles

      The lodestar analysis should apply to determine what constitutes "reasonable attorney's fees" under the Plan.  There is a strong presumption that the lodestar represents the reasonable fee.  Burlington v. Dague, 505 U.S. 557, 562 (1992); Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994).  Furthermore, it is appropriate to apply the lodestar analysis to claims for attorney's fees arising under contract.[1]  WorldCom, Inc. v. Automated Communications, Inc., 75 F. Supp. 2d 526, 530 (S.D. Miss. 1999); see also Mid-Continent Casualty Co. v. Chevron Pip Line Co., 205 F.3d 222, 232 (5th Cir. 2000).

      By applying the lodestar analysis, Plaintiffs' claim for attorneys' fees and costs are unreasonable and should be decreased significantly.  Under the lodestar analysis, there are factors which allow the court to adjust the figure upward or downward.  Asi Sign Sys. v. Architectural Sys., No. 98 Civ. 4823, 2001 U.S. Dist. Lexis 4813, at *8 (S.D.N.Y. Apr. 16 2001).  These include: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the legal skill necessary; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the usual fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved in the litigation; (9) the experience, reputation and

---

[1] The contract at issue in WorldCom v. Automated Communications provided, "WorldCom shall be entitled to recover 'all costs and expenses, including but not limited to attorneys' fees and court costs, incurred by LDDS as a result or arising out of any breach or threatened breach under or pursuant to this Agreement.'" 75 F. Supp. 2d at 530.

ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  Id.  Courts may also assess whether a plaintiff would have agreed to incur the legal fees in the absence of a fee-shifting agreement to determine whether a fee is reasonable.  Id. at *14; see also Alderman v. Pan Am World Airways, 169 F.3d 99, 102 (2d Cir. 1999) ("[c]ourts have broad authority to refuse to enforce contingent fee arrangements that award fees that exceed a reasonable amount").

The lodestar amount can also be adjusted upward or downward based on the results obtained.  MTX Communications Corp. v. LLDS/Worldcom, Inc., No. 95 Civ. 9569, 2001 U.S. Dist. Lexis 7912, at *4 (S.D.N.Y. June 13, 2001); WorldCom, Inc. v. Automated Communications, Inc., 75 F. Supp. 2d 526, 531 (S.D. Miss. 1999).  This factor is particularly important where a party is deemed "prevailing" even though it only succeeded on some of its claims for relief.  MTX v. WorldCom, 2001 U.S. Dist. Lexis 7912, at *4.  See also Farrar v. Hobby, 506 U.S. 103, 115 (1992) ("When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, … the only reasonable fee is usually no fee at all."); Amato v. City of Saratoga Springs, 170 F.3d 311, 317 (2d Cir. 1999) ("a nominal damage award can be grounds for denying or reducing an attorney's fee award"); McCardle v. Haddad, 131 F.3d 43, 54 (2d Cir. 1997) ("the denial of attorneys' fees was not an abuse of discretion where the plaintiff recovered only nominal damages and received no other meaningful relief").

In MTX Communications Corp. v. LLDS/Worldcom, Inc., the court reduced Worldcom's fee award in proportion to its "degree of success."  2001 U.S. Dist. Lexis 7912, at *4. It awarded Worldcom only 8.078 % of its fee application because it only recovered 8.078% of the damages it sought.  Id.  In the instant case, because Plaintiffs have not succeeded on any of their

substantive claims, the lodestar figure should be reduced accordingly.  Plaintiffs should recover only nominal fees because they did not succeed on any of their substantive claims.

1.    **Many of the Hours Expended by Plaintiffs' Counsel Were not Reasonably Expended in this Matter**

a.    T**he Litigation in this Matter was Unnecessary**

**H**ours the Court deems "excessive, redundant or o**therwise unnecessary" may be excluded from the** lodestar determination.   Gierlinger v. Gleason, 160 F.3d 858, 876 (2d Cir. 1998).  Here, the litigation in Court was unnecessary.  Plaintiffs appealed their claim for enhanced benefits to the Change of Control Committee, were rejected, pursued their claims in Court, and were rejected again.  The Court accepted the Recommended Ruling dismissing Plaintiffs' claims over Plaintiffs' objections, observing "it appears that the Plaintiffs are either being disingenuous or have not read their own papers carefully."  Order re Recommended Ruling, dated Sept. 30, 2006, Docket No. 79.   Undeterred, Plaintiffs have now filed an appeal with the Second Circuit, costing all of the parties greater time and expense and wasting limited judicial resources.

b.    **Several Time Entries Should be Excluded Because They Commingle Different Activities**

Many of counsel's time entries contain several activities improperly grouped together.  For example, the time entries include:[2]

- April 14, 2003: Research regarding misapplication of comparable employee benefit claims; preparation of discovery documents (4 hours)

- November 30, 2003: Additional Westlaw research and revise and finalize our opposition to Motion for Protective Order, revise draft letter to Judge and outline remaining discovery disputes, e-mail to Scott Lucas for review (2.60 hours)

---

[2]      Because Plaintiffs' counsel filled his bills under seal, Defendants' counsel refrained from  reviewing the bills until recently, after counsel confirmed it was okay.  Should the Court determine that Plaintiffs are entitled to fees under the Plan and that those fees exceed the $32,882.51 Plaintiffs have actually incurred, Defendants request that the matter be referred to a Magistrate for a more detailed review and briefing.

- September 13, 2006: Continue review of Ruling and original pleadings, continue drafting Objections, Westlaw research re: form of objections, specificity required, etc., research whether conflict of interest "actually influenced" denial is question of fact, research inherent jurisdiction of federal court pursuant to Article III, etc., check to update case law, complete initial draft of Objections, e-mail Scott Lucas re: status of work  (6.40 hours)

- October 18, 2006: Respond to client email re: appeal; review and revise Bonnie Ford's draft of appeal documents; emails with Mary Canaday re: status; telephone conference with opposing counsel re: appeal and settlement.  (1.40 hours)

There are several similar entries, each claiming significant time, but not allocating the amount of time spent on each specific activity.  Such entries are improper and should be excluded from the Court's calculations of reasonable attorneys' fees.  "[T]he commingling of activities within one time entry impedes the court's efforts to evaluate the reasonableness of any of the listed activities."  Soler v. G & U, Inc., 801 F. Supp. 1056, 1062 (S.D.N.Y. 1992) (excluding 31.75 hours of time from entries that contained commingled activities).  Accordingly, all such entries should be excluded from the Court's calculation of Plaintiff's attorneys' fees.

### c.   Time Allocated to Research Should be Reduced Because it is Excessive

On page 4 of Plaintiffs' Motion for Attorneys' Fees, Plaintiffs' Counsel states that he "has been litigating for over 21 years and is AV-rated with a practice focused on employment and complex commercial matters."  Motion for Attorneys' Fees at 4.  Notwithstanding this experience, Plaintiffs' counsel billed extensive time to basic ERISA issues, Rule 11, attorneys' fees, appellate procedure, and more.  This seems unreasonable given the complexity of the issues researched.  See Asi Sign Sys., 2001 U.S. Dist. Lexis 4813, at *8; Small v. Richard Wolf Medical Instruments Corp., 264 F.3d 702, 708 (7th Cir. 2001) (affirming reduction of hours experienced attorney billed on relatively straightforward matter).

For example, the time entries include the following:

- March 17, 2003: Research regarding cause of action against employer, plan administrator and trustee in ERISA suit; review caselaw regarding discretion of plan administrator; research regarding claims pursuant to change in control benefits claims (2.90 hours) (*portions omitted*)

- March 20, 2003: Research regarding dissimilar enhanced control benefits applied to similarly situated employees; research regarding duty of employer re enhanced benefits; research regarding duties of administrator regarding enhanced benefits. (6.00 hours)

- May 26, 2004: … additional Westlaw research re: frivolousness… (7.30 hours) (*portions omitted*)

- August 12, 2004: Westlaw research, . . . research issue of Rule 11 sanctions and attorney's fees (3.40 hours) (*portions omitted*)

- August 18, 2004: Additional Westlaw research re: "frivolous" and Rule 11  (2.10 hours) (*portions omitted*)

- October 20, 2006: Westlaw research re: FRAP 4(a) and FRCP 54(b), review annotations, etc. (1.20 hours) (*portions omitted*)

- October 22, 2006: Continued Westlaw research re: FRCP 54(b), research strategies on whether to appeal summary judgment decision, method for receiving final judgment, etc. (2.30 hours) (*portions omitted*)

- November 5, 2006: Westlaw research re: Fed. Rule Civ. Proc. 54(b) and time limits, research 28 U.S.C. 1292, research relationship between the two rules, method for appealing interlocutory ruling of the district court (2.10 hours) (*portions omitted*)

These entries appear excessive and redundant.  As such, they should be ignored or reduced to a more reasonable figure.

**D.    Plaintiffs Have No Basis for Their Interest Claim**

Plaintiffs have provided no support for their claim for prejudgment interest of $45,316.72.  <u>See</u> Motion for Attorneys' Fees at 3, 6.  It is inappropriate to rely on a Connecticut state statute to recover interest in a federal case.  Even if the state statute were applied, Plaintiffs are not entitled to recover their claim for $45,316.72.

### 1.    Plaintiffs Cannot Recover State Statutory Fees in a Federal Action

Conn. Gen. Stat. § 37-3a(a) should not be applied to recover interest in a federal question case.  Although there is no federal statute that controls the rate of prejudgment interest, courts considering awards of interest in federal question cases look to the federal postjudgment interest statute, 28 U.S.C. § 1961, to determine the amount of interest due.[3]  See Id.; Atl. Mut. Ins. Co. v. Napa Transp., Inc., 399 F. Supp. 2d 523, 525, 527 (S.D.N.Y. 2005) ("Unlike in cases before this Court solely on the basis of diversity jurisdiction,. . . the present action is before the Court on a federal question and therefore federal law governs the issues of appropriateness, timing, and rate of prejudgment interest"); Security Ins. Co. v. Old Dominion Freight Line, 314 F. Supp. 2d 201, 204 (E.D.N.Y. 2003) (applying the federal postjudgment interest rate); Russo v. Abington Memorial Hosp. Healthcare Plan, 257 F. Supp. 2d 784, 787 (E.D. Pa. 2003) (applying the federal post-judgment interest rate to a claim arising under ERISA).  Plaintiffs' reliance on Conn. Gen. Stat. § 37-3a(a) is therefore inappropriate.

Furthermore, in a suit to enforce a right under ERISA, the question of whether or not to award prejudgment interest is left to the discretion of the district court.  Jones v. UNUM Life Ins. Co. of Am., 223 F.3d 130, 139 (2d Cir. 2000).  In exercising such discretion, the court is to take into consideration "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court."  Id. Here, Plaintiffs have not succeeded on any of their substantive claims and have not suffered any "actual damages."  Plaintiffs continue to pursue their claims, despite multiple determinations that

---

[3]    Pursuant to 28 U.S.C. § 1961, interest should be calculated "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System."  For the week ending July 6, 2007, this rate was 4.70%.  See Federal Reserve Statistical Release website, at http://www.federalreserve.gov/releases/h15/.

the claims lack merit, all in an attempt to increase their claim for attorneys' fees.  As such, the Court should exercise its discretion and deny Plaintiffs' request for prejudgment interest.

### 2.    Plaintiffs Claim for Interest Fails Under Conn. Gen. Stat. § 37-3a(a)

Plaintiffs cannot support their claim for interest even if the Connecticut interest statute were to apply.  Pursuant to Conn. Gen. Stat. § 37-3a(a), "[I]nterest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions … as damages for the detention of money after it becomes payable."  The court has discretion to award prejudgment interest "if equitable considerations deem that such interest is warranted."  Smithfield Assocs, LLC, v. Tolland Bank, 860 A.2d 738, 748 (Conn. App. Ct. 2004).

A trial court must make two determinations when awarding compensatory interest under § 37-3a: 1) whether the party against whom interest is sought has wrongfully detained money due the other party; and 2) the date upon which the wrongful detention began in order to determine the time from which interest should be calculated.  Id.  A plaintiff's burden of demonstrating that the retention of money is wrongful requires more than demonstrating that the opposing party detained money when it should not have done so.  Id.

### a.    Defendants have not "Wrongfully Detained" Money Owed to Plaintiffs

Plaintiffs point to no evidence suggesting that Defendants have "wrongfully detained" money due to Plaintiffs.  See Motion for Attorneys' Fees.  First, there is no provision in the Plan which provided for immediate or concurrent reimbursement of attorneys' fees.  Second, the Court has only recently ruled on Defendants' Motion for Summary Judgment regarding the frivolous nature of Plaintiffs claims.  Because the matter has not yet been completely resolved, Defendants have not wrongfully detained any money that is arguably due to Plaintiffs.

**b.     Interest is Calculated from the Date When the Wrongful Detention Began**

Interest is calculated from the date when wrongful detention began.  <u>Smithfield Assocs, LLC, v. Tolland Bank</u>, 860 A.2d at 748.  Because the retainer agreement has not required payment and because the Court has not yet determined the amount of attorneys' fees owed, if any, the matter has not been completely resolved and there has been no period of time when fees were wrongfully detained.

Furthermore, Plaintiffs are not obligated to pay any attorneys' fees until the Court has awarded them.  <u>See</u> Plaintiffs' Motion for Attorneys' Fees at 2 ("The undersigned agreed to represent plaintiffs on an accrual basis under which the undersigned agreed plaintiffs' fees would be due and payable at the time of the award of this Court for fees incurred").  Because the court has not yet awarded attorneys' fees, Plaintiffs are not yet obligated to pay attorneys' fees and there has been no period of time when fees were wrongfully detained.  Plaintiffs' interest claim should therefore be denied.

**c.     Plaintiffs Overestimate the Amount of Interest Due**

It is not clear how Plaintiffs determined that they are owed $45,316.72 in interest.  <u>See</u> Motion for Attorneys' Fees at 3.  In the invoice dated March 6, 2007, Plaintiffs' counsel included a claim for statutory interest of $65,964.88, which represented 10% interest compounded annually from 2002 as incurred.  <u>See</u> Ex. F. to Motion for Attorneys' Fees.  Plaintiffs have set forth no basis for compounding interest, nor have they accounted for the nearly $20,000 difference in interest claimed on the March 6 invoice and their current Motion.

### 3.    The Lodestar Amount Accounts for Interest

Where current billing rates are used to calculate the lodestar amount, it is inappropriate to add pre-judgment interest to an award of attorneys' fees.  In re Union Carbide Corp, 724 F. Supp. 160, 163 (S.D.N.Y. 1989) ("Courts in this District have approved the use of current billing rates in calculating the lodestar amount, in order to compensate for the delay in receiving compensation, inflationary losses, and the *loss of interest*." (emphasis added)).  Any interest due Plaintiffs would be accounted for by using the lodestar calculation discussed above.

### E.    The Plan's Fee Provision Does not Apply to Fees Incurred in Litigation

The Plan's fee provision only applies to fees billed as part of the administrative process.  It does not entitle plan participants to recover attorneys' fees incurred in litigation.  Such a provision is unnecessary because attorneys' fees incurred in litigation are recoverable under ERISA § 502(g), 29 U.S.C. § 1132(g).  Indeed, it is apparent that the Plan sought only to cover the gap under ERISA related to the fees incurred in exhausting administrative remedies because attorneys' fees incurred as part of the administrative claims process are not otherwise recoverable under ERISA § 502(g).  See Peterson v. Cont'l Casualty Co., 282 F.3d 112, 119-20 (2d Cir. 2002); Rego v. Westvaco Corp., 319 F.3d 140, 150 (4th Cir. 2003) ("[W]e agree with our sister circuits that have held ERISA attorney's fees to be categorically unavailable for expenses incurred while exhausting administrative remedies."); Cann v. Carpenters' Pension Trust Fund for N. Cal., 989 F.2d 313, 316 (9th Cir. 1993).

Because ERISA specifically provides recovery for attorneys' fees incurred in litigation, there was no need for the Plan to provide these fees.  Such an interpretation would eviscerate ERISA § 502(g).  There is no basis to interpret the Plan in this manner, and Plaintiffs'

request for reimbursement of attorneys' fees incurred in this litigation is not a benefit provided by the Plan. Plaintiff's motion should therefore be denied.

Furthermore, fee-shifting contract provisions that alter the established rule that parties are responsible for bearing their own costs of litigation, the "American Rule," must be strictly interpreted. United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co., 369 F.3d 34, 74-75 (2d Cir. 2004) ("while parties may agree that attorneys' fees should be included as another form of damages, such contracts must be strictly construed to avoid inferring duties that the parties did not intend to create."); Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 199 (2d Cir. 2003) ("Promises by one party to indemnify the other for attorneys' fees run against the grain of the accepted policy that parties are responsible for their own attorneys' fees . . . the court should not infer a party's intention to provide counsel fees as damages for a breach of contract 'unless the intention to do so is unmistakably clear' from the language of the contract." (citations omitted)).

To interpret the Plan to provide fees incurred as part of this litigation would motivate individuals to file improper claims and maintain those claims even after it is established that they had no merit. In the instant case, although Defendants' Motion for Summary Judgment was granted, Plaintiffs have continued to pursue their claims on appeal, all in an attempt to generate more fees. The Plan should not be interpreted in a manner that creates an incentive for plaintiffs to file suit no matter how weak their claims may be. Such an interpretation violates the public policy underlying the American Rule.

## III.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion for Attorneys' Fees.

Respectfully submitted,

JACKSON LEWIS LLP

By: _____/s/_____
Conrad S. Kee (CT 16904)
Tal A. Kadar (CT 26723)
177 Broad Street
P.O. Box 251
Stamford, Connecticut 06904-0251
Tel: (203) 961-0404
Fax: (203) 324-4704
E-mail: Keec@jacksonlewis.com

ATTORNEYS FOR DEFENDANTS
THE SEPARATION PAY PLAN OF TEXACO INC.
AND TEXACO INC.

## CERTIFICATION

I hereby certify that on this date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing as indicated below.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

_____/s/_____
Conrad S. Kee

**EXHIBIT A**

**COPIES OF UNREPORTED CASES**

1036QH

LEXSEE 2001 U.S. DIST. LEXIS 4813

**ASI SIGN SYSTEMS, INC., Plaintiff, -against- ARCHITECTURAL SYSTEMS, INC., Defendant.**

**98 Civ. 4823 (SAS)(KNF)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2001 U.S. Dist. LEXIS 4813*

**April 16, 2001, Decided**

**COUNSEL:** [*1] For ASI SIGN SYSTEMS, INC., plaintiff: Christopher Connolly, Goshen, NY.

For ARCHITECTURAL SYSTEMS, INC., defendant: Richard W. Farrell, Raleigh, NC.

For ARCHITECTURAL SYSTEMS, INC., counter-claimant: Richard W. Farrell, Raleigh, NC.

For ASI SIGN SYSTEMS, INC., counter-defendant: Christopher Connolly, Goshen, NY.

**JUDGES:** KEVIN NATHANIEL FOX, UNITED STATES MAGISTRATE JUDGE. HONORABLE SHIRA A. SCHEINDLIN, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** KEVIN NATHANIEL FOX

**OPINION**

**REPORT AND RECOMMENDATION**

KEVIN NATHANIEL FOX

UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE SHIRA A. SCHEINDLIN, UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

On August 31, 1999, a judgment was entered against Architectural Systems, Inc. ("defendant" or "Architectural") following a non-jury trial in this court. On March 21, 2000, the Court of Appeals for the Second Circuit affirmed the district court's judgment. Thereafter, your Honor referred the matter to me to conduct an inquest and to report and recommend the amount of attorneys' fees and costs, if any, to be awarded to ASI Sign Systems, Inc. ("plaintiff" or "ASI").

For the reasons set forth below, I recommend that plaintiff be awarded [*2] $ 60,238.47.

**II. BACKGROUND AND FACTS**

ASI is a national franchiser involved in the manufacture, sale and installation of architectural sign products. *See ASI Sign Systems, Inc. v. Architectural Systems, Inc., 1999 U.S. Dist. LEXIS 11531*, No. 98 Civ. 4823, 1999 WL 553825 at *2 (S.D.N.Y. July

29, 1999). ASI entered into two franchise agreements with Architectural on December 31, 1990, granting Architectural exclusive rights in the states of Alabama and Georgia to manufacture, sell and install ASI products. *See id*. In 1991, Architectural sought permission from ASI for Terry Viktus, one of Architectural's sales representatives, to operate an office in Knoxville, Tennessee. *See id*. at *2-3. While the parties failed to agree on the sale of a Tennessee franchise to Architectural, ASI permitted Architectural to maintain the Knoxville office. *See id*. at *3.

In 1994, a dispute arose between the parties concerning, *inter alia*, Architectural's alleged failure to make payments of royalties with respect to the Alabama and Georgia territories. *See id*. In May 1995, the parties resolved the lawsuit arising out of that dispute, through a settlement agreement and a general release. [*3] *See id*. at *4. The release states, in pertinent part, that ASI releases Architectural from "all actions, causes of action, [etc.] ... which [ASI] ever had prior to the date of this RELEASE with respect to, and limited to, claims or potential claims arising under" the franchise agreements between the parties.

In 1997, ASI wrote a letter to Architectural demanding that it close the Knoxville office. *See id*. Architectural refused. Although the parties were engaged in negotiations for Architectural to purchase a Tennessee franchise as late as June 1997, no agreement was reached. *See id*. at *5. In May 1998, ASI entered into an agreement with its affiliate, Nashville Sign Systems, Inc., granting it exclusive franchise rights in Tennessee. *See id*. ASI then initiated this lawsuit in July 1998, seeking to enjoin Architectural from operating the Knoxville office and to recover attorneys' fees pursuant to the parties' franchise agreement. The trial court granted a permanent injunction by its Opinion and Order dated July 29, 1999, holding, *inter alia*, that the dispute with respect to the Knoxville office did not

arise until 1997, almost two years after the release was granted, [*4] and that the parties did not intend the release to cover the Knoxville office. *See id*. at *5-6.

Pursuant to the franchise agreement between the parties, the trial court awarded ASI attorneys' fees incurred to the end of the trial.

Section 7.5 of the franchise agreement states the following:

> *Costs, Attorneys Fees on Breach.* If any claim is asserted, or cause of action brought by Franchiser or Franchisee under this Agreement, arising out of, or in connection with, any breach or nonperformance of the provisions specifically contained in this Agreement, then the party which is successful upon any final determination of any such claim or cause of action shall be entitled to reasonable preparation, investigation and court costs and attorneys' fees as fixed by a court of competent jurisdiction.

The trial court held that the rates charged by ASI's attorneys were reasonable and within the market rate for attorneys of the caliber necessary to represent ASI. However, the court also found that a twenty percent reduction in hours was warranted. Accordingly, ASI was awarded $ 105,277.42 in attorneys' fees. *See* Exh. 1 to Affidavit of Karen Young ("Young Affidavit"), at 21.

[*5] In August 1999, Architectural moved the trial court for a stay of the permanent injunction pending its appeal. In addition, ASI requested that the court revise the attorneys' fee portion of the award to include work performed by ASI's local counsel, Thelen Reid & Priest ("TRP"), in the amount of $ 51,592.00. ASI's

combined attorneys' fee requests, without any reductions, then totaled $ 183,188.77. The court denied Architectural's motion. *See* Exh. 2 to Young Affidavit. The court also found that ASI's combined request for attorneys' fees was excessive and should be reduced by forty percent to a total of $ 109,913.26. Jenkens & Gilchrist ("J&G"), ASI's trial counsel, was thus awarded $ 78,958.06 and TRP was awarded $ 30,955.20.

In September 1999, Architectural moved for a stay of the permanent injunction pending appeal before the Second Circuit Court of Appeals. The Second Circuit denied Architectural's motion. *See* Exh. 3 to Young Affidavit.

Architectural did not post a bond for its appeal and did not pay the monetary portion of the judgment. In order to recover on the judgment, in October 1999, ASI was required to hire Georgia counsel.

Architectural perfected and argued its [*6] appeal before the Second Circuit. ASI filed an opposition brief and argued the appeal. In March 2000, eight days after oral argument, the Second Circuit affirmed the trial court's holding. *See* Exh. 4 to Young Affidavit.

Once the appeal had been concluded, ASI wrote two letters to Architectural seeking payment for attorneys' fees and costs it incurred after July 1999 for all appeal and judgment enforcement-related activities. Exh. 5 to Young Affidavit. After the second letter, Architectural's counsel responded by requesting billing records for the attorneys' fees and costs that were sought. *See* Exh. 6 to Young Affidavit. ASI provided Architectural with the requested records and gave Architectural until May 31, 2000, to make the requisite payment. *See* Exh. 7 to Young Affidavit. Architectural failed to make any payment by the May deadline. On June 7, 2000, ASI advised Architectural that if it failed to satisfy its obligation by June 9, 2000, ASI would ask the

court to intervene. *See* Exh. 8 to Young Affidavit. When that letter failed to yield a response from Architectural, the instant motion followed.

## III. CONCLUSIONS OF LAW

The order of the trial court dated August 13, 1999, set [*7] forth the applicable legal standard respecting the award of reasonable attorney's fees:

New York law requires that "when a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable." *F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1263 (2d Cir. 1987)*. A reasonable fee is "the arrangement the plaintiff would have been expected to make with counsel in the absence of a fee-shifting agreement," *id. at 1263*, and can be determined by using a "lodestar" approach of multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Id.*

While there is a "strong presumption that the lodestar figure represents a reasonable fee," *G.M. ex rel R.F. v. New Britain Bd. of Educ., 173 F.3d 77, 84 (2d Cir. 1999)*, there are other factors which allow the district court to adjust the figure upward or downward. *See Orchano v. Advanced Recovery, Inc., 107 F.3d 94, 96-97 (2d Cir. 1997)*. [*8] These factors include: (1) the time

and labor required; (2) the novelty and difficulty of the question; (3) the legal skill necessary; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the usual fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved in the litigation and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See id.* (citing *Hensley v. Eckerhart, 461 U.S. 424, 430 n.3, 76 L. Ed. 2d 40, 103 S. Ct. 1933* [1983]). Additionally, "the district court should exclude excessive, redundant or otherwise unnecessary hours." *Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999).*

Order dated August 13, 1999, Exh. 2 to Young Affidavit, pp. 4-5.

ASI seeks $ 93,028.49 in attorneys' fees and costs for all appeal and judgment enforcement-related activities it has undertaken since July 1999. ASI claims that this figure reflects the [*9] work performed by its counsel in: (1) investigating ASI's options in light of the appeal and in defending against Architectural's motion for a stay pending appeal in both the trial court and the Second Circuit Court of Appeals; (2) enforcing the injunctive portion of the judgment; (3) enforcing the monetary portions of the judgment; (4) preparing its response to the appeal (preargument conference, assembling joint appendix,

preparing brief, oral argument, costs of brief, joint appendix and transcript).

Architectural does not dispute the costs awarded to ASI by the Court of Appeals on April 4, 2000, pursuant to *Rule 39(c) of the Federal Rules of Appellate Procedure*, in the amount of $ 902.27. Defendant, however, opposes the imposition of any other costs upon it, because it contends that ASI has failed to establish the reasonableness of its request for attorneys' fees. Defendant contrasts the purported fees and costs requested by ASI ($ 93,025.85) to that which was billed by its counsel for the same proceedings ($ 44,993.84).

For its part, ASI argues that its request for fees and costs is reasonable because its counsel performed more work than Architectural's counsel. In addition to [*10] opposing defendant's two motions for a stay and crafting an appellate brief, ASI undertook efforts to enforce the injunction granted to it by the trial court and to recover its awarded fees and costs. Furthermore, ASI argues that it was forced to incur its post-trial costs by Architectural's actions, which include its efforts to stay enforcement of the judgment pending appeal, its determination to pursue its appeal, and its continued use of its Knoxville telephone number despite the injunction issued by the trial court that barred its use.

In order to determine the reasonableness of the amounts requested by ASI, the Court must analyze the points of contention that exist with respect to the fees and costs generated by each post-trial proceeding.

A. *Fees Associated with TRP and J&G*

TRP appeared as ASI's counsel during proceedings before the Second Circuit Court of Appeals and during proceedings regarding Architectural's two motions for a stay of the permanent injunction. In addition, TRP participated in ASI's efforts to enforce the

injunction against defendant and to recover the fees and costs awarded to ASI.

Analysis of the billing records submitted in connection with this [*11] motion shows that TRP expended 284.1 hours representing ASI in the above-mentioned activities. The fees TRP generated totaled $ 76,480.00.

Although these figures are much greater than those of Architectural's counsel (194.3 hours, totaling $ 44,993.84), ASI contends that its counsel was required to perform more services than Architectural's counsel. In helping to enforce the injunction, TRP conducted legal research, consulted with Tennessee counsel, and drafted letters to Architectural's counsel. ASI claims that TRP's fees for services concerning the injunction totaled $ 1,000. *See* Plaintiff's Reply in Further Support of Fees and Costs ("Plaintiff's Reply") at 3. In helping to recover fees and costs, TRP conducted legal research and communicated with state court personnel. According to ASI, fees for these services totaled $ 2,000. *See id.*

"Under New York law, a general contract provision for the shifting of attorneys' fees does not authorize an award of fees for time spent in seeking the fees themselves." *United States v. Suffolk Construction Company, 2000 U.S. Dist. LEXIS 6, *10, No. 96 Civ. 2413, 2000 WL 10412 at *3 (S.D.N.Y. Jan. 3, 2000) (quoting F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1266 [*12] [2d Cir. 1987]).* It is possible to contract for such an allowance; however, the contracting parties must place specific language into their agreement which makes clear that they intend such a result, since such a contractual provision is contrary to the typical situation. *See United States v. Suffolk Construction Company, supra*, at *3. The fee-shifting provision in the ASI/Architectural franchise agreement does not contain specific language indicating that the prevailing party would be entitled to recover fees incurred in seeking to recover attorneys' fees. Therefore, ASI is not entitled to recover from Architectural $ 2,000 in fees attributable to ASI's efforts to enforce that portion of the judgment that awarded fees.

With respect to the $ 1,000 ASI seeks to recover for fees paid to TRP for services it performed in enforcing the injunction, ASI relies on the billing records of TRP. However, these records do not differentiate adequately between the time spent on the appeal/opposition to Architecturals' motions for stay of the injunction, and time spent on enforcing the injunction. Although the billing records provide brief descriptions of the professional services [*13] rendered, many of these entries group several different tasks together without indicating the time spent on each task. These records do not shed light on how many hours TRP spent in enforcing the injunction. Nor has ASI submitted any other evidence, such as affidavits, in support of the number of hours TRP expended on this matter. Therefore, ASI has failed to produce adequate evidence demonstrating the reasonableness of the $ 1,000 it seeks to recover for TRP's services with respect to the enforcement of the injunction.

The vast majority of the fees for TRP's services ($ 73,480), pertain to the work TRP performed in connection with the appellate proceedings and in assisting ASI in opposing defendant's motions for a stay of the injunction. According to its billing records, TRP expended 284.1 hours performing this work. In addition, ASI obtained the services of J&G to assist in these matters. According to billing records of J&G, submitted by ASI, J&G provided 45.1 hours of legal representation for post-trial matters.

While the fact that ASI's litigation efforts were successful weighs in its favor, consideration of several of the *Hensley* factors suggests that a reduction in attorneys' [*14] fees is appropriate. ASI has expended over $ 73,000 in fees to TRP and $ 11,286 in fees to J&G to oppose Architectural's post-trial

motions. Defendant's counsel spent just under $ 45,000 and expended 194.2 hours for representation nearly identical in skill, reputation and hourly fees. Moreover, as the trial court has noted, "This case involved a straightforward matter of a breach of [a] franchise agreement and did not pose a particularly novel or difficult question of law, nor did it require heightened skill to represent the parties." Exh. 2 to Young Affidavit at 7.

Although the responsibilities of appellate counsel to the respective parties were not identical, their differing responsibilities to their clients do not justify the amount of legal resources that ASI permitted to be devoted to representing its position on appeal and to opposing defendant's two motions to stay the injunction. Counsel to ASI expended seventy percent more time and incurred eighty-eight percent more in fees than counsel to Architectural on these matters. It is unlikely that in the absence of a fee-shifting contractual provision, ASI would have authorized such expenditures of resources.

Accordingly, the [*15] Court finds that a thirty percent reduction in fees with respect to the legal work performed by counsel to ASI during the appellate proceeding and in opposition to Architectural's post-trial motions is warranted. The amount of fees generated by TRP should be reduced to $ 51,436, and the amount of fees generated by J&G should be reduced to $ 7,900.20.

ASI claims that in addition to performing services related to the post-trial proceedings, J&G also assisted in efforts to enforce the injunction. Although ASI has submitted the billing records of J&G, these records do not explain adequately the amount of time J&G spent on enforcing the injunction. The billing records provide brief descriptions of the professional services rendered and the number of hours expended. However, many of these entries are either ambiguous or lump several tasks together without indicating the time spent on individual tasks. They do not provide a reasonable basis upon which the Court can determine the number of hours J&G spent in enforcing the injunction; nor has ASI submitted any other evidence, such as affidavits, in support of the number of hours J&G expended on this matter. Therefore, the Court finds that [*16] ASI has not established the reasonableness of the fees it claims J&G generated in seeking to enforce the injunction. As a consequence, ASI is not entitled to recover more than $ 7,900.20 for the fees generated by J&G's work on its behalf.

B. *Fees Associated with Baker, Donelson, Bearman & Caldwell ("BDBC")*

ASI seeks reimbursement in the amount of $ 597.22 for the fees generated by BDBC, ASI's local counsel in Knoxville, Tennessee. BDBC conducted research and provided advice to ASI regarding the enforcement of the injunctive portion of the trial court's judgment. ASI claims that defendant ignored the injunction and continued to use its local telephone number and to solicit business in Knoxville, Tennessee, in contravention of the trial court's directive. ASI maintains that it had reason to believe that Architectural was violating the court's order to cease operating its Knoxville office and, therefore, needed local counsel to determine what enforcement options, if any, were available to it in the Tennessee judicial system.

Defendant contends that ASI failed to submit itemized bills identifying the services provided by BDBC. Furthermore, Architectural maintains that the services [*17] rendered by BDBC were not necessary. Moreover, Architectural denies that it violated the trial court's injunction. *See* Defendant's Reply Memorandum at 6.

Counsel to a party seeking an award of attorneys' fees is obligated to keep and to present records from which a court may determine the nature of the work performed,

the need for it, and the amount of time reasonably required to perform that work. *See F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1265 (2d Cir. 1987)*. Where adequate contemporaneous records have not been kept, a court should not award the full amount of attorneys' fees requested. *See id.*

ASI has submitted to the Court a statement from BDBC listing outstanding invoices, dates of the invoices and the amounts billed. *See* Exh. 9 to Young Affidavit. ASI has also provided the Court with a billing record from BDBC dated December 15, 1999. *See* Exh. 2 to Plaintiff's Reply. The statement listing the invoices fails to provide any information concerning the nature of the work BDBC performed for ASI or the amount of time it spent performing the work for ASI. The Court finds that this statement does not permit a determination to be [*18] made by the Court respecting the reasonableness of BDBC's fee. In addition, the subject billing record describes the services rendered to ASI by BDBC and its total fee, but does not mention the number of hours spent by BDBC on this matter or the hourly rate it charged ASI for its services. The Court finds that these records are not adequate and contemporaneous time records that justify an award of attorneys' fees to ASI with respect to the services performed by BDBC.

ASI has proffered no evidence from which the Court can ascertain the number of hours BDBC expended in this matter or the reasonableness of its fees. Moreover, ASI has not presented any evidence of the actual legal proceedings to enforce the injunction in Tennessee that were pursued. According to the documents submitted to the Court, ASI's efforts to enforce the injunction were limited to a series of letters from TRP to defendant's counsel requesting that Architectural cease use of a Knoxville telephone number.

Accordingly, the Court finds that ASI should not be granted an award of the fees it incurred through the work performed by BDBC.

C. *Fees Associated with Smith, Gambrell and Russell ("SGR")*

ASI also seeks [*19] to recover fees it paid to SGR for services rendered to recover the attorneys' fees and costs awarded by the trial court in connection with proceedings before it. SGR's fees were $ 6,284.86.

As explained, *supra*, under New York law, a fee-shifting provision in a contract generally does not authorize an award of attorneys' fees for time spent attempting to recover the fees. *See United States v. Suffolk Construction Co., 2000 U.S. Dist. LEXIS 6, 2000 WL 10412* at *3. Since the fee-shifting provision in the case at bar does not contain specific language indicating that the prevailing party would be entitled to recover fees incurred to recover attorneys' fees, ASI is not entitled to obtain the fees generated through the work performed by SGR.

**IV. RECOMMENDATION**

For the reasons set forth above, I recommend an award to ASI of $ 60,238.47, which reflects the following attorneys' fees and costs:

| | |
|---|---:|
| TRP: | $ 51,436.00 |
| J&G: | $ 7,900.20 |
| Costs: | $ 902.27 |

## V. FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to *28 U.S.C. § 636(b)(1)* and *Rule 72(b) of the Federal Rules of Civil Procedure*, the parties shall have ten (10) days from service [*20] of this Report to file written objections. *See also Fed. R. Civ. P. 6*. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Shira A. Scheindlin, United States District Judge, 500 Pearl Street, Room 1050, New York, New York 10007, and to the chambers of the undersigned, 40 Foley Square, Room 540, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Scheindlin. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn, 474 U.S. 140, 88 L. Ed. 2d 435, 106 S. Ct. 466 (1985)*; *IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993)*; *Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992)*; *Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988)*; *McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983)*.

Dated: New York, New York

April 16, 2001

Respectfully submitted,

KEVIN NATHANIEL FOX

UNITED STATES MAGISTRATE JUDGE

LEXSEE 2001 U.S. DIST. LEXIS 7912

**MTX COMMUNICATIONS CORPORATION, Plaintiff, v.
LDDS/WORLDCOM, INC., Defendant.**

**95 Civ. 9569 (RO)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF NEW YORK**

*2001 U.S. Dist. LEXIS 7912*

**June 13, 2001, Decided
June 15, 2001, Filed**

**DISPOSITION:**    [*1]  Defendant's fee application granted in amount of $ 40,724.40 and plaintiff's fee application denied.

**COUNSEL:** For MTX COMMUNICATIONS CORPORATION, plaintiff: Richard A. Roth, Littman & Krooks, New York, NY.

For MTX COMMUNICATIONS CORPORATION, plaintiff: Scott N. Gelfand, Meister Seelig & Fein LLP, New York, NY.

For LDDS/WORLDCOM, INC., defendant: Richard I. Wolff, Law Office of Richard I. Wolff, New York, NY.

For LDDS/WORLDCOM, INC., counter-claimant: Richard I. Wolff, Law Office of Richard I. Wolff, New York, NY.

For MTX COMMUNICATIONS CORPORATION, counter-defendant: Richard A. Roth, Littman & Krooks, New York, NY.

For MTX COMMUNICATIONS CORPORATION, counter-defendant: Scott N. Gelfand, Meister Seelig & Fein LLP, New York, NY.

**JUDGES:** Richard Owen, United States District Judge.

**OPINION BY:** Richard Owen

**OPINION**

*MEMORANDUM & ORDER*

   *OWEN, District Judge*:

   Before me are the cross-applications of Plaintiff MTX and Defendant WorldCom for attorneys' fees and costs, with both sides claiming to be the "prevailing party" after a three-week jury trial over which I presided in January and February 2001. The jury rejected any recompense for MTX's Communications Act and defamation claims and awarded WorldCom $ 83,500 of the $ 1,033,732 it had sought on its breach of contract counterclaim. The instant claims for attorneys' fees are not statutory, rather they arise from the Rebiller Service Agreement ("RSA"), Section 13.10, which states, "In any action arising out of or relating to this Agreement, the prevailing party will be entitled to recover its reasonable attorneys' fees and other costs in addition to any other relief that may be awarded." The term "prevailing party" is not defined by the contract. The RSA governed the relationship between MTX, a switchless reseller of communications services to end user customers, and [*2]  WorldCom, a supplier of long distance telephone and other communications services around the country. The issues for me to resolve are who, if anyone, is the prevailing party and an appropriate award of attorney's fees.

Although the general "American Rule" requires each party to bear its own attorneys' fees, parties may contract to permit recovery of fees and a federal court will enforce such an agreement. *See McGuire v. Miller, 1 F.3d 1306, 1312-1313 (2d Cir. 1993)*. Although such awards are normally within this Court's discretion, "Where a contract authorizes an award of attorneys' fees, such an award becomes the rule rather than the exception." *Id.*

The cases defining the term "prevailing party" generally arise in the context of federal statutes, such as the Civil Rights Attorney's Fees Awards Act of 1976. I agree, however, with my colleague Judge Duffy's reasoning in an unpublished disposition, *Kuk Je Medical Corp. v. Home Diagnostics, Inc., 1994 U.S. Dist. LEXIS 11903, 1994 WL 465844, at *3 (S.D.N.Y. Aug. 26, 1994)*, and believe that the standards governing who is a "prevailing party" in the statutory context should not significantly differ in a contract case.

The most [*3] common understanding of the term "prevailing party," and the definition most applicable to the record in this case, is taken from Black's Law Dictionary and recently stated by Chief Justice Rehnquist in *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources, 532 U.S. 598, 149 L. Ed. 2d 855, 121 S. Ct. 1835 (2001)*, that a "prevailing party" is "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded . . . ." Black's Law Dictionary 1145 (7th ed. 1999). Having obtained a judgment on the merits in its favor, WorldCom is the prevailing party -- even if with a small "p" -- and some award of attorney's fees and costs in its favor is appropriate in this case.

WorldCom seeks $ 504,139.67 in attorney's fees and costs. This number is based on the number of hours expended on this litigation multiplied by defense counsel's hourly rate, commonly known in this Circuit as the "lodestar amount." However, as the Supreme Court noted in *Hensley v. Eckerhart, 461 U.S. 424, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983)*:

> The product of reasonable hours times a reasonable rate does not [*4] end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of "results obtained." This factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief.

*Id. at 435*. The Court recognized that if a plaintiff has obtained "excellent results," then the presumption is that the attorney should recover his or her fees in full. *See id.* However, the Court further noted, "If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive number." *Id. at 436*. The Court emphasized that, "the most crucial factor is the degree of success obtained." *Id.*

WorldCom sought $ 1,033,732 in damages and the jury awarded but $ 83,500 -- 8.078 percent of its claim. [1] As *Hensley* instructs, I may consider "the relationship between the amount of the fee awarded and the results obtained." *Id. at 437*. Accordingly, on this record, WorldCom's fee application [*5] for over $ 500,000 in attorney's fees

must be reduced to be commensurate with its degree of success on its counterclaim. I also believe such a reduction is required based on the record put before me during the trial and the jury's conclusion in one count that WorldCom had indeed violated the Communications Act and, in another count, made defamatory statements about MTX; the jury, however, declined to award MTX even nominal damages therefrom.

1    $ 83,500 / $ 1,033,732 = X / 100

$ 1,033,732 X = $ 8,350,000

X = 8.078

WorldCom's degree of success being 8.078 percent, common sense and a wealth of common law make it more appropriate than any other formulaic approach to award WorldCom 8.078 percent of its fee application. WorldCom is therefore entitled to an award of $ 40,724.40. [2]

2    8.078 / 100 = X / $ 504,139.67

100X = $ 4,072,440.254

X = $ 40,724.40

[*6]    Accordingly, defendant's fee application is granted in the amount of $ 40,724.40 and plaintiff's fee application is denied.

So ordered.

Dated: New York, New York

June 13, 2001

Richard Owen

United States District Judge