UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LARRY A. KATZ | : | |
| And KENNETH M. RAFTERY, | : | CIVIL ACTION NO. |
| | : | 302 CV 02201 (AWT) |
| Plaintiffs, | : | |
| | : | |
| V. | : | |
| | : | |
| THE SEPARATION PAY PLAN | : | |
| OF TEXACO, INC. | : | |
| And TEXACO, INC., | : | |
| | : | JULY 30, 2007 |
| Defendants. | : | |

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

Defendants' opposition to Plaintiffs' Motion For Attorneys' Fees and Costs does not provide the Court with any legitimate basis to deny or reduce plaintiff's fee request. Indeed, defendants have conceded on that unless plaintiffs' cause of action was deemed frivolous by a court of competent jurisdiction, defendants are obligated to pay plaintiffs' reasonable fees and costs in this action. (See Defendants' Response To The Plaintiffs' Motion For Summary Judgment dated August 6, 2004, Section B1, page 6: *"The Separation Pay Plan Reimbursement Terms Are Undisputed."*) Despite the uncontested language of the Plan and numerous requests by plaintiffs, defendants have consistently refused to pay any of plaintiffs' litigation costs to date. This Court's June 12, 2007 ruling, specifically holding that plaintiffs' claims were not frivolous, should have finally put an end to defendants' refusal to pay plaintiffs' litigation fees and costs. However, defendants continue to breach its contractual obligations under the Plan and refuse to cover such fees and costs, now attempting to raise, for the first time, several new arguments easily disposed of. As set forth below, defendants have provided no sound basis for the Court to deny or reduce the amount of fees and costs sought in Plaintiffs' Motion For Attorneys' Fees and Costs.

1

## I. TO DISREGARD DEFENDANTS' CLEAR CONTRACTUAL OBLIGATION WOULD BE AGAINST PUBLIC POLICY.

Defendants attempt to argue that awarding plaintiffs the attorneys' fees and costs which they are owed would be against public policy due to plaintiffs' lack of success. However, the need for a plaintiff to succeed or prevail in order to recover fees is generally a statutory mandate and defendants negotiated that requirement away. The pertinent clause in the subject Plan provides as follows: "unless a court of competent jurisdiction determines that [plaintiffs'] cause of action is frivolous," plaintiffs are entitled to payment of all "reasonable attorney's fees, costs and other expenses incurred by [plaintiffs] in enforcing [their] rights under this plan." (See The Separation Pay Plan of Texaco, page 18, Section (4) "Expenses and Fee Reimbursement," attached to Plaintiffs' Motion For Fees and Costs as Exhibit A.)

The present case is similar to the situation faced by the District Court of New Jersey in McClure v. Bank of America Corp., 2006 WL 182070 (D.N.J. 2006) (attached hereto as Exhibit 1.) In that case, the plaintiffs were terminated after a merger between two banks. Each plaintiff was party to a "termination agreement" which provided for enhanced retirement benefits following such a change in control. Defendant refused to pay plaintiffs the enhanced benefits they sought and plaintiffs sued. Part of the termination agreement provided that plaintiffs were entitled to an award of legal fees incurred as a result of any dispute regarding the validity or enforceability of any provision under the plan, regardless of whether plaintiff was successful. In that case, despite the fact that plaintiffs were ultimately unsuccessful in their bid for the enhanced benefits, the court rejected defendant's argument that to award attorney's fees to unsuccessful plaintiffs would be against public policy and granted plaintiffs' motion for summary judgment on the issue of attorney's fees. Id.

Defendants, here, argue that plaintiffs are not entitled to their fees under the Plan because they did not prevail in their bid for the enhanced benefits. Such argument is not supported by the facts or the case law cited by defendants. Moreover, such argument is in fact flatly rejected by the reasoning

set forth in McClure. Defendants state that this Court should measure the "reasonableness" of plaintiffs' fee request by the degree of success they achieved in the litigation. Such an interpretation would render the clause requiring a finding of frivolousness meaningless. Indeed, defendants appear to be requesting that the Court negate the terms of the Plan. Such a decision would violate public policy. "This is especially true in light of the fact that the provision at issue was placed into the contract by the economically stronger party for the benefit of the economically weaker party to serve a particular purpose. This provision stood to create a scenario in which an individual was empowered to challenge actions of the economically stronger party on equal footing." McClure, supra, *4 (Ex. 1). Accordingly, to ignore the clear language of the Plan, which defendants drafted themselves, would violate public policy.

In a further effort to avoid paying fees and costs, defendants argue that the requested amount of fees is "unreasonable" and therefore not covered by the Plan. However, defendants' argument fails in several respects. As an initial matter, Gerow v. Rohm & Haas Co., 308 f.3d 721 (7th Cir. 2002), cited by defendants on page 4 of their Opposition, actually supports plaintiffs' Motion for Fees. Defendants mischaracterize the holding in that case by broadly stating that the Seventh Circuit found plaintiffs' fee request to be unreasonable and "proceeded to deny Gerow's request for attorney's fees." The fees which were denied and held to be "unreasonable" in that case were only the fees and costs associated with the *appeal* to the Seventh Circuit. All fees and costs associated with the litigation at the district court level had been covered by the defendant pursuant to a clause similar to the one at issue here. Indeed, the Seventh Circuit held that although unsuccessful at the district court level, Gerow's legal position had not been unreasonable or frivolous. Accordingly, applying the rationale of Gerow to the present set of facts, it is clear that plaintiffs are entitled to the totality of the fees requested in their motion.

Furthermore, defendants' reliance on Curby v. Soluta, Inc., 351 F.3d 868 (8th Cir. 2002), is similarly misplaced. The court in Curby rejected a claim for ERISA benefits holding that it was

"undisputed no change of control occurred." Id. at 872. The court went on to hold that because there was no event that ever triggered a severance obligation on the part of the employer, plaintiff's position was unreasonable from the start and therefore no fees should be awarded. Clearly the facts of Curby are distinguishable from the present facts, as it is undisputed that a change of control took place and that plaintiffs were entitled to severance benefits. In McClure, supra, (Ex. 1 hereto), the court also distinguished the facts of Curby when awarding fees to an unsuccessful plaintiff. The court, there, held: "In Curby, the plaintiff brought a frivolous lawsuit," and went on to state:

> The facts of Curby, therefore, are not applicable to the instant case. Here, Plaintiffs are clearly entitled to benefits under the relevant Termination Agreement. The only issue in dispute in this case is as to the amount of benefits to which they are entitled. Plaintiffs' claims are not the type of frivolous or "unreasonable" litigation that would render a contractual attorneys' fees provision, such as the one here, inapplicable. Defendant's argument that this Court should measure "reasonableness" by the degree of success achieved in the litigation would render the phrase "regardless of the outcome" meaningless.

McClure, supra at *3 (Ex. 1 hereto).

In view of the foregoing, it is clear that defendants' alleged public policy argument and their attempt to have the Court determine the "reasonableness" of plaintiffs' fee request based on their degree of success must fail. The language defendants themselves included in the Separation Pay Plan of Texaco obviates any need for the Court to first determine whether plaintiffs have prevailed or to measure their degree of success before awarding fees and costs. McClure, supra, at *4.

## II. PLAINTIFFS' RETAINER AGREEMENT WITH COUNSEL DOES NOT OBVIATE DEFENDANTS' OBLIGATION TO COVER FEES AND COSTS.

Defendants argue that because plaintiffs were forced to renegotiate the terms of their representation by counsel to one based on an accrual basis, that no fees were ever actually incurred by plaintiffs under that later agreement. Such argument is specious and not in accordance with the law.

As an initial matter, but for defendants' repeated refusal to cover all of plaintiffs' "reasonable attorney's fees, costs and other expenses incurred by [them] in enforcing [their] rights under this

4

plan," plaintiffs would not have been forced to renegotiate the terms of their representation. Plaintiffs' initial agreement with counsel was to pay the hourly rates of counsel plus costs, as the expenses were incurred. However, plaintiffs exhausted the totality of their savings in the early stages of this litigation and could no longer afford to continue unless another basis for representation was reached. The undersigned agreed to represent plaintiffs on an accrual basis under which the undersigned agreed plaintiffs' fees would be due and payable at the time of the award of this Court for fees incurred. To now argue that no fees have been "incurred" is disingenuous and not supported by the case law. Indeed to allow defendants to benefit from their purposeful breach of their contractual obligations to reimburse plaintiffs' fees and costs is unconscionable. See Montana v. Crow Tribe of Indians, 523 U.S. 696, 722 (1998) (to permit defendant to benefit from its own wrong is objectionable as to require no discussion beyond its bare statement).

Defendants' reliance on Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168 (2d Cir. 2005), for the proposition that because plaintiffs were not required to pay fees out of pocket, no such fees were incurred, is not persuasive. Mid-Hudson dealt with an *indemnity* clause which *required* a showing of loss or liability before fees could be awarded. Indeed, the court in Mid-Hudson specifically distinguished indemnity clauses from other clauses by stating: "Indemnity provisions by definition only require reimbursement for losses and liabilities that the indemnitee has actually incurred."[1] The clause contained in the present Plan requiring defendants to pay plaintiffs' fees and costs is not an indemnity clause and therefore fees are incurred even if on an accrual basis, where plaintiff is not forced to pay out of pocket.

Moreover, although defendants cite Chojnacki v. Georgia Pacific Corp., 108 F.3d 810 (7th Cir. 1997), in support of their argument, the Seventh Circuit, there, merely rejected the defendant's contention that fees incurred in *prelitigation consultations* were not recoverable. While the court

---

[1] See also Atlantic Richfield Co. v. Interstate Oil Transp. Co., 784 F.2d 106, 112 (2d Cir. 1986) ("[A] claim for indemnity ... requires that an actual liability be sustained by the indemnitee....") (first ellipsis in original) (citation and internal quotation marks omitted).

affirmed the district court's refusal to award litigation costs, neither the language of the retainer agreement nor the language of the ERISA plan is provided in the text of the decision. Accordingly, it is impossible to determine whether this case in fact supports defendants' position.

What does become clear, however, is that the holding in Chojnacki belies defendants' argument that the "Plan's fee provision only applies to fees billed as part of the administrative process." (Defendants' Opposition at 16.) The Seventh Circuit turns defendants' argument on its head by holding: "Nothing in that provision *limits* the recovery of legal fees to those *incurred after a complaint is filed.*" Similarly, Curby and Gerow also undermine this specious argument. Both of those cases involve clauses similar to the one at issue here and there is no discussion whatever that those clauses are limited to pre-litigation expenses nor that reimbursement of litigation costs would "eviscerate ERISA §502(g)." (Defendants' Opposition at 16.) Indeed, in the present case, defendants point to no language in the Plan itself that would support this argument. Moreover, it is black letter law that the requirements of ERISA are the floor as far as employers' obligations are concerned and that employers are free to enter into contractual obligations that surpass those demanded of them pursuant to ERISA. Kinek v. Paramount Communications, Inc., 22 F.3d 503, 510-11 (2d Cir. 1994.) Indeed, had defendants truly believed that only administrative fees and costs were subject to reimbursement, they would not have bothered to expend the resources to bring their counterclaim seeking a declaratory judgment that plaintiffs' claims were frivolous given the only purpose of bringing such counterclaim was to attempt to avoid paying the attorneys' fees and costs associated with plaintiffs' litigation.

Accordingly, defendants' attempt to escape their obligations to cover plaintiffs' fees and costs based on the fact that plaintiffs' retainer agreement with counsel was on accrual basis must fail.

## III. PLAINTIFFS' FEE REQUEST IS LESS THAN IF CALCULATED USING LOADESTAR CRITERIA.

Defendants argue that plaintiffs' fees and costs should be calculated using the lodestar principles. While a lodestar calculation is arguably the more appropriate method of calculation in the present case, the sums requested by plaintiffs are less than that which would result from using a lodestar calculation. Moreover, the arguments contained in this section of defendants' brief requesting a reduction in fees due to plaintiffs' lack of success simply do not apply to the present set of facts. The cases cited by defendants on page 9 of their brief claiming to support their position that the Court should apply the lodestar principles to reduce plaintiffs' fees all involve a *statutory* claim to fees or involve contractual language requiring that plaintiff be a *prevailing* party. Accordingly, in those cases, it is appropriate for the court to analyze the degree of success when determining what is a reasonable amount for attorneys' fees. That simply is not the case here.

MTX Communications Corp. v. LLDS/WorldCom. Inc., 2001 WL 674142 (S.D.N.Y. 2001), cited by defendants, involves a contractual right to fees, however the language of the contract there requires that the party requesting such fees be the prevailing party. Accordingly, MTX provides no guidance in the present case. Similarly, in WorldCom, Inc. v. Automated Communications, Inc., 75 F.Supp.2d 526 (S.D. Miss. 1999), the contractual right to fees only became viable upon a finding for plaintiff that the contract had in fact been breached. Again, this is not the situation here, the ultimate outcome of plaintiffs' claim is not determinative of whether they should be reimbursed for their fees. Moreover, Farrar v. Hobby, 506 U.S. 103 (1992), Amato v. City of Saratoga Springs, 170 F.3d 311 (2d Cir. 1999), and McCardle v. Haddad, 131 F.3d 43 (2d Cir. 1997), all involve a *statutory* claim to fees which require that the party requesting such fees be the prevailing party. Accordingly, none of the cases cited by defendants are analogous to the present situation and do not support defendants' argument for a reduction in fees based on the degree of plaintiffs' success.

Defendants next argue that the hours expended by counsel were unreasonable, raising the fact that plaintiffs have now appealed this Court's decision on summary judgment to the Second Circuit. Whether or not plaintiffs have chosen to appeal this matter has nothing whatever to do with whether they are entitled to fees for litigating this matter through the District Court level. Defendants provide no case law and no tangible argument in support of their argument that this litigation was unreasonable or the hours expended were unreasonable.

Defendants further argue that plaintiffs' fees should be reduced because counsel "commingled" different activities under the same time entry. Once again, defendants are confusing cases in which a party must *prevail* on a claim to obtain fees with the present set of facts. In the only case cited by defendants, Soler v. G & U, Inc., 801 F.Supp. 1056 (S.D.N.Y. 1992), the plaintiffs' claim for fees was statutory under FLSA and required that the party requesting fees be the prevailing party. There, plaintiffs' success was limited as they failed on at least one of their claims. Accordingly, in that case, the court held that because distinct activities had been grouped together under one time entry, without allocating the time spent on each activity, the court could not properly evaluate the reasonableness of the listed activities. Id. at 1061. That simply is not the case here, as plaintiffs' right to fees is not dependent on the ultimate success or failure of their claim, and as such, the Court need not determine what activity in a particular time entry relates to what particular claim and whether plaintiffs prevailed on that claim.

Finally, defendants argue that the hours spent on researching the issues of this case are excessive. Again, defendants provide no basis for this statement, and undersigned counsel strenuously objects, as it would be a disservice to plaintiffs and, indeed, could amount to malpractice, if sufficient research was not undertaken. Moreover, the holding in Small v. Richard Wolf Medical Instruments Corp., 264 F.3d 702 (7th Cir. 2001), cited by defendants' on page 11 of their brief, actually undermines defendants' argument. In that case, the court reduced fees, claiming excessive hours, but in doing so distinguished the "noncomplex" FLSA issues presented there from "more

complex employment discrimination" such as the present case, which would support higher fees. Id. at 706.[2] Similarly, the court in Asi Systems, Inc. v. Architectural Systems, Inc., 2001 U.S. Dist. LEXIS 4813 (S.D.N.Y. 2001), also cited by defendants on page 11, reduced fees in light of the fact that the case involved "a straightforward matter … and did not pose a particularly novel or difficult question of law…" Id. at *15. It cannot be disputed that ERISA litigation is by its very nature complex. Indeed, the United States Supreme Court has described ERISA as being enormously complex and detailed. See, e.g., Martens v. Hewitt Associates, 508 U.S. 248, 262 (1993) (ERISA is an enormously complex and detailed statute); Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 447 (1999) (ERISA is a comprehensive, reticulated and enormously complex and detailed statute). Accordingly, the number of hours spent by counsel researching issues is not anywhere near excessive, and defendants' attempt to reduce fees based on this argument should fail.

## IV.    INTEREST.

As stated in footnote 1 of plaintiffs' Motion for Fees and Costs, the retainer agreement at issue here provided that plaintiffs pay 1% interest per month, compounded, for amounts accrued yet unpaid. Accordingly, this is the amount that plaintiffs technically owe and the amount for which defendants should be obligated to pay. However, in an effort to avoid overreaching, plaintiffs' used the lower method of calculating interest provided by Connecticut General Statutes §37-3a(a) in their Motion for Fees and Costs.

> As the Second Circuit has acknowledged, whereas 28 U.S.C. § 1961 governs the award of postjudgment interest in federal cases, no federal statute controls the rate of prejudgment interest, *see Jones v. UNUM Life Ins. Co. of America*, 223 F.3d 130, 139 (2d Cir.2000), and the Second Circuit "has not expressly endorsed a particular interest rate," *Shorter v. Hartford Fin. Servs. Group, Inc.*, 03cv149 (WIG), 2005 WL 2234507, at *6 (D.Conn. May 31, 2005).

---

[2] Moreover the court in Small also noted that of 121.4 hours of work performed, only 10.4 of those hours were delegated to associates. In reducing the amount of fees awarded, the court held that more routine work should be delegated to attorneys in the firm who charge at a much lower hourly rate. In Small, lead counsel was requesting an hourly rate of $425, which was found excessive and reduced. Accordingly, there were many issues present in that case which are not present here supporting the court's reduction in fees.

National Eastern Corp. v. Vegas Fastener MFG, 2006 WL 758634, *4 (D.Conn. 2006) (Ex. 2).

Accordingly, while the Court has discretion and can, in its judgment, use the rate provided by 28 U.S.C. §1961, it may also apply the 10% rate suggested by C.G.S. §37-3a(a). As plaintiff is obligated to pay counsel 1% monthly, compounded, on monies owed, this would be less than the amount defendants are obligated to pay.

Defendants also argue that there has been no wrongful detention of money and therefore no prejudgment interest is owed. Following defendants' reasoning, money would never be "wrongfully detained" until there was a finding or judgment by a court in a plaintiff's favor. Accordingly, under defendants' rationale, there would never be a need for prejudgment interest. The solid reasoning, however, is that prejudgment interest serves an important purpose of protecting plaintiffs. Indeed, "'[p]rejudgment interest is often appropriate where a party claims that a specified sum under the terms of a contract ... has been detained by another party.' Travelers, 99 Conn.App. at 764 (discussing Foley v. Huntington Co., 42 Conn.App. 712, 739 (1996))." Brookridge Funding Corp. v. Northwestern Human Services Inc., 2007 WL 1834175, *6 (D.Conn., 2007) (Ex. 3 hereto).

Finally, defendants' argument that prejudgment interest should not be awarded because bona fide defenses were advanced should not impact the Court's determination of "wrongful detention." Indeed, "that this dispute is hotly contested does not impact on the trial court's determination that the defendant wrongfully detained the money. See Harris Calorific Sales Co. v. Manifold Systems, Inc., 18 Conn.App. 559, 566, (1989)." Republic Ins. Co. v. Pat DiNardo Auto Sales, Inc., 44 Conn.Supp. 207, 220-221 (Conn.Super., 1995).

## *CONCLUSION*

In view of the foregoing, it is clear that plaintiffs are entitled to the full amount of fees and costs requested in their Motion and that prejudgment interest should be awarded at a rate of 10% running from the date the first invoice was presented to defendants to the date of judgment.

By_____

Scott R. Lucas (ct00517)
Mary Alice S. Canaday (ct17608)
*Attorneys for Plaintiffs*
MARTIN, LUCAS & CHIOFFI, LLP
177 Broad Street
Stamford, CT 06901
Phone: (203) 973-5200
Fax: (203) 973-5250
slucas@mlc-law.com
mcanaday@mlc-law.com

11

### CERTIFICATE OF SERVICE

This is to certify that on this 30th day of July, 2007, a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing]. Notice of this filing will be sent by e-mail to all parties, as listed below, by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing]. Parties may access this filing through the Court's system.

Conrad S. Kee, Esq.
Alison Jacobs Wice, Esq.
Jackson Lewis LLP
177 Broad Street, P.O. Box 251
Stamford, CT 06904
Phone: (203) 961-0404
Fax: (203) 324-4704
KeeC@JacksonLewis.com
wicea@jacksonlewis.com

Jennifer B. Courtian, Esq.
Jackson Lewis LLP
59 Maiden Lane
New York, NY 10038-4502
Phone: (212) 545-4000
Fax: (212) 972-3213
courtiaj@jacksonlewis.com

Scott R. Lucas (ct00517)
Martin Lucas & Chioffi, LLP
177 Broad Street
Stamford, CT 06902
Phone: (203) 973-5200
Fax: (203) 973-5250
slucas@mlc-law.com

12